IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

Steven Franco
d/b/a Seat Market, LLC
401 Eastern Avenue
Seat Pleasant, Maryland 20743,

    and

Mr. Si Qiang Chen
Mrs. Chang Lin Chen,
5702 Martin Luther King, Jr. Highway
Seat Pleasant, Maryland 20743,

        Plaintiffs,

      vs.             Case No.  CAL18-18042

The City of Seat Pleasant, Maryland
    SERVE ON:
    *Jeannelle Wallace*
    *Acting City Administrator*
    *6301 Addison Road*
    *Seat Pleasant, MD 20743*

    and

Mr. Eugene W. Grant
Mayor, City of Seat Pleasant, Maryland
6301 Addison Road
Seat Pleasant, MD 20743

        Defendants.

---

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND OTHER RELIEF**

**WITH RESPECT TO THE ENACTMENT OF THE CITY OF SEAT PLEASANT**

**ORDINANCE NO. O-17-20 IN VIOLATION OF THE CITY CHARTER, ARTICLE XII,**

**SPECIAL ASSESSMENTS, §C-1201 *et seq.***



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 1 of 17

This is an action for a compensatory damages, punitive damages, attorney's fees and other relief under the Constitution and laws of the United States, and is brought pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 42 U.S.C. § 2000d, 42 U.S.C. § 1988 and the Courts and Judicial Proceedings Article of the Maryland Code.  The relief sought is to secure for plaintiffs their property rights under The City of Seat Pleasant Charter, the Prince George's County, Maryland Charter, the Maryland State Constitution and the United States Constitution on the basis that The City of Seat Pleasant enacted municipal Ordinance O-17-20 in violation of the requirements of The City of Seat Pleasant Charter, Article XII, Special Assessments, § C-1201 *et seq.* Relief is requested to invalidate the Special Assessment enacted by municipal Ordinance No. O-17-20.

## JURISDICTION AND VENUE

1.  Jurisdiction is appropriate in this Court pursuant to Section 6-103 of the Courts and Judicial Proceedings Article of the Maryland Code. This action and controversy arises under the United States Constitution and under 42 U.S.C. §§ 1981, 1982, 1983 and 42 U.S.C § 2000d. This Court has authority to award attorney's fees pursuant to 42 U.S.C. §1988. Each and all of the acts alleged herein were done by Defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of the Defendant City of Seat Pleasant.

2.  Venue is appropriate in this Court pursuant to Section 6-203 of the Courts and Judicial Proceedings Article of the Maryland Code.



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court  •  Suite 101  •  Largo, Maryland 20774-5462
Telephone: 301.883.8888  •  Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 2 of 17

## THE PARTIES

3. Plaintiff Steven Franco is a citizen of the United States and is the Managing Member of Seat Market, LLC.

4. Seat Market, LLC is a duly organized and existing Maryland limited liability company that operates a small business and owns improved commercial real property located within the City of Seat Pleasant in Prince George's County, Maryland. See Exhibits 1 & 2, attached hereto.

5. Plaintiff Seat Market, LLC operates its small business on its improved commercial real property located at 401 Eastern Avenue, Seat Pleasant, Maryland 20743, in Prince George's County. See Exhibit 2, attached hereto.

6. Plaintiff Seat Market, LLC also operates its small business on its improved commercial real property located at 5700 Martin Luther King, Jr. Highway, Seat Pleasant, Maryland 20743, in Prince George' County. See Exhibit 1, attached hereto.

7. Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen are citizens of the United States and operate a small business, and own as tenants by the entirety, improved commercial real property located at 5702 and 5704 Martin Luther King, Jr. Highway, Seat Pleasant, Maryland 20743, in Prince George's County. See Exhibits 3 & 4, attached hereto.

8. Defendant, the City of Seat Pleasant, is a chartered municipal corporation located in Prince George's County, Maryland, with all the privileges of a body corporate including the right to sue and be sued. Defendant, Mayor Eugene W. Grant, in his



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 3 of 17

individual and official capacity, and the Defendant City of Seat Pleasant are

persons for purposes of 42 U.S.C. § 1983 and 42 U.S.C § 2000e.

## BACKGROUND FACTS

9.  The Maryland Department of Assessments & Taxation (MSDAT) administers and

enforces the property assessment and property tax laws of Maryland. Prince

George's County, Maryland and the City of Seat Pleasant issue property tax bills

during July and August each year. The tax levies are based on property

assessments determined by the MSDAT.

10. The City of Seat Pleasant City Council "Introduced" municipal Ordinance O-17-20,

the Fiscal Year 2017-2018 (FY18) City Budget, on May 8, 2017, conducted a

"First Reading" on May 8, 2017, conducted a "Second Reading" on May 15, 2017,

and "Adopted" municipal Ordinance O-17-20 on May 15, 2017. Municipal

Ordinance O-17-20, the FY18 City Budget, became "Effective" on June 5, 2017.

*See* Exhibits 5 & 6, attached hereto.

11. The "2017–2018 Approved Annual Budget" for the City of Seat Pleasant defines a

"Special Assessment" as "[a] levy made against properties to defray part or all

cost of a specific improvement or service deemed to primarily benefit those

properties." *See* Exhibit 7, page 13 of FY18 Budget, attached hereto.

12. The "2017–2018 Approved Annual Budget" for the City of Seat Pleasant defines a

"Special Assessment Fund" as "[a] fund used to account for the financing of public

improvements or services deemed to benefit primarily the properties against


Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 4 of 17

which special assessment are levied." *See* Exhibit 7  page 13 of FY18 Budget, attached hereto.

13. The "2017–2018 Approved Annual Budget" for the City of Seat Pleasant describes the "town levy" assessed on the Plaintiffs' as a "business tax, personal property tax, special assessment, sales & use tax, special license fee and a graduated Business License." *See* Exhibit 7, page 107 of FY18 Budget.

14. The "2017–2018 Approved Annual Budget" for the City of Seat Pleasant summarizes that the "town levy" assessed on the Plaintiffs will:

> "Create a Special Revitalization District for Businesses by Raising   Business Taxes... A Special Revitalization District is akin to what is known as a 'business improvement district....' The creation of this District would require the City Council to enact legislation specifically increasing the personal property tax for this purpose... This [special assessment] will benefit the entire City as more revenues, over a quarter of a million dollars, will be generated each year that the tax district legislation is in effect." *See* Exhibit 7, page 107 of the FY18 Budget, attached hereto.

15. The municipal Ordinance O-17-20, which is the "2017–2018 Approved Annual Budget" for the City of Seat Pleasant enacted a Special Assessment "town levy" tax on five property owners as follows:

> **Section 4. AND BE IT FURTHER ORDAINED AND ENACTED** *that a Special Revitalization Real Property Tax for properties located within the business improvement district within the Martin Luther King Commercial Corridor for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of four dollars ($4.00) per hundred dollars ($100.00) of assessed real property. See Exhibit 8, attached hereto.*

16. Municipal Ordinance O-17-20 established a **700%** real property municipal "town levy" tax increase year-over-year (YOY) by Special Assessment for only


Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

five commercial properties located within the City of Seat Pleasant. *See* Exhibit 9, attached hereto. The FY18 City Budget defined the "town levy" tax on the five commercial properties as a Special Assessment. *See* Exhibit 7, page 107 attached hereto.

17. Due to enactment of municipal Ordinance O-17-20 the municipal "town levy" tax on Plaintiff Seat Market, LLC's commercial real property located at 401 Eastern Avenue increased from $5,991.60 in FY17 to $55,019.54 in FY18. *See* Exhibits, 10 & 11 ("town levy" tax invoice for account 20333330), attached hereto. The 401 Eastern Avenue property is not within any "business improvement district" or "Special Revitalization District" and is <u>not</u> within the "Martin Luther King, Jr. Commercial Corridor" described in municipal Ordinance O-17-20. *See* Exhibit 12, page 14, attached hereto.

18. Due to enactment of municipal Ordinance O-17-20 the municipal "town levy" tax on Plaintiff Seat Market, LLC's commercial real property located at 5700 Martin Luther King, Jr. Highway increased from $367.52 in FY16 to $2,908.30 in FY17. *See* Exhibits 13 & 14 ("town levy" tax invoice for account 2033348), attached hereto.

19. Due to enactment of municipal Ordinance O-17-20 the municipal "town levy" tax on Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen's commercial real property located at 5702 Martin Luther King, Jr. Highway increased from $2,137.50 in FY17 to $17,147.52 in FY18. *See* Exhibits 15 & 16 ("town levy" tax invoice for account 2059509), attached hereto.



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court · Suite 101 · Largo, Maryland 20774-5462
Telephone: 301.883.8888 · Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 6 of 17

20. Due to enactment of municipal Ordinance O-17-20 the municipal "town levy" tax on Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen's commercial real property located at 5704 Martin Luther King, Jr. Highway increased from $1,705.98 in FY17 to $14,033.12 in FY18. *See* Exhibits 17 & 18 ("town levy" tax invoice for account 2059491).

21. The City of Seat Pleasant Charter, Article XII, Special Assessments, §C-1201(a)(b)(c)(d)(e)(f)(g)(h)(i) provides a detailed process for determining when and how the "City may levy and collect taxes in the form of special assessments upon property in a limited and determinable area for special benefits conferred upon the property...". Municipal Ordinance O-17-20 as enacted did not comply with *any* of the criteria of the City of Seat Pleasant Charter, Article XII, Special Assessments, §C-1201(a)(b)(c)(d)(e)(f)(g)(h)(i), which are mandated to occur before the "City may levy and collect taxes in the form of Special Assessments." *See* Exhibit 19, pages 27, 28 & 29 (City Charter), Exhibit 5 (August 10, 2017 letter from City Administrator, Jeannelle Branson Wallace), and Exhibit 6 (October 12, 2017 letter from City Clerk, Dashaun N. Lanham, CMC), attached hereto.

22. The "business improvement district," "Special Revitalization District" and "Martin Luther King, Jr. Commercial Corridor" referenced in municipal Ordinance O-17-20 and referenced in the FY18 Budget was derived from a "Martin Luther King, Jr. Highway Gateway Redevelopment Study" prepared by a consultant in June of 2010. *See* Exhibit 12, attached hereto.

23. The 2010 "Martin Luther King, Jr. Highway Gateway Redevelopment Study" does not have the force and effect of law since it was never adopted by the City of Seat


Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 7 of 17

Pleasant by any official act, ordinance, resolution, public local law or legislative act.

24. The 2010 "Martin Luther King, Jr. Highway Gateway Redevelopment Study" included a "Proposed Site Development Scenario" that proposed an assemblage of property which included the commercial real properties owned by Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen. *See* Exhibit 12, page 19, attached hereto.

25. During June 2016 Mayor Eugene Grant advised Plaintiff Seat Market, LLC that the City would like to obtain title to Seat Market, LLC's commercial properties by purchase or eminent domain for the benefit of an unnamed non-profit organization and/or private developer. *See* Exhibit 20, attached hereto.

26. On July 24, 2017, September 11, 2017 and on October 12, 2017 the Plaintiffs requested the City of Seat Pleasant to rescind, abate, reduce or revise the imposition of the FY18 Special Assessment or "town levy" tax imposed on Plaintiffs' commercial properties by municipal Ordinance O-17-20. *See* Exhibits 5, 6 & 21, attached hereto.

27. The Defendant City of Seat Pleasant has refused to rescind, abate, reduce or revise the imposition of the FY18 Special Assessment or "town levy" tax imposed on Plaintiffs' commercial properties by municipal Ordinance O-17-20.

28. The 700% municipal Special Assessment "town levy" tax increase was due and payable on September 30, 2017. Plaintiffs have not paid the itemized FY18 municipal "town levy" tax. Plaintiffs are incurring interest on the unpaid total FY18 real property tax. The Plaintiffs' properties will be sold by Prince George's County,



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court  •  Suite 101  •  Largo, Maryland 20774-5462
Telephone: 301.883.8888  •  Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 8 of 17

Maryland at tax sale during May 2018 if the FY18 municipal "town levy" tax is not paid or if municipal Ordinance O-17-20 is not invalidated as *ultra vires*.

29. Municipal Ordinance O-17-20 does not contain a severability clause.

30. Municipal Ordinance O-17-20 violates the Fifth Amendment of the U. S. Constitution, which prohibits deprivation "of property, without due process of law, nor shall private property be taken for public use, without just compensation."

31. Municipal Ordinance O-17-20 is an intentional and systemic discriminatory action by municipal, County and State officials in undervaluing some property while taxing at full value other property in the *same class*, which violates the Fourteenth Amendment of the U. S. Constitution, which provides that no state shall deny to any person within its jurisdiction the "equal protection of the laws."

32. Municipal Ordinance O-17-20 violates Article 14 of the Maryland Declaration of Rights, which provides "[t]hat no...tax...ought to be levied, under any pretense, without the consent of the Legislature."

33. Municipal Ordinance O-17-20 violates Article 15 of the Maryland Declaration of Rights, which provides "all taxes...provided to be levied by the State for the support of the general State Government, and by the Counties..., shall be uniform within each class or sub-class of land, improvements on land...which the respective taxing powers may have directed to be subject to the tax levy."

34. Municipal Ordinance O-17-20 violates Article 24 of the Maryland Declaration of Rights, which prohibits deprivation of property without due process of law.

35. Plaintiff Steven Franco d/b/a Seat Market, LLC is a member of the Jewish religion. Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen are of Chinese national



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 9 of 17

origin. In 2015, there were 96.4% African-American and 0.2% Asian residents in The City of Seat Pleasant. *See* Exhibit 12, page 11.

36. The municipal Ordinance O-17-20 Special Assessment "town levy" tax was only levied against five property owners, including these two Plaintiffs—a religious and national origin minority within the City of Seat Pleasant.

37. Municipal Ordinance O-17-20 violates the Prince George's County, Maryland Charter, Section 201, which provides that "[n]o person shall be deprived of...property without due process of law, nor be denied the equal protection of the laws, [and] [n]o person shall be...discriminated against in the exercise thereof because of religion...[or] national origin...in such a way that such person is adversely affected in the areas of ...commercial real estate."

38. Unless and until Defendants are restrained by order of this Court, defendants, acting through their officers, servants, agents and employees, will enforce municipal Ordinance No. O-17-20.

39. Unless and until this Court declares the municipal Ordinance No. O-17-20 unconstitutional, Defendants, acting through its officers, servants, agents and employees, will enforce the Ordinance.

40. All of the acts of the Defendants, its officers, agents, servants, and employees, as alleged herein, were done or are threatened to be done under color and pretense of the statutes, ordinances, regulations, customs, official policies, official procedures, and usages of the Defendant City of Seat Pleasant and the State of Maryland.


Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC.
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 10 of 17

## COUNT ONE

### 42 U.S.C. § 1983, DUE PROCESS,

### VIOLATION OF THE FOURTEENTH AMENDMENT

41. Plaintiffs incorporate and adopt by reference all other paragraphs of this Complaint as if fully restated herein.

42. Defendant, Mayor Eugene W. Grant, based on information and belief expressed anti-Semitic sentiments as the motivating factor for the introduction, adoption and enactment of municipal Ordinance No. O-17-20.

43. Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen's current tenant at the liquor store has advised that it must vacate the premises and terminate its lease because it cannot pay the 700% real property tax increase. The liquor store lease requires that the tenant pay the real property taxes.

44. Plaintiffs Mr. Si Qiang Chen & Mrs. Chang Lin Chen cannot find any tenant willing to lease the liquor store property due to the 700% real property tax increase.

45. Plaintiff Steven Franco d/b/a Seat Market, LLC's property is unmarketable due to the 700% real property tax increase. Municipal Ordinance No. O-17-20 is a defacto unlawful taking of the Plaintiffs' real properties without just compensation.

46. Plaintiffs have experienced extreme emotional distress due to the possibility that they may lose their family businesses and properties due to the unconstitutional enactment of municipal Ordinance No. O-17-20.

47. Title 42 U.S.C. § 1983 ("Section 1983," Civil action for deprivation of rights) provides, in pertinent part:



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 11 of 17

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

48. Municipal Ordinance No. O-17-20 is an unconstitutional abridgement on its face, and as applied or threatened to be applied, of the Plaintiffs' affirmative rights under the United States Constitution, Fourteenth Amendment.

49. Municipal Ordinance No. O-17-20 on its face and as applied or threatened to be applied, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and similar guarantees in the Maryland Declaration of Rights by denying Plaintiffs property rights allowed to others in similar situations and other protections of state and federal law.

50. Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs federally protected constitutional rights.

51. Defendants did so with shocking and willful indifference to the Plaintiffs' rights and their conscious awareness that they would cause Plaintiffs severe and emotional injuries.

52. The acts of Defendants as described herein intentionally deprived Plaintiffs of their constitutional rights and caused other damages.

53. The individual Defendant, Mayor Eugene W. Grant, is not entitled to qualified immunity for the complained of conduct.



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 12 of 17

54. The Defendants to this claim at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiffs.

55. As a proximate result of Defendants' unlawful conduct, plaintiffs have suffered actual physical and emotional injuries, and other damages and losses as described herein entitling Plaintiffs to compensatory and special damages, in amounts to be determined at trial. Asa further result of the Defendants' unlawful conduct, plaintiffs have incurred special damages, including medically related expenses and loss profits, and may continue to incur further medically and other special damages related expenses, loss profits, in amounts to be established at trial.

56. On information and belief, Plaintiffs may suffer loss future earnings and impaired earnings capacities from the loss of current tenants and loss of prospective tenants, in amounts to be ascertained at trial.

57. Plaintiffs are further entitled to attorney's fees, expert fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

58. In addition to compensatory, economic, consequential and special damages, plaintiffs are entitled to punitive damages against the individually named Defendant, Mayor Eugene W. Grant, under 42 U.S.C. § 1983, in that the actions of the individual Defendant, Mayor Eugene W. Grant, have been taken maliciously, willfully or with reckless or wanton disregard of the constitutional rights of the Plaintiffs.



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 13 of 17

## COUNT TWO

### 42 U.S.C. § 1983, VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1981 (EQUAL RIGHTS UNDER THE LAW), 42 U.S.C. § 1982 (PROPERTY RIGHTS OF CITIZENS) AND 42 U.S.C. § 2000d (PROHIBITION AGAINST EXCLUSION FROM PARTICIPATION IN, DENIAL OF BENEFITS OF, AND DISCRIMINATION UNDER FEDERALLY ASSISTED PROGRAMS ON GROUNDS OF RACE, COLOR OR NATIONAL ORIGIN)

59. Plaintiffs incorporate and adopt by reference all other paragraphs of this Complaint as if fully restated herein.

60. Municipal Ordinance No. O-17-20, on its face and as applied or threatened to be applied, violates the Equal Protection Clause of the Fourteenth Amendment.

61. At the time of the complained of events, Plaintiffs had the clearly established constitutional right to be free from racial, religious, color and national origin discrimination by Defendants and to enjoy the equal protection of the laws.

62. Title 42 U.S.C § 1981 ("Section 1981," Equal rights under the law) provides, in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of vevery kind, and no other.

63. Title 42 U.S.C. § 1982 ("Section 1982," Property rights of citizens) provides, in pertinent part:


Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 14 of 17

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

64. Title 42 U.S.C. § 2000d ("Section 2000d," Prohibition against exclusion) provides, in pertinent part:

Prohibition against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin.

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

65. Title 42 U.S.C. § 2000e ("Section 2000e," Definitions) provides, in pertinent part:

For purposes of this chapter— (a) The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers.

66. Plaintiff Steven Franco, as a Jewish American, and Plaintiffs Mr. & Mrs. Chen, as Chinese Americans, are members of protected classes, and thus had the clearly established statutory right under the provisions of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000d and 42 U.S.C. § 2000e to be free from racial, religious or national origin motivated real property taxes.

67. Plaintiffs' religion, color and national origin were motivating factors in the defendants' decision to enact municipal Ordinance No. O-17-20. Defendants' conduct was undertaken with the purpose of depriving Plaintiffs of the qual protection and benefits of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1982.


Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5482
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 15 of 17

## PRAYER FOR RELIEF

Plaintiffs pray that this Court enter judgment for the Plaintiffs and against each of the Defendants and grant:

A.  Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law, in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined at trial;

B.  Economic losses on all claims allowed by law;

C.  Special damages in an amount to be determined at trial;

D.  Punitive damages on all claims allowed by law against individual Defendant, Mayor Eugene W. Grant, and in amount to be determined at trial;

E.  Attorney's fees, expert witness fees and costs associated with this action under 42 U.S.C. § 1988 and other relevant statutes, on all claims allowed by law;

F.  Prejudgment and post-judgment interest at the lawful rate; and

G.  Any Further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## PLAINTIFFS' REQUEST A TRIAL BY JURY

Plaintiffs' demand a trial by jury.

Respectfully submitted this 29th day of May, 2018:

Stan Brown, Esq.



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Stan Derwin Brown Law Office, LLC
1300 Caraway Court, Suite 101
Largo, Maryland 20774
Telephone: 301-883-8888
Email: attorney@StanBrown.net
*Attorney for Plaintiffs*



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 17 of 17

Real Property Data Search

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

**Account Identifier:** District - 18 Account Number - 2033348

### Owner Information

| | | |
|---|---|---|
| Owner Name: | SEAT MARKET LLC | Use: COMMERCIAL |
| | | Principal Residence: NO |
| Mailing Address: | 12101 BROOKHAVEN DR | Deed Reference: /35667/ 00590 |
| | SILVER SPRING MD 20902- | |

### Location & Structure Information

| Premises Address: | 6700 MARTIN LUTHER KING JR HW CAPITOL HEIGHTS 20743-0000 | Legal Description: |
|---|---|---|

| Map: 0066 | Grid: 00A3 | Parcel: 0303 | Sub District: | Subdivision: 0000 | Section: | Block: | Lot: | Assessment Year: 2018 | Plat No: Plat Ref: |
|---|---|---|---|---|---|---|---|---|---|

| Special Tax Areas: | Town: | SEAT PLEASANT |
|---|---|---|
| | Ad Valorem: | |
| | Tax Class: | 8 |

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area 8,535 SF | County Use 005 |
|---|---|---|---|---|

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
|---|---|---|---|---|---|---|

### Value Information

| | Base Value | Value As of 01/01/2015 | Phase-in Assessments As of 07/01/2017 | As of 07/01/2018 |
|---|---|---|---|---|
| Land: | 51,200 | 51,200 | | |
| Improvements | 12,300 | 12,300 | | |
| Total: | 63,500 | 63,500 | 63,500 | |
| Preferential Land: | 0 | | | |

### Transfer Information

| Seller: KIM CHANG H | Date: 02/20/2014 | Price: $1,340,000 |
|---|---|---|
| Type: ARMS LENGTH MULTIPLE | Deed1: /35667/ 00590 | Deed2: |
| Seller: KIM,TAE H & KYUNG A & YOUNG ETAL | Date: 06/23/1997 | Price: $225,000 |
| Type: ARMS LENGTH MULTIPLE | Deed1: /11502/ 00509 | Deed2: |
| Seller: GOLDBERG,BEN & | Date: 12/30/1987 | Price: $0 |
| Type: | Deed1: /06864/ 00570 | Deed2: |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2017 | 07/01/2018 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00 | 0.00 |
| Tax Exempt: | | Special Tax Recapture: | |
| Exempt Class: | | NONE | |

### Homestead Application Information

Homestead Application Status: No Application

### Homeowners' Tax Credit Application Information

| Homeowners' Tax Credit Application Status: No Application | Date: |
|---|---|



Real Property Data Search

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | | View GroundRent Registration |
|---|---|---|---|
| Account Identifier: | District - 18 Account Number - 2033330 | | |

### Owner Information

| Owner Name: | SEAT MARKET LLC | Use: | COMMERCIAL |
|---|---|---|---|
| | | Principal Residence: | NO |
| Mailing Address: | 12101 BROOKHAVEN DR | Deed Reference: | /35667/ 00590 |
| | SILVER SPRING MD 20902- | | |

### Location & Structure Information

| Premises Address: | 401 EASTERN AVE<br>CAPITOL HEIGHTS 20743-0000 | | | Legal Description: | | | PARCEL EQ 19580 SQ<br>FT |
|---|---|---|---|---|---|---|---|
| Map: | Grid: | Parcel: | Sub District: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | A-1832 |

| Map: | Grid: | Parcel: | Sub District: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | A-1832 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0066 | 00A3 | 0000 | | 1780 | | | | 2018 | Plat Ref: | |

| Special Tax Areas: | | Town: | | SEAT PLEASANT | |
|---|---|---|---|---|---|
| | | Ad Valorem: | | | |
| | | Tax Class: | | 8 | |

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1952 | 9880 | | 19,580 SF | 005 |

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
|---|---|---|---|---|---|---|
| | | MARKET | | | | |

### Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | As of<br>01/01/2015 | As of<br>07/01/2017 | As of<br>07/01/2018 |
| Land: | 156,700 | 156,700 | | |
| Improvements | 1,044,600 | 1,044,600 | | |
| Total: | 1,201,300 | 1,201,300 | 1,201,300 | |
| Preferential Land: | 0 | | | |

### Transfer Information

| Seller: KIM CHANG H | Date: 02/20/2014 | Price: $1,340,000 |
|---|---|---|
| Type: ARMS LENGTH MULTIPLE | Deed1: /35667/ 00590 | Deed2: |
| Seller: KIM,TAE H & KYUNG A & YOUNG ETAL | Date: 06/23/1987 | Price: $225,000 |
| Type: ARMS LENGTH MULTIPLE | Deed1: /11502/ 00509 | Deed2: |
| Seller: GOLDBERG,BEN & | Date: 12/30/1987 | Price: $0 |
| Type: | Deed1: /06864/ 00570 | Deed2: |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2017 | 07/01/2018 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00| | 0.00| |

| Tax Exempt: | Special Tax Recapture: |
|---|---|
| Exempt Class: | NONE |

### Homestead Application Information

Homestead Application Status: No Application

### Homeowners' Tax Credit Application Information

| Homeowners' Tax Credit Application Status: No Application | Date: |
|---|---|



---

**Real Property Data Search**

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

**Account Identifier:** District - 18 Account Number - 2058509

### Owner Information

| | | |
|---|---|---|
| **Owner Name:** CHEN SI Q & CHANG L | **Use:** COMMERCIAL | |
| | **Principal Residence:** NO | |
| **Mailing Address:** 11309 ROYAL MANOR WAY NORTH POTOMAC MD 20878-4855 | **Deed Reference:** /07402/ 00636 | |

### Location & Structure Information

**Premises Address:** 5702 MARTIN LUTHER KING JR HW CAPITOL HEIGHTS 20743-0000

**Legal Description:**

| Map | Grid | Parcel | Sub District | Subdivision | Section | Block | Lot | Assessment Year: | Plat No: |
|---|---|---|---|---|---|---|---|---|---|
| 0066 | 00A3 | 0058 | | 0000 | | | | 2018 | Plat Ref: |

**Special Tax Areas:**

Town:

Ad Valorem:

Tax Class: 8

SEAT PLEASANT

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1962 | 1344 | | 8,889 SF | 005 |

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
|---|---|---|---|---|---|---|
| | | FAST FOOD | | | | |

### Value Information

| | Base Value | Value As of 01/01/2015 | Phase-in Assessments As of 07/01/2017 | As of 07/01/2018 |
|---|---|---|---|---|
| Land: | 222,200 | 222,200 | | |
| Improvements: | 152,200 | 152,200 | | |
| Total: | 374,400 | 374,400 | 374,400 | |
| Preferential Land: | 0 | | | |

### Transfer Information

| | | | |
|---|---|---|---|
| Seller: LEVIN,LOUIS & | Date: 08/21/1989 | Price: $0 | |
| Type: NON-ARMS LENGTH OTHER | Deed1: /07402/ 00636 | Deed2: | |
| Seller: | Date: | Price: | |
| Type: | Deed1: | Deed2: | |
| Seller: | Date: | Price: | |
| Type: | Deed1: | Deed2: | |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2017 | 07/01/2018 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00| | 0.00| |

**Tax Exempt:**

**Exempt Class:**

Special Tax Recapture: NONE

### Homestead Application Information

Homestead Application Status: No Application

### Homeowners' Tax Credit Application Information

Homeowners' Tax Credit Application Status: No Application    Date:



Real Property Data Search

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

Account Identifier: District - 18 Account Number - 2059491

**Owner Information**

| | | | |
|---|---|---|---|
| Owner Name: | CHEN SI Q & CHANG L | Use: | COMMERCIAL |
| | | Principal Residence: | NO |
| Mailing Address: | 11309 ROYAL MANOR WAY | Deed Reference: | /07402/ 00636 |
| | N POTOMAC MD 20878-4855 | | |

**Location & Structure Information**

| Premises Address: | 5704 MARTIN LUTHER KING JR HW CAPITOL HEIGHTS 20743-0000 | | | Legal Description: | LOT 10 EX 3125 SQ FT AT FRONT |
|---|---|---|---|---|---|

| Map: | Grid: | Parcel: | Sub District: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | A-3403 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0066 | 00A3 | 0000 | | 5300 | | A | | 2018 | Plat Ref: | |

| Special Tax Areas: | | Town: | | SEAT PLEASANT |
|---|---|---|---|---|
| | | Ad Valorem: | | |
| | | Tax Class: | 8 | |

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1959 | 1675 | | 8,335 SF | 005 |

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
|---|---|---|---|---|---|---|
| | | RETAIL STORE | | | | |

**Value Information**

| | Base Value | Value As of 01/01/2015 | Phase-in Assessments As of 07/01/2017 | As of 07/01/2018 |
|---|---|---|---|---|
| Land: | 83,300 | 83,300 | | |
| Improvements: | 223,100 | 223,100 | | |
| Total: | 306,400 | 306,400 | 306,400 | |
| Preferential Land: | 0 | | | |

**Transfer Information**

| | | | |
|---|---|---|---|
| Seller: LEVIN, LOUIS & | Date: 08/21/1989 | | Price: $0 |
| Type: NON-ARMS LENGTH OTHER | Deed1: /07402/ 00636 | | Deed2: |
| Seller: | Date: | | Price: |
| Type: | Deed1: | | Deed2: |
| Seller: | Date: | | Price: |
| Type: | Deed1: | | Deed2: |

**Exemption Information**

| Partial Exempt Assessments: | Class | 07/01/2017 | 07/01/2018 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00| | 0.00| |

| Tax Exempt: | Special Tax Recapture: |
|---|---|
| Exempt Class: | NONE |

**Homestead Application Information**

Homestead Application Status: No Application

**Homeowners' Tax Credit Application Information**

| Homeowners' Tax Credit Application Status: No Application | Date: |
|---|---|





# *City of Seat Pleasant*

August 10, 2017

Steven Franco
Seat Market LLC
401 Eastern Avenue
Seat Pleasant, Maryland 20743

Dear Mr. Franco:

Pursuant to your request as follows:

*-Property identification of all properties in Seat Pleasant that where subject to the recent tax levy of $4.00 per $100 of the assessed value for the Revitalization District.*
*-How the Revitalization District was identified and what legislation created it.*

At a meeting with you, City Treasurer Robert Ashton, and me the week of July 24, 2017, I provided to you the following documents:

- Seat Pleasant introductory Report;
- The City of Seat Pleasant Charter, Article V General Powers, subsection (13) which authorizes the City to levy and collect taxes; and
- Ordinance O)-17-20, Adoption of the Fiscal Year 2018 Budget, (Section 4 establishes the Special Revitalization Real Property Tax for properties located within the business improvement district).

These documents were provided to you in response to your questions about the City's authority and the legislation creating the tax levy. You were informed by the City Treasurer that the Revitalization District was identified by a market study conducted for the City in 2010.

You will find enclosed with this letter the following additional documents in response to your electronic correspondence of August 8, 2017 pursuant to the Maryland Public Information ACT ("MPIA") Md. Code Ann., Gen Prov. ("GP"):

- Excel Spreadsheet that identifies the properties within the Revitalization District.

*6301 Addison Road • Seat Pleasant MD  20743-2125 • (301) 336-2600 • Fax (301) 336-0029*





- Martin Luther King, Jr., Highway Gateway Redevelopment, Town Center Destination District Development Framework for the City of Seat Pleasant.

Steven Franco
Page 2 of 2

The aforementioned documents provided to you previously, and those submitted with this correspondence should satisfy your MPIA request.

Should you require additional information, please feel free to contact the City of Seat Pleasant.

Sincerely,


Jeannelle Branson Wallace
City Administrator

Enclosures/2

Cc:     City Attorney
        Mayor and Council
        Economic Development
        City Treasurer
        City Clerk

## COUNCIL OF THE CITY OF SEAT PLEASANT, MARYLAND

| | |
|---|---|
| Ordinance No. | O-17-20 |
| Introduced By | City Council |
| Date Introduced | May 8, 2017 |
| First Reading: | May 8, 2017 |
| Second Reading: | May 15, 2017 |
| Dated Adopted: | May 15, 2017 |
| Date Effective: | June 5, 2017 |

AN ORDINANCE to Adopt the Budget for Fiscal Year 2017-2018 and to Provide for the Establishment of Budgeting for Outcomes for the FY2018 Fiscal Year

SECTION 1.  BE IT ORDAINED AND ENACTED by the City Council of Seat Pleasant, Maryland, that the sums and amounts appropriated for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018 are set forth in this Ordinance.

SECTION 2.  AND BE IT FURTHER ORDAINED AND ENACTED that the following sums and amounts are hereby appropriated for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018 to defray expenses and operations costs for the City of Seat Pleasant.

GENERAL FUNDS

EXPENDITURES

| | |
|---|---|
| GENERAL GOVERNMENT | $ 7,953,459 |
| PUBLIC SAFETY | 2,320,806 |
| PUBLIC WORKS | 968,847 |
| PUBLIC ENGAGEMENT | 938,434 |
| COMMUNITY DEVELOPMENT GRANT | 100,000 |
| DEBT SERVICES | 171,000 |
| **TOTAL GENERAL FUND EXPENDITURES** | **$ 12,452,546** |

REVENUES

| | |
|---|---|
| REAL ESTATE TAXES | $ 1,704,825 |
| REVITALIZATION TAXES | 252,864 |

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 1 of 5

| | |
|---|---|
| PERSONAL PROPERTY | 2,000,000 |
| INTERGOVERNMENT & GRANTS | 636,218 |
| OTHER FINANCING SOURCE USDA LOAN | 4,100,000 |
| PROCEEDS FROM PRIOR YEAR GENERAL FUND RESERVES | 1,500,000 |
| PROCEEDS FROM PRIOR YEAR SPEED CAMERA | 178,415 |
| PROCEEDS FROM PRIOR YEAR RED LIGHT | 405,816 |
| OTHER LOCAL REVENUE | 1,674,408 |

**TOTAL GENERAL FUND REVENUES**          $ 12,452,546

**REFUSE FUND**

**REVENUES**

| | | |
|---|---|---|
| REFUSE COLLECTION | $ | 277,200 |
| **TOTAL REFUSE FUND REVENUES** | $ | 277,200 |

**EXPENDITURES**

| | | |
|---|---|---|
| REFUSE COLLECTION CONTRACT | $ | 277,200 |
| **TOTAL REFUSE FUND EXPENDITURES** | $ | 277,200 |

**SPEED CAMERA FUND PRIOR YEAR**

| | | |
|---|---|---|
| **REVENUES** | | |
| PRIOR YEAR FUND BALANCE SPEED CAMERA FEES | $ | 178,415 |
| **TOTAL SPEED CAMERA FUND REVENUES** | $ | 178,415 |
| **EXPENDITURES** | | |
| SPEED CAMERA EXPENDITURE ITEMS | $ | 178,415 |
| **TOTAL SPEED CAMERA FUND EXPENDITURES** | $ | 178,415 |

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 2 of 5

**SECTION 3. AND BE IT FURTHER ORDAINED AND ENACTED** that the Real Property Tax for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of fifty-eight cents (.58) per hundred dollars ($100.00) of assessed real property value.

**SECTION 4. AND BE IT FURTHER ORDAINED AND ENACTED** that a Special Revitalization Real Property Tax for properties located within the business improvement district within the Martin Luther King Commercial Corridor for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of four dollars (4.00) per hundred dollars ($100.00) of assessed real property value.

**SECTION 5. AND BE IT FURTHER ORDAINED AND ENACTED** that the Personal Property Tax for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of fifteen dollars ($15.00) per one hundred dollars ($100.00) of assessed personal property value.

**SECTION 6. AND BE IT FURTHER ORDAINED AND ENACTED** that from and after the effective date of this Ordinance funds appropriated to the general categories of expenditures by and as reflected in this Ordinance shall be expended only for such purposes, and up to such amounts for each such purpose, as set forth in the document entitled 2017-2018 APPROVED ANNUAL BUDGET FY18 attached to this Ordinance and incorporated herein by reference.

**SECTION 7. AND BE IT FURTHER ORDAINED AND ENACTED** that:

1.    In order to measure the effectiveness and efficiency of each City Department, not later than July 31, 2017 the head of each City Department, working with the City Administrator, shall establish measurable Departmental goals and objectives for the City's Fiscal Year beginning July 1, 2017 and ending June 30, 2018, not inconsistent with this Ordinance and the City's 2017-2018 APPROVED BUDGET," to ensure that the funds allocated to that Department are utilized in a manner that can be verified to the satisfaction of the City Council.

2.    The head of each City Department shall make a quarterly report to the City Administrator on September 30th and December 31st, 2017 and March 31st and June 30th, 2018 detailing the progress of that Department towards meeting its established goals and objectives for the 2018 Fiscal Year.

3.    The City Administrator shall review with the head of each City Department that Department's quarterly report and shall submit to the City Council on or before October 10, 2017 and January 10, April 10 and July 10, 2018, composite reports detailing the progress being made by all City Departments in meeting their established goals and objectives.

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 3 of 5

SECTION 8. AND BE IT FURTHER ORDAINED AND ENACTED that this Ordinance shall be advertised twice in a newspaper of general circulation in the City of Seat Pleasant, Maryland within twenty days of enactment.

SECTION 9. AND BE IT FURTHER ORDAINED AND ENACTED that the City Clerk shall certify to the adoption of this ordinance, and cause the same to be published as required by law; and that this Ordinance shall become effective twenty (20) days following approval by the Mayor or unless subsequently passed by a favorable vote from five members of the whole Council after the veto by the Mayor.

COUNCIL OF THE CITY OF SEAT PLEASANT:

Charl Jones, Councilmember                            Lamar Maxwell, Councilmember

Shirica McCarthy, Councilmember                       Kelly Porter, Councilmember

Gloria L. Sisfrunk, Councilmember                     Reveral L. Yeargin

ATTEST:

Dashaun N. Lanham, CMC
City Clerk

This Ordinance was presented to the Mayor for his approval or disapproval pursuant to Section C-313 of the Charter of the City of Seat Pleasant this _____ day of

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 4 of 5

_____, 2017

Dashaan N. Lanham, CMC
**City Clerk**

In accordance with Section C-313 of the Charter of the City of Seat Pleasant, I hereby Approve or Disapprove this Ordinance this 10 day of _____ 2017.

Eugene W. Grant
Mayor

EXPLANATION
CAPITALS INDICATE MATTER ADDED TO EXISTING LAW.
((Double Parenthesis)) indicate matter deleted from existing law.
Underlining indicates amendments to bill.
~~Strike-Out~~ indicates matter stricken from the bill by amendment or deleted from the law.

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 5 of 5



# *City of Seat Pleasant*

*Office of the City Clerk*

October 12, 2017

**VIA EMAIL ONLY**
steven@wdisradio.com

Steven Franco
Seat Market LLC
401 Eastern Ave.
Seat Pleasant, MD 20743

     Re:    Your Public Information Act Request dated September 11, 2017

Dear Mr. Franco:

    By way of an email sent to me on September 11, 2017, which I received on the same date, you have requested the following records in the custody and control of the City of Seat Pleasant (the "City"):

> "Regarding Ordinance O-17-20 which includes the Special Revitalization Tax of $4.00 per $100 of the assessed value for the Revitalization District, please provide;
>
> All public notices that are required including dates and publications.
>
> Identify the city's newspaper of record
>
> What notice was given to the affected property owners and what opportunity they had to comment, dates and method."

    As the City's custodian of records, I am authorized to respond to your request and direct you to the information requested. The City is subject to Maryland's Public Information Act, Md. Code Ann., Gen. Provs. §§ 4-401 *et seq.* (the "MPIA"); therefore, your request is being processed thereunder. The MPIA provides generally for the disclosure of public records, subject to certain exemptions as to types of records and information. The MPIA does not require the custodian or public agency to create a document or record that does not already exist.



With respect to your request for the above-referenced documents relative to the Special Revitalization Tax for the Revitalization District in the City of Seat Pleasant, the City is in possession of the following documents:

1.      Copies of the Public Notices;

2.      The city's newspaper of record;

With respect to your request for notice given to the affected property owners and the opportunity they had to comment, dates and method:

1.      The City advertised the Proposed Real Property Tax Increase on May 18, 2017 and held the public hearing on Tuesday, May 30, 2017, in accordance to the attached notice and approved meeting minutes of the city;

2.      Mayor and City Council meeting minutes for April 10, 2017, April 15, 2017 and May 30, 2017

3.      City Ordinance No. 0-17-20;

4.      City Charter Section Article VIII Finance, §C-803 Budget Adoption and §C-810 Notice of Tax Levy

The first two hours of City staff time spent gathering and reviewing records responsive to your request, including the City Attorney's time to ensure compliance with the MPIA, is not chargeable under the MPIA; however, beyond that initial two-hour allowance, the MPIA permits the City to charge for the time and expense of identifying and reviewing the records that are responsive to your request, in addition to copying charges.

Thank you for your attention and cooperation in this matter.

Very truly yours,

Dashaun N. Lanham, CMC
City Clerk

Enclosure

cc:    City Administrator
       City Treasurer
       City Attorney

*A COUNTY NEWSPAPER OF RECORD*

# THE PRINCE GEORGE'S POST

(301) 627-0900
(301) 627-6260 Fax

P.O. Box 1001
Upper Marlboro, MD 20773

CITY OF SEAT PLEASANT
6301 ADDISON ROAD
SEAT PLEASANT, MD 20743

INVOICE 0126824          DATE 05/25/17

### CERTIFICATE OF PUBLICATION

THIS IS TO CERTIFY that the annexed legal advertisement has been published in THE
PRINCE GEORGE'S POST for the number of insertions indicated in the invoice below.

Brenda J. Boice

Upper Advertising Manager

- INVOICE -

DESCRIPTION

TOTAL
AMOUNT

LEGAL NOTICE

ORDINANCE O-17-20
FY 2017-2018 CITY BUDGET

$80.00

Date or dates of publication

05/25 & 06/01/2017

**THIS IS AN INVOICE — PAYMENT DUE IMMEDIATELY**

NOTICE: If receipted bill is required for verification of payment, return duplicate with remittance. Duplicate certification of
publication has been mailed to the Register of Wills, Upper Marlboro, Md., if Notice to Creditors is involved.
**PLEASE SHOW INVOICE NUMBER ON REMITTANCE**

MAYOR AND CITY COUNCIL
CITY OF SEAT PLEASANT, MD
ORDINANCE O-17-20
FISCAL YEAR 2017-2018 CITY BUDGET
EFFECTIVE JULY 1, 2017

BE IT ORDAINED AND ENACTED by the Mayor and City Council of Seat
Pleasant, Maryland that sums and amounts were appropriated for the Fiscal
Year beginning July 1, 2017 and ending June 30, 2018 to defray expenses and
operations cost for the City of Seat Pleasant.

GENERAL FUND  $12,452,546
REFUSE FUND   $   277,200

The Ordinance and the budget document are available for review at:

> Office of the City Clerk
> City Hall
> 6301 Addison Road
> Seat Pleasant, Maryland 20743-2125
> (301) 336-2600

Reveral L. Yeargin
City Council President

126824                                        (5-25,6-

*A COUNTY NEWSPAPER OF RECORD*

# THE PRINCE GEORGE'S POST

(301) 627-0900
(301) 627-6260 Fax

P.O. Box 1001
Upper Marlboro, MD 20773

```
CITY OF SEAT PLEASANT
6301 ADDISON ROAD
SEAT PLEASANT MD 20743
```

INVOICE 0126307                    DATE  04/13/17

## CERTIFICATE OF PUBLICATION

THIS IS TO CERTIFY that the annexed legal advertisement has been published in THE
PRINCE GEORGE'S POST for the number of insertions indicated in the invoice below.

*Brenda Douie*
Legal Advertising Manager

- INVOICE -

DESCRIPTION

```
NOTICE
PUBLIC HEARING
FY 2017-2018 BUDGET
```

TOTAL
AMOUNT

$50.00

Date or dates of publication

04/13/17

THIS IS AN INVOICE — PAYMENT DUE IMMEDIATELY

NOTICE: If receipted bill is required for verification of payment, return duplicate with remittance. Duplicate certification of
publication has been mailed to the Register of Wills, Upper Marlboro, Md., if Notice to Creditors is involved.
PLEASE SHOW INVOICE NUMBER ON REMITTANCE

THE CITY OF SEAT PLEASANT
"A Smart City of Excellence"
PUBLIC HEARING
FISCAL YEAR 2017-2018 BUDGET

Monday, April 10, 2017
6:00 P.M.
&
Saturday, April 15, 2017
10:00 A.M.

City Hall
6301 Addison Road
Seat Pleasant MD  20743

The hearings are open to the public and public testimony is encouraged. Persons with questions regarding this hearing may call the City Clerk at (301) 336-2600 for more information.

126307

(4-13)

**THE NEW PRINCE GEORGE'S POST, INC.**
15207 Marlboro Pike
UPPER MARLBORO, MARYLAND 20772

# invoice

0193

301-627-0900     FAX: 301-627-6260

| INVOICE NO. | *0193* |
| INVOICE DATE | *5/18/17* |

SOLD TO:
*Robert L. Ashton*
*City Treasurer*
*City of Seat Pleasant*
*6301 Addison Rd.*
*Seat Pleasant, MD 20743*

| REFERENCE | DESCRIPTION | AMOUNT |
|---|---|---|
| *5/18/17* | *Notice of A Proposed Real Property TAX Increase* *1/8 Page Janion* | *$ 249.00* |
| | *Thank You!* | *$ 249.00* |

**CITY OF SEAT PLEASANT**
**NOTICE OF A PROPOSED**
**REAL PROPERTY TAX INCREASE**

The Mayor and City Council of Seat Pleasant propose to increase real property taxes.

1. For the tax year beginning July 1, 2017 the estimated real property assessable base will increase by 4.6% from 263,404,284 to 274,402,396.

2. If the City of Seat Pleasant maintains the current tax rate of $5.38 per $100 of assessment, real property tax revenues will increase by 4.6% resulting in $79,115.46 of new real property tax revenues.

3. In order to fully offset the effect of increasing assessments, the real property tax should be reduced to $5.5534, the constant yield tax rate.

4. The City is considering not reducing its real property tax rate enough to fully offset increasing assessments. The City proposes to adopt a real property tax rate of $5.59 per $100 of assessment. This tax rate is 4.6% higher than the constant yield tax rate and will generate $79,115.46 in additional property tax revenues.

A public hearing on the proposed real property tax rate increase will be held at 5:30 pm on Tuesday May 30, 2017 at City Hall, 6301 Addison Road Seat Pleasant, Maryland 20743.

The hearing is open to the public and public testimony is encouraged. Persons with questions regarding this hearing may call (301) 336-2600 for further information.

*The Prince George's Post*

City of Seat Pleasant

Listing of Properties on MLK Highway Revitalization District in the study area Tax Code 02

District 18

Tax Period: 7/1/17 - 6/30/18

As of July 1, 2017

| # | Acct # | Address | Owner | |
|---|--------|---------|-------|---|
| 1 | 2038330 | 801 Eastern Avenue | Seat Market, LLC | |
| 2 | 2016061 | 501 Eastern Avenu | Eastern Avenue VOA AE | |
| 3 | 2073864 | Martin Luther King Jr. Highway | Prince George Ind. Properties | |
| 4 | 2033355 | 5600 Martin Luther King Jr. Highway | Seat Pleasant, LLC | |
| 5 | 2110880 | 5601 Martin Luther King Jr. Highway | 5601 MLK, LLC | |
| 6 | 2110898 | 5603 Martin Luther King Jr. Highway | 5601 MLK, LLC | |
| 7 | 2110930 | 5607 Martin Luther King Jr. Highway | 5601 MLK, LLC | |
| 8 | 2033348 | 5700 Martin Luther King Jr. Highway | Seat Market, LLC | |
| 9 | 2113298 | 5701 Martin Luther King Jr. Highway | 5601 MLK, LLC | |
| 10 | 2059509 | 5702 Martin Luther King Jr. Highway | Chen Si Q & Chang L | |
| 11 | 2113306 | 5703 Martin Luther King Jr. Highway | 5601 MLK, LLC | |
| 12 | 2059491 | 5704 Martin Luther King Jr. Highway | Chen Si Q & Chang L | |
| 13 | 2102713 | 5800 Martin Luther King Jr. Highway | Suburban Bank Trust Co | |
| 14 | 2102739 | 5800 Martin Luther King Jr. Highway | Suburban Bank Trust Co | |
| 15 | 2102754 | 5800 Martin Luther King Jr. Highway | Suburban Bank Trust Co | |
| 16 | 2102747 | 5800 Martin Luther King Jr. Highway | Suburban Bank Trust Co | |
| 17 | 2076479 | 5807 Martin Luther King Jr. Highway | Judah Faith LLC | |
| Totals: | | | | |

Council. The Council shall appoint or designate some person to serve for the City Administrator in his/her absence or inability to serve.

## ARTICLE VIII
## FINANCE

### § C-801.   Fiscal Year

The City shall operate on an annual budget. The fiscal year of the City shall begin on the first day of July in any year and shall end on the last day of June in the following year. The fiscal year constitutes the tax year, the budget year, and the accounting year.

### § C-802.   Budget

The Council shall adopt a budget on such date as they shall determine, but at least thirty-two (32) days before the beginning of any fiscal year. The budget shall provide a complete financial plan for the budget year and shall contain estimates of anticipated revenues and proposed expenditures for the coming year. The total of the anticipated revenues shall equal or exceed the total of the proposed expenditures. The budget shall be a public record in the office of the City Clerk, open to public inspection by anyone during normal business hours. The budget shall reflect no deficit spending.

### § C-803.   Budget Adoption

(a)   Before adopting the budget the Council shall hold a public hearing thereon after notice thereof in some newspaper of newspapers having general circulation within the City. The Council may insert new items or may increase or decrease the items of the budget. Where the Council shall increase the total proposed expenditures it shall also increase the total anticipated revenues in an amount at least equal to such total proposed expenditures. The budget shall be prepared and adopted in the form of an ordinance. A favorable vote of at least a majority of the total elected membership of the Council shall be necessary for adoption.

(b)   If the budget is not approved by July 1, a majority vote of the Council shall be necessary to extend the current budget for a single thirty day period. Expenditures for that period shall not exceed one-twelfth (1/12) of the annual expenses provided in the budget of the previous fiscal year.

### § C-804.   Appropriations - Approval

No public money may be expended without having been approved and appropriated by the Council.

### § C-805.   Transfer of Funds

Any transfer of funds between major appropriations for different purposes must be approved by the Council before becoming effective.

### § C-806.   Over-Expenditure Forbidden

No officer or employee shall during any budget year expend or contract to expend any money or incur any liability or enter into any contract which by its terms involves the expenditure of money for any purpose, in excess of the amount appropriated for or transferred to that general classification of expenditure pursuant to this Charter. Any contract verbal or written, made in violation of this section shall be null and void. Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for capital improvements to be financed in whole or in part by the issuance of bonds, nor the making of contracts of lease or for services for a period exceeding the budget year in which such contract is made, when such contract is permitted by law.

### § C-807.  Appropriations Lapse After One Year

All appropriations shall lapse at the end of the budget year to the extent that they shall not have been expended or lawfully encumbered. Any unexpended and unencumbered funds shall be considered a surplus at the end of the budget year and shall be included among the anticipated revenues for the next succeeding budget year.

### § C-808.  Taxable Property

All real property within the corporate limits of the City shall be subject to taxation for municipal purposes. The assessment used for municipal taxation shall be the same as that for State and County taxes. No authority is given by this section to impose taxes on property which is exempt from taxation by any Act of the General Assembly.

### § C-809.  Budget Authorized Levy

From the effective date of the budget, the amount stated therein as the amount to be raised by the property tax shall constitute a determination of the amount of the tax levy in the corresponding tax year.

### § C-810.  Notice of Tax Levy

Immediately after the levy is made by the Council in each year, the City Treasurer shall give notice of the making of the levy by posting a notice thereof in some public place or places in the City. He shall make out and mail or deliver in person to each taxpayer or his agent at his last known address a bill or account of the taxes due from him. This bill or account shall contain a statement of the amount of real estate property with which the taxpayer is assessed, the rate of taxation, the amount of taxes due, and the date on which the taxes will bear interest. Failure to give or receive notice required by this section shall not relieve any taxpayer of the responsibility to pay on the dates established by this Charter all taxes levied on his property.

### § C-811.  When Taxes are Overdue

The taxes provided for in § C-810 of this Charter shall be due and payable on the first day of July in the year for which they are levied and shall be overdue and in arrears on the first day of the following October. They shall bear interest while in arrears at such rate as may from time to time be provided by the laws of the State of Maryland for each month or fraction of a month until paid.

# MAYOR AND CITY COUNCIL
# CITY OF SEAT PLEASANT
# FISCAL YEAR 2018 BUDGET HEARING
# MONDAY, APRIL 10, 2017
# 6:00P.M.

## 1.   OPENING

### 1.1.1 Call to Order
Councilmember President Yeargin called the meeting to order at 6:16p.m.

### 1.1.2 Roll Call
Present: Eugene Grant, Councilmember Charl Jones (Late Arrival), Councilmember Lamar Maxwell, Councilmember Shireka McCarthy, Councilmember Kelly Porter, Councilmember Gloria Sistrunk, Councilmember Reveral Yeargin

Absent:
Councilmember Aretha Stephenson

Staff: Robert Ashton, Acting City Treasurer, Orson Carter, Assistant City Treasurer, Dashaun N. Lanham, City Clerk, Jeannelle Wallace, City Administrator

## 2. Meeting Topics
## 2.1.1. FY2018 Proposed Budget Hearing
- Mayor Grant provided a synopsis of the Fiscal Year 2017-2018 Budgeting for Outcomes Budget.
- Mayor Grant gave a Special Thanks to Kyrthlyn Rhoda, Mr. Williams, Orson Carter, Anthony Biddiex for their work on the budget and sacrificing their week-end.

## CITIZEN'S COMMENTS:
- Elenora Simms-5927 Addison Rd., Seat Pleasant, MD- Ms. Simms inquired if the CDBG Funding was no longer provided, how will the City adjust in the budget?
- Mayor Grant stated that the Executive Team will provide the City Council with a recommendation on areas that can be cut to fund the needs of the city. The City Council could decide not to approve the recommendation.

- Wilhelmina Evans-Seat Pleasant, MD-Ms. Evans stated that the city need to provide transportation for the children and seniors.

## 4. ANNOUNCEMENTS

4.1.1. **Financial Literacy Workshop, Wednesday, April 12, 2017, Seat Pleasant Activity Center, 5720 Addison Rd., Seat Pleasant, MD at 6:00p.m.**

4.1.2. **Community Budget Review Hearing, Saturday, April 15, 2017, Seat Pleasant City Hall-Council Chambers from 10:00a.m.-11:30a.m.**

4.1.3. **City Council Budget Review, Saturday, April 15, 2017, Seat Pleasant City Hall-Council Chambers from 12:00p.m.-5:00p.m.**

4.1.4. **Financial Literacy Workshop, Wednesday, April 19, 2017, Seat Pleasant Activity Center, 5720 Addison Rd., Seat Pleasant, MD at 6:00p.m.**

4.1.5. **City Council Budget Review, Saturday, April 22, 2017, Seat Pleasant City Hall-Council Chambers at 9:00a.m.-5:00p.m.**

4.1.6. **Regular Work Session, Monday, May 1, 2017, Seat Pleasant City Hall-Council Chambers at 6:00p.m.**

4.1.7. **Annual Seat Pleasant Day, Saturday, May 6, 2017, Parade from Birchleaf Park at 11:00a.m., Seat Pleasant Elementary School Grounds Activities at 12:00p.m.**

4.1.8. **Public Session, Monday, May 8, 2017, Seat Pleasant City Hall-Council Chambers at 7:00p.m.**

**Adjourn:**

The Budget hearing adjourned at 7:15 p.m.

Submitted by,

Dashaun N. Lanham, CMC
City Clerk

MAYOR AND CITY COUNCIL
CITY OF SEAT PLEASANT
FISCAL YEAR 2018 BUDGET HEARING
SATURDAY, APRIL 15, 2017
10:00A.M.

## 1.   OPENING

### 1.1.1  Call to Order
Councilmember President Yeargin called the meeting to order at 10:21a.m.

### 1.1.2  Roll Call
Present: Eugene Grant, Councilmember Charl Jones, Councilmember Lamar Maxwell, Councilmember Shireka McCarthy, Councilmember Kelly Porter, Councilmember Gloria Sistrunk, Councilmember Reveral Yeargin

Absent:
Councilmember Aretha Stephenson

Staff: Robert Ashton, Acting City Treasurer, Orson Carter, Assistant City Treasurer, Dashaun N. Lanham, City Clerk

## 2. Meeting Topics
### 2.1.1. FY2018 Proposed Budget Hearing
- City Council held the Budget Hearing Meeting in accordance to the City Charter and four residents were present.
- Council President Yeargin stated that the hearing is to allow the citizens to add in-put on the budget.
- Councilmember McCarthy stated that the City Council, Mayor and Executive Staff had met for a Strategic Plan and had agreed upon seven strategic priorities for the City. She encouraged the residents to review the budget either on-line or through the hard copy of the booklet prepared for this meeting.
- Mayor Grant stated that the City had operated from a line item budget for years. The newly formatted budget of Budgeting for Outcomes provides the residents the details of what they are getting.

## CITIZEN'S COMMENTS:

- Elenora Simms-5927 Addison Rd., Seat Pleasant, MD- Ms. Simms inquired if the city council is prepared to go into the budget. She sees a lot increase for salaries, new staff members and spending. She would like to know where are the dollars coming from. She wanted to know if the City Council understood the previous budget and the proposed budget. She stated that there are a lot people sitting around the table that do not have a vested interested in the city.
- Hope Love-609 63rd Pl., Seat Pleasant, MD-Ms. Love wanted to know if money had been allotted to the school.
- Eric King-7226 Hylton St., Seat Pleasant, MD- Mr. King stated that the meeting is about listening to the citizens and you should be listening to the citizens. His parents owned the property and lived in the city for 50 years. He has questioned why is keeping the house. He wants to see change, but question why would a business want to come into the city. He doesn't feel from a budget prospective we should not be relying on speed camera revenues.
- Mayor Grant explained the EB-5 card, which is a green card to allow the revenues to come into the country.
- Michelle Brown-Slaughter-6713 Adel St., Seat Pleasant, MD-Mrs. Slaughter thanked the Mayor and City Council for the effort in making the changes to the budget. She wanted to know why is it such a low amount going into the interest and investment account. It was stated that the amount is based upon the current interest rate.
- Bryan Walters-5946 Addison Rd., Seat Pleasant, MD-Mr. Walters stated that he lived in the City for seven years and what attracted him was the economic development or potential development. We must spend money to make money.
- Mayor Grant stated that the city subscribed to implant the software provides empirical data.
- stated that he feels that the Mayor should have a part-time assistant on a contractual basis to assist him with the administrative duties. This will allow him to not depend on the City Clerk or others to assist office of the Mayor.
- Mr. Wright stated that he noticed the Public Safety budget was reduced. Mayor Grant advised Mr. Wright that none of the department budgets were cut. Mr. Wright stated that he feels public safety is a priority in every city.
- Mrs. Barbara Kennedy stated that she did not have any comments to be added to the proposed budget hearing.

- Mr. Ashton stated that the he feels that the upgrade of the police vehicles will increase the officer response time.
- Mayor Grant stated that the City Council allowed the Chief to fill the two-vacant officer position within the department. The City Council had enforced a spending moratorium and he was in support of the moratorium. The police department has a grant from the Department of Justice to pay for an officer position. However, the grant requires that the department is fully staffed.

## 4. ANNOUNCEMENTS

4.1.1. Financial Literacy Workshop, Wednesday, April 19, 2017, Seat Pleasant Activity Center, 5720 Addison Rd., Seat Pleasant, MD at 6:00p.m.

4.1.2. City Council Budget Review, Saturday, April 22, 2017, Seat Pleasant City Hall-Council Chambers at 9:00a.m.-5:00p.m.

4.1.3. Regular Work Session, Monday, May 1, 2017, Seat Pleasant City Hall-Council Chambers at 6:00p.m.

4.1.4. Annual Seat Pleasant Day, Saturday, May 6, 2017, Parade from Birchleaf Park at 11:00a.m., Seat Pleasant Elementary School Grounds Activities at 12:00p.m.

4.1.5. Public Session, Monday, May 8, 2017, Seat Pleasant City Hall-Council Chambers at 7:00p.m.

**Adjourn:**
The Budget hearing adjourned at 12:28 p.m.

Submitted by,

Dashaun N. Lanham, CMC
City Clerk

MAYOR AND CITY COUNCIL
CITY OF SEAT PLEASANT
CONSTANT YIELD HEARING
TUESDAY, MAY 30, 2017
5:30P.M.

## 1.   OPENING

### 1.1.1 Call to Order
Council President Yeargin called the Constant Yield Hearing to order at 5:39P.M.

### 1.1.2 Roll Call
Present: Mayor Eugene Grant (Late), Councilmember Charl Jones, Councilmember Lamar Maxwell, Councilmember Kelly Porter (Excused), Councilmember Gloria Sistrunk, Councilmember Reveral Yeargin

Staff: Robert Ashton, City Treasurer, Dashaun N. Lanham, City Clerk

- Mr. Ashton, City Treasurer stated that the Real Property Tax for FY2017-2017 will be at the rate of fifty-eight cents per hundred dollars ($100.00) of assessed real property value. The personal property tax rate has increased for the businesses. The last time the rate was increased was in 2004.
- The state provides the rate for the yield to be rolled back to allow the rate to be the same. They recommended it to be rolled back to .5431 cents. However, the city will not be rolling the rate back.
- We are required to have a hearing and advertisement notice 10 days before the hearing. We have met our requirements with the advertisement notice and the hearing being held today, Tuesday, May 30, 2017.
- We are higher on the personal property for businesses. However, we do not charge the businesses sales taxes, use and occupancy and other fees that other municipalities charges.
- We did not have any residents attend the Constant Yield Hearing.

The Constant Yield Hearing adjourned at 6:13p.m.

Submitted by,

Dashaun N. Lanham, CMC
City Clerk

Page 1 of 1



2017-2018

Seat Pleasant
MARYLAND

# Approved Annual Budget

aret

PLAINTIFF'S EXHIBIT
7

 

**2017-2018**

      

# Approved Annual Budget

**MAYOR AND CITY COUNCIL**
Eugene W. Grant, Mayor
Reveral Yeargin, Mayor Pro Tem
Kelly Porter
Shireka McCarthy
Aretha Stephenson
Charl Jones
Gloria Sistrunk

**CITY ADMINISTRATOR**
Jeannelle Wallace

**CITY TREASURER**
Robert L. Ashton

**BUDGET TEAM**
Kyrthlyn Rhoda
Orson Carter
Adeoye Williams
Anthony Biddiex

## BUDGET TERMS

**Accrual Basis**
The basis of accounting under which revenues and expenses are recognized when they occur, rather than when collected or paid.

**Appropriation**
Legal authorization granted by City Council to make expenditures and incur obligations for specific purposes up to a specific dollar amount.

**Appropriation Ordinance**
An ordinance by which appropriations are made legal. It is the method by which the City Council authorizes expenditures for the subsequent fiscal year.

**Assessed Valuation**
Basis for determining property taxes. Assessor determines assessed valuation of real property by using a value percentage of the property's actual value. The percentage is determined by the State of Maryland.

**Automatic Data Processing Inc. (ADP)**
A comprehensive global provider of cloud-based Human Capital Management (HCM) solutions that unite HR, payroll, talent, time, tax and benefits administration.

**BFO Team**
Executive management team that develops purchasing plans and requests for offers (results) for each priority. The Mayor, the City Administrator, and the City Treasurer also rank the offers based on how they match the request for offers.

**Bond**
Written promise to pay a specified sum of money, called the face value or principal, at a specified date or dates in the future, called the maturity date(s), together with periodic interest at a specified rate.

**Budget**
Plan of financial operation, embodying an estimate of proposed expenditures for a given period and the proposed revenue estimates of financing them. Upon approval by Council, the budget appropriation ordinance is the legal basis for expenditures in the budget year.

**Budgeting for Outcomes (BFO)**
Budgeting for outcomes is a form of priority based budgeting where spending is linked to overall community results. Instead of the traditional approach to budgeting that begins with last year's budget, the starting point for the budget process becomes setting priorities and establishing the amount of revenue available for achieving those priorities. The budget process shifts from paying for costs to buying results. We ask "What's the best way to produce the most value with the dollars we have?" to better align the services delivered by the City with the things that are most important to the community.

of services.

**Special Assessment**
A levy made against certain properties to defray part or all cost of a specific improvement or service deemed to primarily benefit those properties.

**Special Assessment Fund**
A fund used to account for the financing of public improvements or services deemed to benefit primarily the properties against which special assessments are levied.

**Supplemental Requests**
Programs and services which departments would like to have added (in priority order) over their target budget, or if revenue received is greater than anticipated.

**Tax Increment Financing (TIF)**
A financing technique that requires creation of a district whose assessed property value is "frozen". The tax collected on the growth of the district's incremental, or property value over the "frozen" value, is used to finance capital improvements in the district.

**Undesignated Fund Balance**
A portion of a fund balance that has not been designated or reserved for any specific use.

**United States Department of Agriculture – Community Facilities Direct Loan Program**
The Community Facilities Direct Loan Program is a program that provides affordable funding to develop essential community facilities in municipalities. An essential community facility is defined as a facility that provides an essential service to the local community for the orderly development of the community, and does not include private, commercial or business undertakings. This fund will be used to expand City Hall and Public Works facilities in this upcoming year.

**User Fees**
The payment of a fee for direct receipt of a public service by the party benefiting from the service.



City of Seat Pleasant: A Smart City of Excellence

## Offer Summary

A Special Revitalization District is akin to what is known as a "business improvement district," which is a defined area within which businesses are required to pay an additional tax to fund projects within the district's boundaries. These districts typically fund services which are perceived by some businesses as being inadequately performed by government with its existing tax revenues, such as cleaning streets, providing security, making capital improvements, construction of pedestrian and streetscape enhancements, and marketing the area.

The creation of this District would require the City Council to enact legislation specifically increasing the personal property tax for this purpose.  The requested amount represents an additional $4.00 per $100 of assessed values of all properties located in the Revitalization District.

## Additional Information

A special assessment of $4.00 per $100 of assessed value generates the most revenue. Listed below are the options ranging from $1.00 to $4.00.

- 1.00 per 100 of assessed value will generate: $63,216
- 2.00 per 100 of assessed value will generate: $126,432
- 3.00 per 100 of assessed value will generate: $189,648
- 4.00 per 100 of assessed value will generate: $252,864

## Links of Further Detail

www.boe.ca.gov/pdf/pub44.pdf
https://www.stlouis-mo.gov/government/departments/license/business-license-info/Special-Tax-District-License-Process.cfm

## Linkage to Strategic Outcome

1.1: Increase Economic Development
3.1: Develop a Stronger Financial Portfolio

## Improvements & Efficiencies

This offer will benefit the entire City as more revenues, over a quarter of a million dollars, will be generated each year that the tax district legislation is in effect.

107


**STLOUIS-MO ♣ GOV**
Mayor Lyda Krewson

# Special Tax District Information

Certain tax districts have been established which levy a special license fee in addition to the Graduated Business License

## On This Page

Preparation

Instructions

What to Expect

Additional Information

## Overview

Certain tax districts have been established which levy a special license fee in addition to the Graduated Business License.

## Preparation

If you are not sure if your business requires a Graduated Business License (GBL), please click the link "Business License Information", where you will find more information about licensing and a list of business types. Once you are there, click on the business type that describes the type of business you plan to do in the City of St. Louis.

If you still have questions about your business type, please contact our office at 314-622-4528 to find out the appropriate steps that you will need to follow to obtain a business license for the City of St. Louis.

## Instructions

Certain tax districts have been established which levy a special license fee in addition to the Graduated Business License. These funds are funneled back to the Business District for neighborhood improvements.

The areas that have this license tax are:

**Cherokee St**
**Cherokee-Lemp**
**East Loop Parkview Gardens**

The cost of the tax is half of the Graduated Business License up to a limit that is determined by each law. Below are the address ranges of the Special Tax Districts:

## Cherokee, Cherokee-Lemp & East Loop Special Tax Districts address ranges:

The **Cherokee** Special Tax addresses are as follows:

2300-2903  Cherokee Street
3320-3427  South Jefferson Avenue
3354-3420  Iowa Avenue
3404-3412  California Avenue
3417  Ohio Avenue

Download the Cherokee Special Tax District Application here.

The **Cherokee-Lemp** Special Tax addresses are as follows:

700-2299  Cherokee Street
3346-3410  Indiana Avenue
3346-3410  Illinois Avenue
3346-3410  Missouri Avenue
3346-3410  Wisconsin Avenue

# District Taxes
# (Sales and Use Taxes)

PUBLICATION 44 | JANUARY 2017

BOARD MEMBERS

SEN. GEORGE RUNNER (Ret.)   FIONA MA, CPA        JEROME E. HORTON       DIANE L. HARKEY       BETTY T. YEE           DAVID J. GAU
First District               Second District      Third District          Fourth District       State Controller        Executive Director
Lancaster                    San Francisco        Los Angeles County      Orange County

## PREFACE

Most businesses in California are located or do business in special tax districts. This publication is designed as a guide to the application of district tax to your sales and purchases.

The first section presents an overview of district taxes using a question and answer format. Subsequent sections cover the specific application of the tax to place of sale, sales across district lines, construction contractors, and leases.

If you need information about tax rates in specific areas, please select, *California City and County Sales and Use Tax Rates.*

As an additional resource, the BOE offers an online mapping tool to determine the current sales and use tax rate for a specific address. Be sure the address information you input is the address you intended. The tax rate given will reflect the current rate of tax for the address that you enter. To find a tax rate, please select, *Find a Sales and Use Tax Rate by Address.*

Additionally, some cities have developed a database of addresses to help retailers and consumers identify addresses located within special taxing jurisdictions for district tax rates. In cooperation with these cities, the BOE are providing links to their address databases located on the BOE website at *California City and County Sales and Use Tax Rates.* If you have questions about the addresses, please contact the cities directly.

If you cannot find the information you are looking for in this publication, please call the BOE Customer Service Center at 1-800-400-7115. Customer service representatives are available to answer your questions weekdays between 8:00 a.m. and 5:00 p.m. (Pacific time), except state holidays.

This publication complements publication 73, *Your California Seller's Permit,* which includes general information about obtaining a permit; using a resale certificate; collecting and reporting sales and use taxes; buying, selling, or discontinuing a business; and keeping records. Please also refer to the BOE website or the For More Information section for the complete list of BOE regulations and publications referenced in this publication.

The BOE welcomes your ideas on improving this or any other BOE publication. Please send your suggestions to:

Audit and Information Section, MIC:44
California State Board of Equalization
PO Box 942879
Sacramento, CA 94279-0044

To contact your Board Member, see *www.boe.ca.gov/members/board.htm.*

*Note:* This publication summarizes the law and applicable regulations in effect when the publication was written, as noted on the cover. However, changes in the law or in regulations may have occurred since that time. If there is a conflict between the text in this publication and the law, the decision will be based on the law and not on this publication.

COUNCIL OF THE CITY OF SEAT PLEASANT, MARYLAND

| | |
|---|---|
| Ordinance No. | O-17-20 |
| Introduced By | City Council |
| Date Introduced | May 8, 2017 |
| First Reading: | May 8, 2017 |
| Second Reading: | May 15, 2017 |
| Dated Adopted: | May 15, 2017 |
| Date Effective: | June 5, 2017 |

AN ORDINANCE to Adopt the Budget for Fiscal Year 2017–2018 and to Provide for the Establishment of Budgeting for Outcomes for the FY2018 Fiscal Year

SECTION 1.  BE IT ORDAINED AND ENACTED by the City Council of Seat Pleasant, Maryland, that the sums and amounts appropriated for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018 are set forth in this Ordinance.

SECTION 2.  AND BE IT FURTHER ORDAINED AND ENACTED that the following sums and amounts are hereby appropriated for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018 to defray expenses and operations costs for the City of Seat Pleasant.

GENERAL FUNDS

EXPENDITURES
| | |
|---|---|
| GENERAL GOVERNMENT | $ 7,953,459 |
| PUBLIC SAFETY | 2,320,806 |
| PUBLIC WORKS | 968,847 |
| PUBLIC ENGAGEMENT | 938,434 |
| COMMUNITY DEVELOPMENT GRANT | 100,000 |
| DEBT SERVICES | 171,000 |
| **TOTAL GENERAL FUND EXPENDITURES** | **$ 12,452,546** |

REVENUES
| | |
|---|---|
| REAL ESTATE TAXES | $ 1,704,825 |
| REVITALIZATION TAXES | 252,864 |

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 1 of 5



| | |
|---|---|
| PERSONAL PROPERTY | 2,000,000 |
| INTERGOVERNMENT & GRANTS | 636,218 |
| OTHER FINANCING SOURCE USDA LOAN | 4,100,000 |
| PROCEEDS FROM PRIOR YEAR GENERAL FUND RESERVES | 1,500,000 |
| PROCEEDS FROM PRIOR YEAR SPEED CAMERA | 178,415 |
| PROCEEDS FROM PRIOR YEAR RED LIGHT | 405,816 |
| OTHER LOCAL REVENUE | 1,674,408 |

**TOTAL GENERAL FUND REVENUES** $ 12,452,546

**REFUSE FUND**

**REVENUES**

| | | |
|---|---|---|
| REFUSE  COLLECTION | $ | 277,200 |
| **TOTAL REFUSE FUND REVENUES** | $ | 277,200 |

**EXPENDITURES**

| | | |
|---|---|---|
| REFUSE COLLECTION CONTRACT | $ | 277,200 |
| **TOTAL REFUSE FUND EXPENDITURES** | $ | 277,200 |

**SPEED CAMERA FUND PRIOR YEAR**

**REVENUES**

| | | |
|---|---|---|
| PRIOR YEAR FUND BALANCE SPEED CAMERA FEES | $ | 178,415 |
| **TOTAL SPEED CAMERA FUND REVENUES** | $ | 178,415 |

**EXPENDITURES**

| | | |
|---|---|---|
| SPEED CAMERA EXPENDITURE ITEMS | $ | 178,415 |
| **TOTAL SPEED CAMERA FUND EXPENDITURES** | $ | 178,415 |

Ordinance O-17-20 Adoption of Fiscal Year 2017-2018 Budget
May 8, 2017
Page 2 of 5

**SECTION 3. AND BE IT FURTHER ORDAINED AND ENACTED** that the Real Property Tax for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of fifty-eight cents (.58) per hundred dollars ($100.00) of assessed real property value.

**SECTION 4. AND BE IT FURTHER ORDAINED AND ENACTED** that a Special Revitalization Real Property Tax for properties located within the business improvement district within the Martin Luther King Commercial Corridor for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of four dollars (4.00) per hundred dollars ($100.00) of assessed real property value.

**SECTION 5. AND BE IT FURTHER ORDAINED AND ENACTED** that the Personal Property Tax for the Fiscal Year beginning July 1, 2017 and ending June 30, 2018, shall be at the rate of fifteen dollars ($15.00) per one hundred dollars ($100.00) of assessed personal property value.

**SECTION 6. AND BE IT FURTHER ORDAINED AND ENACTED** that from and after the effective date of this Ordinance funds appropriated to the general categories of expenditures by and as reflected in this Ordinance shall be expended only for such purposes, and up to such amounts for each such purpose, as set forth in the document entitled 2017-2018 APPROVED ANNUAL BUDGET FY18 attached to this Ordinance and incorporated herein by reference.

**SECTION 7. AND BE IT FURTHER ORDAINED AND ENACTED** that:

1.      In order to measure the effectiveness and efficiency of each City Department, not later than July 31, 2017 the head of each City Department, working with the City Administrator, shall establish measurable Departmental goals and objectives for the City's Fiscal Year beginning July 1, 2017 and ending June 30, 2018, not inconsistent with this Ordinance and the City's 2017-2018 APPROVED BUDGET ," to ensure that the funds allocated to that Department are utilized in a manner that can be verified to the satisfaction of the City Council.

2.      The head of each City Department shall make a quarterly report to the City Administrator on September 30th and December 31st, 2017 and March 31st and June 30th, 2018 detailing the progress of that Department towards meeting its established goals and objectives for the 2018 Fiscal Year.

3.      The City Administrator shall review with the head of each City Department that Department's quarterly report and shall submit to the City Council on or before October 10, 2017 and January 10, April 10 and July 10, 2018, composite reports detailing the progress being made by all City Departments in meeting their established goals and objectives.

_____, 2017


Dashaun N. Lanham, CMC
**City Clerk**


In accordance with Section C-313 of the Charter of the City of Seat Pleasant, I hereby
~~Approve~~ or Disapprove this Ordinance this _10_ day of _May_ _____,
~~2017.~~


Eugene W. Grant
**Mayor**

**EXPLANATION**

CAPITALS INDICATE MATTER ADDED TO EXISTING LAW.
((Double Parenthesis)) indicate matter deleted from existing law.
Underlining indicates amendments to bill.
~~Strike-Out~~ indicates matter stricken from the bill by amendment or deleted from the law.

# Five Property Owners Affected by

## City of Seat Pleasant FY2018 Special Assessment Tax

| Tax ID | Name | Parcel Address | 2016-2017 Town Levy | 2017-2018 Town Levy | 2016-2017 County Tax Bill (incl Levy) | 2017-2018 County Tax Bill (incl Levy) |
|---|---|---|---|---|---|---|
| 2033330 | Seat Market LLC | 401 Eastern Ave | 5,991.60 | 55,019.54 | 21,944.38 | 73,288.12 |
| 2033348 | Seat Market LLC | 5700 Martin Luther King Jr. Hwy | 367.52 | 2,908.30 | 1,320.13 | 3,863.99 |
| 2059509 | CHEN SI Q & CHANG L | 5702 Martin Luther King Jr. Hwy | 2,137.50 | 17,147.52 | 7,494.65 | 22,592.05 |
| 2059491 | CHEN SI Q & CHANG L | 5704 Martin Luther King Jr. Hwy | 1,705.98 | 14,033.12 | 6,099.42 | 18,599.77 |
| 2102754 | SUBURBAN TRUST CO | 5800 Martin Luther King Jr. Hwy | 9,327.94 | 81,617.12 | 32,417.51 | 107,368.61 |
| 2102739 | SUBURBAN TRUST CO | 5800 Martin Luther King Jr. Hwy | 207.80 | 1,644.22 | 781.27 | 2,219.27 |
| 2102747 | SUBURBAN TRUST CO | 5800 Martin Luther King Jr. Hwy | 133.70 | 1,057.98 | 506.14 | 1,431.26 |
| 2102713 | SUBURBAN TRUST CO | 5800 Martin Luther King Jr. Hwy | 232.38 | 1,836.58 | 836.28 | 2,441.74 |
| 2110880 | 5601 MLK LLC | 5601 Martin Luther King Jr. Hwy | 4,011.28 | 32,179.08 | 13,877.10 | 42,208.84 |
| 2110930 | 5601 MLK LLC | 5607 Martin Luther King Jr. Hwy | 903.26 | 8,097.44 | 3,316.64 | 10,801.27 |
| 2113298 | 5601 MLK LLC | 5701 Martin Luther King Jr. Hwy | 6,366.08 | 57,474.40 | 22,547.80 | 75,323.75 |
| 2113306 | 5601 MLK LLC | 5703 Martin Luther King Jr. Hwy | 276.46 | 981.78 | 2,519.00 | 3,325.31 |
| 2076479 | JUDAH FAITH LLC | 5807 Martin Luther King Jr. Hwy | 208.42 | 1,795.36 | 718.42 | 2,350.63 |





Owned by The Government of Seat Pleasant (not taxed)

Owned by Seat Market LLC

Owned by Chen Si Q & Chang L

Owned by Barban Trust

Owned by 5501 MLK LLC

Owned by Judah Faith LLC



Martin Luther King Jr. Highway Gateway Redevelopment Study · A Town Center Destination District, Development Framework within the City of Seat Pleasant, Maryland, Prince George's County

Six Primary Placemaking Precinct Site Developments

A Sustainable Compact Transit Railway Community



## Property Tax Inquiry

### PRINCE GEORGE'S COUNTY
### REAL PROPERTY TAX INFORMATION FOR FY 18
### TAX PERIOD 07/01/17 - 06/30/18
#### MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126

| ACCOUNT NUMBER: | 2033330 | DISTRICT: | 18 | DATA AS OF: | 10/12/17 at 17:52:44 | New Search |

**OWNER:**
SEAT MARKET LLC

CARE OF:

Help

Payment History

| PROPERTY ADDRESS: | MAILING ADDRESS: |
| --- | --- |
| 000401 EASTERN AVE | 12101 BROOKHAVEN DR |
| CAPITOL HEIGHTS  MD  20743-0000 | SILVER SPRING, MD 20902- |
| MORTGAGE: | UNKNOWN |
| PROPERTY DESCRIPTION: | PARCEL EQ 1959 0 SQ FT |

| | | | |
| --- | --- | --- | --- |
| SUBNAME: | GOLDBERGS SUPER | LIBER/FOLIO: | 35687/580 |
| SECTION: | | DATE/DEED: | |
| LOT: | | LAND: | 156,700.00 |
| BLOCK: | | IMPS: | 1,044,600.00 |
| ACREAGE: | 19590.000 | ASSESSMENT: | 1,201,300.00 |
| OCCUPANCY: | NOT PRINCIPAL RESIDENCE | | |

As part of our commitment to provide citizens with efficient, convenient services, Prince George's County,

Maryland has partnered with Govolution to offer electronic payments over the Internet.  Govolution will assess

a **service fee** for each transaction processed.

**Pay Online**

*** IMPORTANT: The Pay Online link opens in a separate browser window. To protect your personal
information, please remember to close your browser after printing your payment receipt. Thank you
for using this service. ***

| TAX DESCRIPTION: | TAX/CHARGE: |
| --- | --- |
| COUNTY PROPERTY TAX | 10,058.86 |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | 480.52 |
| STATE OF MARYLAND | 1,315.42 |
| PARK & PLANNING | 3,531.82 |
| STORMWATER/CHESAPEAKE BAY WATER QUALITY | 562.70 |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | 312.34 |
| TOWN LEVY | |
| OTHER MUNICIPAL CHARGES | 0.00 |
| FRONT FOOT | 0.00 |
| SOLID WASTE SERVICE CHARGE (Retail Store) | 1,701.04 |
| CLEAN WATER ACT FEE | 61.55 |
| SPECIAL AREA | 0.00 |
| LIENS | 0.00 |
| OTHER TAXES/FEES | 0.00 |
| LESS STATE OWNERS TAX CREDIT | 0.00 |
| LESS HOMESTEAD TAX CREDIT | 0.00 |
| LESS DISCOUNT/CREDIT | 0.00 |
| TOTAL | 73,288.12 |
| PAYMENT RECEIVED | 0.00 |
| REFUND DATE | 0.00 |
| | REFUND AMOUNT | 0.00 |

| Account No: | 2033330 | FY18 | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | SEMIANNUAL INSTALLMENTS | | | | FULL |
| | 1ST 1/2 YEAR DUE SEP. 30 | | 2ND 1/2 YEAR DUE DEC 31 | | | AMOUNT |
| PAY BY | DUE | PAY BY | DUE | | | |
| OCT 2017 | 36,644.06 | | 37,250.14 | 36,847.05 | | 73,494.37 |
| NOV 2017 | | | | 0.00 | | 73,694.37 |

Make check or money order payable to: Prince George's County

Mail to:  Prince George's County Treasury Division
14741 Gov. Oden Bowie Drive, Room 1090
Upper Marlboro, Md  20772

**PAYMENT MUST ARRIVE IN THIS OFFICE BY THE DUE DATE TO AVOID ADDITIONAL INTEREST & PENALTIES.**

2017 - Prince George's County, Maryland. All Rights Reserved.



# Property Tax Inquiry

**PRINCE GEORGE'S COUNTY**
**REAL PROPERTY TAX INFORMATION FOR FY 17**
**TAX PERIOD 07/01/16 - 06/30/17**
**MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126**

| ACCOUNT NUMBER: | 2033330 | DISTRICT: | 18 | DATA AS OF: | 10/13/17 at 18:55:58 | New Search |
|---|---|---|---|---|---|---|
| OWNER: | | | | CARE OF: | | Help |
| SEAT MARKET LLC | | | | | | Payment History |

**PROPERTY ADDRESS:**
000401 EASTERN AVE
CAPITOL HEIGHTS MD 20743-0000
**MORTGAGE:**
**PROPERTY DESCRIPTION:**

**MAILING ADDRESS:**
12101 BROOKHAVEN DR
SILVER SPRING, MD 20902-
UNKNOWN
PARCEL EQ 1858 0 SQ FT

| CONDO-PLAT: | | PHASE | BLDG | UNIT | |
|---|---|---|---|---|---|
| SUBNAME: | GOLDBERGS SUPER | | | LIBER/FOLIO | 35687/590 |
| SECTION: | | | | LAST DEED | 02/20/2012 |
| LOT: | | | | LAND: | 143,634.00 |
| BLOCK: | | | | IMPROVEMENTS | 889,400.00 |
| ACREAGE: | 18590.000 F | | | ASSESSMENT: | 1,033,034.00 |
| OCCUPANCY: | NOT PRINCIPAL RESIDENCE | | | | |

**TAX DESCRIPTION:** TAXCHARGE:

| | |
|---|---|
| COUNTY PROPERTY TAX | 6,626.17 |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | 413.21 |
| STATE OF MARYLAND | 1,157.00 |
| PARK & PLANNING | 3,037.12 |
| STORMWATER/CHESAPEAKE BAY WATER QUALITY | 69.384 |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | 268.59 |
| TOWN LEVY | 4,639.00 |
| OTHER MUNICIPAL CHARGES | 0.00 |
| FRONT FOOT | 0.00 |
| SOLID WASTE SERVICE CHARGE (Refuse Store) | 1,701.34 |
| CLEAN WATER ACT FEE | 0.00 |
| SPECIAL AREA | 0.00 |
| LIENS | 0.00 |
| OTHER TAXES/FEES | 0.00 |
| LESS HOMEOWNER'S TAX CREDIT | 0.00 |
| LESS HOMESTEAD TAX CREDIT | 0.00 |
| LESS DISCOUNT CREDIT | 0.00 |
| TOTAL | 21,844.98 |
| PAYMENT RECEIVED | 12/09/2016 |
| REFUND DATE | REFUND AMOUNT 0.00 |

Account No: 2033330   FY17

©2017 Prince George's County, Maryland. All Rights Reserved.





MARTIN LUTHER KING JR. HIGHWAY GATEWAY REDEVELOPMENT





# Martin Luther King Jr. Highway Gateway Redevelopment Study — A Town Center Destination District, Development Framework within the City of Mount Pleasant, Maryland, Prince George's County

nonprofit organizations, professional offices, and other neighborhood serving businesses. As in many parts of the county and region, the market will not justify speculative office space. Any major new office development will need to have signed leases before beginning construction. In stimulating revitalization activity within the Martin Luther King Jr. Highway district, attracting a county or state government tenant would be the catalyst required to spur investment interest. Current rents at the area shopping centers and throughout the Project Area would increase the types of activities that would drive consumer demand for goods and services during peak hours. This additional consumer density would be driven by ancillary commerce brought to the area by visitors.

**Table 1: Population and Household Profile**

| | Mount Pleasant Trade Area | Greater Addison Road Trade Area | Prince George's County |
|---|---|---|---|
| Population | 4,466 | 78,796 | 858,492 |
| Households | 1,663 | 9,360 | 298,519 |
| Avg. Household Size | 2.58 | 2.59 | 2.79 |
| Median Household Income | $59,696 | $54,434 | $65,851 |
| **Age distribution** | | | |
| Under 18 | 29.7% | 29% | 26.8% |
| 18-24 | 7.8% | 8.3% | 10.5% |
| 25-34 | 23.3% | 13.6% | 13.7% |
| 35-44 | 24.1% | 14.9% | 17.3% |
| 45-54 | 11% | 9.4% | 9.4% |
| 65 and Over | 7.7% | 7.7% | 7.7% |
| Total | 100% | 100% | 100% |

**Table 2: Household Type and Race/Ethnicity**

| | Mount Pleasant Trade Area | Greater Addison Road Trade Area | Prince George's County |
|---|---|---|---|
| **Household Type** | | | |
| Family | 72.3 | 74.8 | 64.6% |
| Non - Family | 14.7 | 24.8 | 35.4% |
| Household Tenure | | | |
| Renter | 35.3% | 38.2 | 60.3 |
| Owner | 64.5% | 61.7 | 0 |
| **Ethnicity** | | | |
| White | 84.5% | 64.5% |
| African American | 2.04 | 4.30 | 23.2% |
| Hispanic | 6.3% | 0.73 | 6.4% |
| Asian | 0.3% | 1.96 | 7.2% |
| Other | 0.5% | 0.5% | 2.6% |
| Total | 100% | 100% | 100% |

Source: Census, 2000; on-site FFC/FGC Planning

A Reinvent Countywide Beach Railway Community



Martin Luther King Jr. Highway Gateway Redevelopment Study – A Transit Center Destination District, Development Framework within the City of East Pleasant, Maryland, Prince George's County

Site Primary Placemaking Precinct Site Developments

A Historical Community Book Railway Community

Page 14



Martin Luther King, Jr. Highway Gateway Redevelopment Study - A Town Center Destination District, Development Framework within the City of Seat Pleasant, Maryland, Prince George's County

## PROPOSED SITE DEVELOPMENT SCENARIO

**Project Site Map Location**

**Site 6**

**Project Summary**

The proposed requires the assemblage of five (5) parcels combining a total of two mmy plus. The proposed 8 story mix, mixed-use, 518,464 square feet development will contain 240 residential units, 30,006 feet of commercial retail, and a structured parking facility for 225 cars.

### Plat:
| | |
|---|---|
| Total Site Area: | A=3403 |
| Current Zoning: | 92,933 |
| Allowable F.A.R.: | M-U-I |
| Allowable Area (SF): | Vary to Area |
| Allowable Height (FT): | Vary to Area |

### LAND SUMMARY

| LOT | | | | | |
|---|---|---|---|---|---|
| **Zoning** | **Lot/Parcel** | **Owner** | **Land Area Sq Ft** | **Assessed Value** | |
| M-U-I | 55 | Jackson, E. & T. J. M Gardine | 4,778 | $209,466 | |
| M-U-I | 56 | PEPCO | 3,791 | $0.00 | |
| M-U-I | 59 | City of Seat Pleasant | 65,240 | $221,268 | |
| M-U-I | - | Chen S1 Qdt Chang L. | 5,335 | $224,532 | |
| M-U-I | 58 | Chen S1 Qdt Chang L. | 8,189 | $224,532 | |
| | | **Total** | **92,933** | **$983,806** | |

| | | |
|---|---|---|
| | **SF** | **SF** |
| Cost/SF | 92,933 | $110.58 |
| Cost/FAR SF (Current) | | |

**Cost FAR SF (Proposed)**     518,464

**Zoning**

| | |
|---|---|
| Project use: | Residential/Commercial-Retail/Parking |
| Use existing zoning: | |
| What zoning recommending: | Yes |
| What would be new /requested allowable FAR: | 6.0 |
| New allowable square footage: | 557,598 |

**Building Area (Gross)**

| | |
|---|---|
| | **Floors** |
| Residential | 7 |
| Commercial/Rental | 1 |
| Parking Three Levels Structured | |
| **Total** | **8** |

$1.89

## PROJECT ECONOMICS

**Economics**

**Project Costs**

| | **SF** | **SF** |
|---|---|---|
| | | **CSF** |
| | | 518,464 |
| | | 333,464 |
| | | 30,006 |
| | | 135,000 |
| | | 518,464 |

| | | **Totals** |
|---|---|---|
| Land | $1.89 | $983,806 |
| Hard Costs | $200.00 | $76,692,800 |
| Soft Costs | $36.97 | $19,171,320 |
| Interest | $16.67 | $8,638,208 |
| **Total** | **$265.63** | **$105,386,324** |



Prince Georges county

## Property Tax Inquiry

### PRINCE GEORGE'S COUNTY
### REAL PROPERTY TAX INFORMATION FOR FY 17
### TAX PERIOD 07/01/16 - 06/30/17
#### MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126

| | | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER: | 2033348 | DISTRICT: | 18 | DATA AS OF: | 10/13/17 at 18:53:06 |

New Search
Help
Payment History

OWNER:
CARE OF:

SEAT MARKET LLC

PROPERTY ADDRESS:
005700 MARTIN LUTHER KING JR HWY
CAPITOL HEIGHTS MD 20743-0000
MORTGAGE:

MAILING ADDRESS:
12101 BROOKHAVEN DR
SILVER SPRING, MD 20902-
UNKNOWN

PROPERTY DESCRIPTION:

| CONDO/PLAT | PHASE: | BLOCK: | UNIT: | |
|---|---|---|---|---|
| SUBNAME: | | LIBER/FOLIO: | 35867/690 |
| SECTION: | | DATE/DEED: | 08/02/2/2014 |
| LOT: | | LAND: | $1,200.00 |
| BLOCK: | | BLDG: | $2,166.00 |
| ACREAGE: | 8535.000 F | ASSESSMENT: | $3,366.00 |
| OCCUPANCY: | NOT PRINCIPAL RESIDENCE | | |

| TAX DESCRIPTION: | TAX/CHARGE: |
|---|---|
| COUNTY PROPERTY TAX | $20.74 |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | 25.35 |
| STATE OF MARYLAND | 37.67 |
| PARK & PLANNING | 166.30 |
| STORMWATER/CHESAPEAKE BAY WATER QUALITY | 34.22 |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | 16.48 |
| TOWN LEVY | |
| OTHER MUNICIPAL CHARGES | 0.00 |
| FRONT FOOT | 0.00 |
| SOLID WASTE SERVICE CHARGE | 0.00 |
| STORM WATER FEE | 69.55 |
| SPECIAL AREA | 0.00 |
| LIENS | 0.00 |
| OTHER TAXES/FEES | 0.00 |
| LESS HOMEOWNERS TAX CREDIT | 0.00 |
| LESS HOMESTEAD TAX CREDIT | 0.00 |
| LESS DISCOUNT CREDIT | 0.00 |
| TOTAL | 1,320.13 |
| PAYMENT RECEIVED | 1,320.13 |
| REFUND DATE: | REFUND AMOUNT: 0.00 |

| Account No: | 2033348 | FY17 |
|---|---|---|


2016 Prince George's County, Maryland. All Rights Reserved.



## Property Tax Inquiry

**PRINCE GEORGE'S COUNTY**
**REAL PROPERTY TAX INFORMATION FOR FY 18**
**TAX PERIOD 07/01/17 - 06/30/18**
**MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126**

| ACCOUNT NUMBER: | 2033348 | DISTRICT: | 18 | DATA AS OF: | 10/12/17 at 17:54:15 | New Search |

**OWNER:**
SEAT MARKET LLC

**CARE OF:**

Help

Payment History

**PROPERTY ADDRESS:**
005700 MARTIN LUTHER KING JR HWY
CAPITOL HEIGHTS  MD  20743-0000

**MAILING ADDRESS:**
12101 BROOKHAVEN DR
SILVER SPRING, MD 20902-

**MORTGAGE:**

**UNKNOWN**

**PROPERTY DESCRIPTION:**

CONDO PLAT:
SUBNAME:
SECTION:
LOT:
BLOCK:
ACREAGE:              8535.000 F
OCCUPANCY:          NOT PRINCIPAL RESIDENCE

PHASE:    BLDG:    UNIT:
LIBER/FOLIO:                                      35987590
LATEST DEED:                                      02/20/2015
LAND:                                             51,200.00
IMPST:                                            12,300.00
ASSESSMENT:                                       63,500.00

As part of our commitment to provide citizens with efficient, convenient services, **Prince George's County,**
**Maryland** has partnered with Govolution to offer electronic payments over the Internet.  Govolution will assess
a **service fee** for each transaction processed.

### Pay Online

\*\*\* IMPORTANT: The Pay Online link opens in a separate browser window. To protect your personal
information, please remember to close your browser after printing your payment receipt. Thank you
for using this service. \*\*\*

| TAX DESCRIPTION: | TAX/CHARGE: |
| --- | --- |
| COUNTY PROPERTY TAX | 582.84 |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | 25.40 |
| STATE OF MARYLAND | 70.17 |
| PARK & PLANNING | 188.69 |
| STORMWATER/CHESAPEAKE BAY WATER QUALITY | 29.50 |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | 16.51 |
| TAX INCREMENT | |
| OTHER MUNICIPAL CHARGES | 0.00 |
| FRONT FOOT | 0.00 |
| SOLID WASTE SERVICE CHARGE | 8.00 |
| CLEAN WATER ACT FEE | |
| SPECIAL AREA | 0.00 |
| LIENS | 0.00 |
| OTHER TAXES/FEES | 0.00 |
| LESS HOMEOWNERS TAX CREDIT | 0.00 |
| LESS HOMESTEAD TAX CREDIT | 0.00 |
| LESS DISCOUNT CREDIT | 0.00 |
| TOTAL: | 3,863.99 |
| PAYMENTS RECEIVED | 0.00 |
| REFUND DATE | REFUND AMOUNT | 0.00 |

| Account No: | 2033348 | | FY18 | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | 1ST 1/2 YEAR DUE SEP 30 | | 2ND 1/2 YEAR DUE DEC 31 | | | AMOUNT |
| COST 2017 | | 1,932.00 | | | 1,931.99 | 0.00 | | 1,931.99 | 3,865.99 |

Make check or money order payable to: **Prince George's County**

Mail to:   Prince George's County Treasury Division
                14741 Gov. Oden Bowie Drive, Room 1090
                Upper Marlboro, Md  20772

**PAYMENT MUST ARRIVE IN THIS OFFICE BY THE DUE DATE TO AVOID ADDITIONAL INTEREST & PENALTIES.**



Friday, October 13, 2017

## Property Tax Inquiry

### PRINCE GEORGE'S COUNTY
### REAL PROPERTY TAX INFORMATION FOR FY 17
### TAX PERIOD 07/01/16 - 06/30/17
### MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126

| ACCOUNT NUMBER: | 2059509 | DISTRICT: | 18 | DATA AS OF: | 10/13/17 at 16:48:07 | New Search |
|---|---|---|---|---|---|---|
| OWNER: | | CARE OF: | | | | Help |

CHEN SI Q & CHANG L

Payment History

| PROPERTY ADDRESS: | MAILING ADDRESS: |
|---|---|
| 005702 MARTIN LUTHER KING JR HWY | 11309 ROYAL MANOR WAY |
| CAPITOL HEIGHTS MD 20743-0000 | NORTH POTOMAC, MD 20878-4855 |
| MORTGAGE: | UNKNOWN |

**PROPERTY DESCRIPTION:**

| CONDO PLAT: | | PHASE: | BLDG: | UNIT: | | |
|---|---|---|---|---|---|---|
| SUBNAME: | | | LIBER/FOLIO: | | | 07402/636 |
| SECTION: | | | DATE STORED: | | | 08/21/1988 |
| LOT: | | | LAND: | | | 222,200.00 |
| BLOCK: | | | IMPS: | | | 146,634.00 |
| ACREAGE: | 8889.000 F | | ASSESSMENT: | | | 368,534.00 |
| OCCUPANCY: | NOT PRINCIPAL RESIDENCE | | | | | |

**TAX DESCRIPTION:**

| TAX DESCRIPTION: | | | | | | TAX/CHARGE: |
|---|---|---|---|---|---|---|
| COUNTY PROPERTY TAX: | | | | | | 3,089.95 |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | | | | | | 147.41 |
| STATE OF MARYLAND | | | | | | 412.76 |
| PARK & PLANNING | | | | | | 1,063.49 |
| STORMWATER/CHESAPEAKE BAY/WATER QUALITY | | | | | | 199.01 |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | | | | | | 95.82 |
| TOWN LEVY: | | | | | | 2,243.60 |
| OTHER MUNICIPAL CHARGES | | | | | | 0.00 |
| FRONT FOOT | | | | | | 0.00 |
| SOLID WASTE SERVICE CHARGE (Fast Food) | | | | | | 231.44 |
| CLEAN WATER ACT FEE | | | | | | 105.67 |
| SPECIAL AREA | | | | | | 0.00 |
| LIENS: | | | | | | 0.00 |
| OTHER TAXES/FEES | | | | | | 0.00 |
| LESS HOMEOWNERS TAX CREDIT | | | | | | 0.00 |
| LESS HOMESTEAD TAX CREDIT | | | | | | 0.00 |
| LESS DISCOUNT CREDIT | | | | | | 0.00 |
| TOTAL | | | | | | 7,494.66 |
| PAYMENT RECEIVED | | | | 09/27/2016 | | 7,494.66 |
| REFUND DATE: | | | | REFUND AMOUNT: | | 0.00 |

| Account No: | 2059509 | | FY17 |
|---|---|---|---|



©2017 Prince George's County, Maryland. All Rights Reserved.



Monday, October 09, 2017

## Property Tax Inquiry

**PRINCE GEORGE'S COUNTY**
**REAL PROPERTY TAX INFORMATION FOR FY 18**
**TAX PERIOD 07/01/17 - 06/30/18**
**MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126**

| ACCOUNT NUMBER: | 2059509 | DISTRICT: | 18 | DATA AS OF: | 10/09/17 at 13:48:08 | New Search |

OWNER:   CARE OF:   Help

CHEN SI Q & CHANG L   Payment History

PROPERTY ADDRESS:   MAILING ADDRESS:
005702 MARTIN LUTHER KING JR HWY   11309 ROYAL MANOR WAY
CAPITOL HEIGHTS MD 20743-0000   NORTH POTOMAC, MD 20878-4855
MORTGAGE:   UNKNOWN
PROPERTY DESCRIPTION:

As part of our commitment to provide citizens with efficient, convenient services, Prince George's County,
Maryland has partnered with Govolution to offer electronic payments over the Internet. Govolution will assess
a **service fee** for each transaction processed.

**Pay Online**

*** IMPORTANT: The Pay Online link opens in a separate browser window. To protect your personal
information, please remember to close your browser after printing your payment receipt. Thank you
for using this service. ***

TAX DESCRIPTION:   TAX/CHARGE:

**Account No:** 2059509   **FY18**

Make check or money order payable to: Prince George's County
Mail to:  Prince George's County Treasury Division
14741 Gov. Oden Bowie Drive, Room 1090
Upper Marlboro, Md 20772
**PAYMENT MUST ARRIVE IN THIS OFFICE BY THE DUE DATE TO AVOID ADDITIONAL INTEREST & PENALTIES.**



Friday, October 13, 2017

# Property Tax Inquiry

## PRINCE GEORGE'S COUNTY
### REAL PROPERTY TAX INFORMATION FOR FY 17
### TAX PERIOD 07/01/16 - 06/30/17
### MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126

| ACCOUNT NUMBER: | 2059491 | DISTRICT: | 18 | DATA AS OF: | 10/13/17 at 18:50:56 | New Search |

OWNER:                                              CARE OF:                                    Help

CHEN SI Q & CHANG L                                                                            Payment History

PROPERTY ADDRESS:                        MAILING ADDRESS:
005704 MARTIN LUTHER KING JR HWY        11309 ROYAL MANOR WAY
CAPITOL HEIGHTS MD 20743-0000           N POTOMAC, MD 20878-4855
MORTGAGE:                                UNKNOWN
PROPERTY DESCRIPTION:                    LOT 10 EX 3125 SQ FT AT FRONT

CONDO PLAT:                              PHASE:          BLDG:   UNIT:
SUBNAME:          WEISSNER ESTATES                               LIBER/FOLIO:              07402/636
SECTION:                                                         LATEST DEED:              08/21/1989
LOT:                                                             LAND:                     67,334.00
BLOCK:                                                           IMPS:                     226,900.00
ACREAGE:          8395.000 F                                     ASSESSMENT:               294,134.00
OCCUPANCY:        NOT PRINCIPAL RESIDENCE

| TAX DESCRIPTION: | TAX/CHARGE: |
| --- | --- |
| COUNTY PROPERTY TAX | 2,458.99 |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | 117.65 |
| STATE OF MARYLAND | 323.45 |
| PARK & PLANNING | 864.75 |
| STORMWATER/CHESAPEAKE BAY/WATER QUALITY | 155.93 |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | 76.47 |
| BONDED | 2,203.00 |
| OTHER MUNICIPAL CHARGES | 0.00 |
| FRONT FOOT | 0.00 |
| SOLID WASTE SERVICE CHARGE (Retail Store) | 322.88 |
| CLEAN WATER ACT FEE | 45.27 |
| SPECIAL AREA | 0.00 |
| LIENS | 0.00 |
| OTHER TAXES/FEES | 0.00 |
| LESS HOMEOWNERS TAX CREDIT | 0.00 |
| LESS HOMESTEAD TAX CREDIT | 0.00 |
| LESS DISCOUNT CREDIT | 0.00 |
| TOTAL | 6,068.42 |
| PAYMENT RECEIVED | 12/12/2016 | PAYMENT | 6,068.42 |
| REFUND DATE | | REFUND AMOUNT | 0.00 |

Account No:      2059491              FY17

2013 Prince George's County, Maryland. All Rights Reserved





## Property Tax Inquiry

### PRINCE GEORGE'S COUNTY
### REAL PROPERTY TAX INFORMATION FOR FY 18
### TAX PERIOD 07/01/17 - 06/30/18
### MEETS REQUIREMENTS FOR REAL PROPERTY SECTION 14-126

| | | | | | | |
|---|---|---|---|---|---|---|
| **ACCOUNT NUMBER:** | 2059491 | **DISTRICT:** | 18 | **DATA AS OF:** | 10/09/17 at 13:46:04 | New Search |
| **OWNER:** | | | | **CARE OF:** | | Help |
| CHEN SI Q & CHANG L | | | | | | Payment History |

**PROPERTY ADDRESS:**
005704 MARTIN LUTHER KING JR HWY
CAPITOL HEIGHTS  MD  20743-0000

**MAILING ADDRESS:**
11309 ROYAL MANOR WAY
N POTOMAC, MD 20878-4855

**MORTGAGE:**                    UNKNOWN
**PROPERTY DESCRIPTION:**        LOT 10 EX 3126 SQ FT AT FRONT

| | | | |
|---|---|---|---|
| CONDO/UNIT | | SPACES | 07402636 |
| SUBNAME: | WEISSNER ESTATES | LIBER/FOLIO | |
| SECTION: | | DATE/DEED | |
| LOT: | | LAND | 83000.00 |
| BLOCK/AGE: | | IMPROVEMENTS | 423000.00 |
| ACREAGE: | 8335.0000 | ASSESSMENT | 506400.00 |
| OCCUPANCY: | NOT PRINCIPAL RESIDENCE | | |

As part of our commitment to provide citizens with efficient, convenient services, **Prince George's County**,

Maryland has partnered with **Govolution** to offer electronic payments over the Internet. Govolution will assess

a **service fee** for each transaction processed.

Pay Online

*** IMPORTANT: The Pay Online link opens in a separate browser window. To protect your personal
information, please remember to close your browser after printing your payment receipt. Thank you
for using this service. ***

| TAX DESCRIPTION: | | TAX/CHARGE: |
|---|---|---|
| COUNTY PROPERTY TAX | | |
| COUNTY PROPERTY TAX - SUPPLEMENTAL EDUCATION | | |
| STATE OF MARYLAND TAX | | |
| PARK & PLANNING | | 800.42 |
| STORMWATER/CHESAPEAKE BAY WATER QUALITY | | |
| WASHINGTON SUBURBAN TRANSIT COMMISSION | | |
| TOWN/CITY | | |
| OTHER MUNICIPAL CHARGES | | |
| FRONT FOOT | | |
| SOLID WASTE SERVICE CHARGE (Real Stmt) | | 142.28 |
| CLEAN WATER ACT FEE | | |
| SPECIAL AREA | | |
| LIENS | | |
| OTHER TAXES/FEES | | |
| LESS COUNTY INCOME TAX CREDIT | | |
| LESS HOMESTEAD TAX CREDIT | | |
| LESS STATE HOMESTEAD CREDIT | | |
| **TOTAL** | | |
| PAYMENT RECEIVED | | |
| REFUND DATE | | REFUND AMOUNT | 0.00 |

| Account No: | 2059491 | FY18 | | | | |
|---|---|---|---|---|---|---|
| | | 1ST (1/2 YEAR) DUE SEP 30 | | 2ND (1/2 YEAR) DUE DEC 31 | | AMOUNT |
| DUE DATE | PAID | INTEREST | BALANCE | | | |
| OCT-2017 | 2259.86 | 153.74 | 2259.86 | 0.00 | 228.96 | 5753.62 |
| NOV-2017 | | | | | | |

Make check or money order payable to: Prince George's County

Mail to:   Prince George's County Treasury Division
           14741 Gov. Oden Bowie Drive, Room 1090
           Upper Marlboro, Md  20772

**PAYMENT MUST ARRIVE IN THIS OFFICE BY THE DUE DATE TO AVOID ADDITIONAL INTEREST & PENALTIES.**

Prince George's County, Maryland. All Rights Reserved.

## Chapter C

## CHARTER

[HISTORY: Adopted by the Mayor and Council of the City of Seat Pleasant 8-28-2007 by Res. No. 07-05.[1] Amendments noted where applicable.]

## ARTICLE I
## GENERAL CORPORATE POWERS

### § C-101.

The inhabitants of Seat Pleasant within the corporate limits legally established from time to time are hereby constituted and continued a body corporate by the name of "The City of Seat Pleasant" with all the privileges of a body corporate, by the name to sue and be sued, to plead and be impleaded in any court of law or equity, to have and use a common seal and to have perpetual succession, unless the Charter and the corporate existence are legally abrogated.

## ARTICLE II
## CORPORATE LIMITS

### § C-201.

The courses and distances showing the exact corporate limits of the City shall be filed at all times with the Clerk of the Circuit Court for Prince George's County, the Commissioner of the Land Office, the Director of the Department of Legislative Reference and in the office of the Clerk-Treasurer.

### § C-202.  Original Boundaries

The boundaries of the City of Seat Pleasant are as follows:

Beginning for the same at the intersection of the southwest lines of the right of way in a southeasterly direction to its intersection with the southeast line, extended, of Palmer's Sub-Division as recorded in Plat Book R.N.R. No. 2, folio 68, one of the land records of Prince George's County; thence with said line N. 58 15' E. to the northeast side of Addison Chapel Road; thence in a northwesterly direction with the northeast side of Addison Chapel Road to its intersection with Francis S. Carmondy's Sub-Division known as Seat Pleasant Heights; thence with the southeast boundary line of Seat Pleasant Heights N. 55 24' E. to the most eastern corner of Seat Pleasant Heights; thence with the eastern line of Seat Pleasant Heights to the most northern corner of Block R. Seat Pleasant Heights, thence in a straight line northwest to where said line intersects the north line of the Washington, Baltimore and Annapolis Railroad right of way; thence with said line of the Washington, Baltimore and Annapolis right of way S. 48 26' W to its intersection with the school lot of District Line School No. 2; thence N. 38 53' W. to

---

1.   Editor's Note: This resolution also provided for the repeal of the former Charter, adopted 5-16-1976, as amended.



Addison Chapel Church Lot; thence around said Church lot and including same, with the boundary line of Addison Chapel Church Lot to its intersection with Addison Chapel Road; thence across Addison Chapel Road to the nearest corner of Godfrey's Second Addition to Fairmount Heights; thence with the northwestern boundary line of Godfrey's Second Addition to Fairmount Heights to Noel Street; thence continuing in a straight line to the District of Columbia Boundary line to the place of beginning; including all of the sub-divisions known as Seat Pleasant Heights, Godfrey's Second Addition to Fairmount Heights, Gregory Heights, Oakmont, Palmer's Sub-division and such other land sub-divided or not sub-divided as comes within the above defined area.

### § C-203.  1945 Annexation

The boundaries of the City of Seat Pleasant are hereby extended to include the following area which is added to said City, beginning at a pipe on the east side of Addison Road, formerly known as Addison Chapel Road, at the end of the South 52° 00' West 712.14 foot line of a deed from Emma M. Gregory, widow, to the Board of Education, Prince George's County Maryland, filed among the Land Records of Prince George's County, Maryland in liber 361 at folio 187 and thence reversely with said line.

(a)   North 47° 07' 50" East 712.14 feet to the beginning of said line; thence,

(b)   South 11° 42' 10" East 358.25 feet reversely with North 6° 50' West;

(c)   South 48° 56' 40" East 141.93 feet to a point on the northwest side of Martin Luther King Jr. Highway (60 feet wide), opposite center line station 17° 77.35' as shown on the State Road Commission Plat No. 5255; thence with the northwest side of said highway.

(d)   North 41° 03' 20" East 1827.39 feet to the beginning of a curve to the left having a radius of 5699.58 feet; thence

(e)   South 72° 16' curve 740.96 feet (long cord bearing the length North 37° 19' 52" East 740.44 feet); thence leaving said highway and running.

(f)   South 72° 15" West 459.01 feet to a point South 26° 49' 30" East 40.45 feet from the stone found at the southeast corner at lot No. 34, Block D, Jefferson Heights, recorded among the said land Records in Plat Book 9 as Plat 50; thence continuing on the same course.

(g)   South 72° 15' 50" West 2093.13 feet to a stone found at the end of the seventh or North 11° 33' West 384.7 foot line of a deed from John W. Gregory, et ux, to Isabelle Collins, et al., dated November 2, 1916 and recorded among the said Land Records in Liber 124 at folio 1; thence reversely with the seventh and sixth lines of said deed.

(h)   South 17° 36' 20" east 285.20 feet to a pipe;

(i)   South 44° 26' 40" West 131.20 feet to the beginning of said sixth line; thence outlines of said deed to Collins and running with the nineteenth or South 33 1/2 West 26 1/4 perch line of deed dated December 15, 1888 from Sabina Gregory, et al, John W. Gregory for 19 1/2 acres of landed [land] recorded among the said Land Records in Liber J.W.B. 18 at folio 190.

(j)   South 27° West 433.46 feet to a pipe on the east side of Addison Road, formerly known as

Addison Chapel Road; thence with east side of Addison Road the three following courses and distances.

(k)    South 27° 23' East 149.50 feet to a pipe; thence,

(l)    South 35° 50' East 296.00 to a pipe; thence,

(m)    South 21° 59' 20" East 115.89 feet to the place of beginning, containing 2,191.839 square feet or 50.318 acres of land, more or less. All of the territory hereby annexed to the City of Seat Pleasant shall after April 27, 1945, be subject to all laws, ordinances and regulations of said City.

### § C-204.   1947 Annexation

(a)    Described. The boundaries of the City of Seat Pleasant are hereby extended to include the following area which is added to said City, beginning for the same at the northeasterly corner of the City as now incorporated and bearing thence in a northeasterly direction on a continuation of the present corporate line for a distance of approximately 600 feet to a point in the center line of Baltic Street and the Palmer Sub-division in the City of Seat Pleasant.

(b)    Conditions. All of the territory hereby annexed to the City of Seat Pleasant shall after March 3, 1947, be subject to all laws, ordinances, and regulations of the Mayor and Council of Seat Pleasant. Provided, however, that the land now taxed as acreage in this extension shall be service free and tax free until the time that said acreage is sub-divided.

### § C-205.   1951 Annexation

(a)    Described. The boundaries of the City of Seat Pleasant are hereby extended to include the following area; that land bounded on the west by the main stream of Cabin Branch Creek which forms the boundary of the City and on the south and east by Seat Pleasant Drive and on the north by the tributary of Cabin Branch Creek which enters said Creek at Martin Luther King Jr. Highway.

(b)    Conditions. All of the territory hereby annexed to the City of Seat Pleasant shall from and after June 1, 1951, be subject to all laws, ordinances and regulations of the Mayor and Council of Seat Pleasant.

### § C-206.   1983 Annexation

(a)    Described. The boundaries of the City of Seat Pleasant are hereby extended to include:

(a)    All that piece or parcel of land situate, lying and being in the Seat Pleasant election district of Prince George's County, Maryland and being bounded by the northerly right of way line of Central Avenue/East Capitol Street as shown on Maryland State Highway Administration right of way plats numbered 17080 and 34465, the southwesterly right of way line of Yost Place, the northwesterly line of Baltic Street, formerly Maple Avenue, 30 feet wide and the southwesterly line of the former east Washington Railway Company property, and being more particularly described as follows:

(a)   Beginning on the aforementioned right of way line of Central Avenue/East Capitol Street at a point where it is intersected by the aforesaid right of way line of the East Washington Railway Company and running thence the six (6) following courses with said northerly line of Central Avenue/East Capitol Street as shown on aforementioned State Highway Administration right of way plats 351.46 feet along the arc of a curve deflecting to the right, having a radius of 4032.56 feet and a long chord bearing north 86° 03' 38" west 351.56 feet, thence north 71° 51' 20" west 50.24 feet, thence north 55° 07' 10" west 109.52 feet, thence north 80° 24' 40" west 145.66 feet, thence north 63° 11' 20" west 50.15 feet, thence north 57° 12' 30" west 51.17 feet to intersect the aforementioned northeasterly right of way line of Yost Place, thence south 54° 30' 00" west 30.00 feet, with a line crossing said Yost Place, thence north 35° 30' 00" west 718.46 feet with the southwesterly right of way line of Yost Place, to intersect the aforementioned northwesterly right of way line of Baltic Street, thence north 54° 53' 50" east 227.97 feet with said right of way line of Baltic Street and an extension of the aforementioned southwesterly right of way line of the east Washington Railway Company property, thence the three (3) following courses with said southwesterly line of the railway's property thence south 42° 04' 53" east 576.05 feet, thence 573.83 feet along the arc of a curve deflecting to the left having a radius of 1943.00 feet and a long chord bearing south 55° 39' 38" east 571.75 feet to the place of beginning of this description containing a calculated area of 6.5956 acres of land.

### ARTICLE III
### THE COUNCIL

#### § C-301.   Number, Selection, Term

All legislative powers of the City shall be vested in a Council consisting of seven Councilpersons who shall be elected as hereinafter provided. Newly elected Councilpersons shall take office on the first Monday in October following election. Each Councilperson holding office at the time this Charter becomes effective shall continue to hold office for the term for which he was elected or until his successor is elected and takes office under the provisions of this Charter.

#### § C-302.   Qualifications of Councilpersons

Councilpersons shall have resided in the City for at least one year immediately preceding their election and shall have been qualified registered voters of the City for one (1) year. Councilpersons shall maintain a permanent residence in the City during their term of office. The minimum age for City Councilpersons shall be twenty-one years of age.

#### § C-303.   Salary of Councilpersons

Each Councilperson shall receive an annual salary which shall be as specified from time to time by an ordinance passed by the Council in the regular course of its business; provided, however, that the salary specified at the time any Council takes office shall not be changed during the period for which that council was elected and further provided that such a salary ordinance be approved by the majority of the qualified voters of the municipality voting thereon at a regular or special municipal election. The ordinance making any change in the salary paid to the several Councilpersons, either by way of increase or decrease, shall be finally ordained prior to the municipal election for the members of the next succeeding Council and shall take effect only as

to the members of the next succeeding Council.

### § C-304.   Meeting of the Council

The newly elected Council shall meet on the second Monday following its election for the purpose of organization, after which the Council shall meet regularly at such times as may be prescribed by its rules but not less frequently than once each month. Special meetings shall be called at the request of the Mayor or four or more Council members. All meetings of the Council shall be open to the public, and the rules of the Council shall provide that residents of the City shall have a reasonable opportunity to be heard at any meeting in regard to any municipal question. Nothing contained herein shall be construed to prevent any such body from holding an executive session from which the public is excluded but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session.

### § C-305.   Vice-Mayor and President Pro Tem

The Council shall elect a President of the Council from among its members who shall act as Vice-Mayor in the absence of the Mayor. In the event that the designated President shall be absent at any meeting of the Council, any member of the Council may be designated by the Council President Pro Tem for such meeting. The President, when acting as Vice-Mayor, shall have only such ceremonial duties as may be assigned to him by the Mayor and shall not exercise any of the power and duties of the Mayor as hereinafter set forth.

### § C-306.   Quorum

Four members of the Council shall constitute a Quorum for the transaction of business. No ordinance shall be approved nor any other action taken without the favorable votes of a majority of the members of the Council present and voting.

### § C-307.   Procedure of Council

The Council shall determine its own rules and order of business. It shall keep minutes of its proceedings and enter therein the yeas, nays, or abstentions upon final action of any question, resolution, or ordinance, or at any other time if required by any one member. The minutes shall be open to public inspection after adoption.

### § C-308.   Vacancies

The office of the Mayor or a Councilperson shall become vacant upon his death, resignation, removal from office in any manner authorized by law or forfeiture of his office.

### § C-309.   Filling of Vacancies [Amended 11-9-2009 by Res. No. R-10-10]

A vacancy in the office of Mayor or Councilperson shall be filled by a person who meets the qualifications set forth in §§ C-302 and C-609 of this Charter. In event of a vacancy in the office of the Mayor or Councilperson the Council shall publish an advertisement in a newspaper of general circulation in the City. The advertisement shall provide public notice of the vacancy and shall solicit qualified persons to submit, on or before a date specified in the notice, letters of interest for consideration to fill the vacancy. The notice also shall state that each letter of interest

must be accompanied by the candidate's resume and a petition as specified below. Concurrently with the publication of the advertisement the Council also shall mail a notice that contains information substantially similar to the published notice. The mailed notice shall be sent to all registered voters in the City, except that when the vacancy is to fill the position of Councilperson from one of the Councilmanic subdivisions specified in § C-609, notice shall be mailed only to the registered voters in that Councilmanic subdivision. Each candidate to fill a vacancy shall file the candidate's letter of interest, resume and a petition that satisfies the requirements of § C-610 with the office of the City Clerk on or before the date specified in the notice. Following the date specified in the notice for the filing of applications to fill a vacancy, the Council shall conduct a public review of all qualified candidates who have submitted the required letters of interest, resumes and petitions. This public review may include a public hearing for public comment on the candidates. After the Council completes its public review, the Council may appoint some person qualified in accordance with § C-302 and § C-609. The Council also may reject all candidates and repeat the process established in this section until the Council appoints a qualified person to fill the vacancy. A vacancy shall be filled by the favorable votes of a majority of the remaining members of the Council and the results of such votes shall be recorded in the minutes of the Council. A person appointed to fill a vacancy shall serve until the next regularly scheduled election.

## § C-310.   Forfeiture of Office

The Mayor or a Council person shall forfeit his office if he (1) lacks at any time during his term of office any qualification for the office prescribed by this Charter or by law, (2) violates any express prohibition of this Charter, (3) is convicted of a felony, or (4) fails to attend three consecutive regular meetings of the Council without being excused by the Council.

## § C-311.   Ordinances [Amended 12-3-2012 by Res. No. R-13-12]

No ordinance shall be passed at the meeting at which it is introduced. At any regular or special meeting of the Council held not less than six or more than sixty days after the meeting at which an ordinance was introduced, it shall be passed, or passed as amended, or rejected, or its consideration deferred to some specified future date. In cases of emergency the provision that an ordinance may not be passed at the meeting at which it is introduced may be suspended by the affirmative votes of four members of the Council. Every ordinance, unless it be passed as an emergency ordinance, shall become effective at the expiration of twenty calendar days following approval by the Mayor or passage by the Council over his veto. A fair summary of each ordinance shall be published at least twice in a newspaper or newspapers having general circulation in the municipality following passage. An emergency ordinance shall become effective on the date specified in the ordinance, but no ordinance shall become effective until approved by the Mayor or passed over his veto by the Council.

## § C-312.   Emergency Ordinance

To meet a public emergency affecting life, health, property or the public peace, the Council may adopt one or more emergency ordinances, but such ordinances may not levy taxes, grant, renew or extend a franchise, regulate the rate charged by any public utility for its services or authorize the borrowing of money except as provided in Article VIII. An emergency ordinance shall be

introduced in the form and manner prescribed for ordinances generally, except that it shall be plainly designated as an emergency ordinance and shall contain, after the enacting clause, a declaration stating that an emergency exists and describing it in clear and specific terms. An emergency ordinance may be adopted with or without amendment or rejected at the meeting at which it is introduced, but the affirmative vote of at least five members shall be required for adoption. After its adoption the ordinance shall be published and printed as prescribed for other adopted ordinances. It shall become effective upon the adoption or at such time as it may specify. Every emergency ordinance shall automatically stand repealed as of the 61st day following the date on which it was adopted, but this shall not prevent re-enactment of the ordinance in the manner specified in this section if the emergency still exists. An emergency ordinance may also be repealed by adoption of a repealing ordinance in the same manner specified in this section for adoption of emergency ordinances.

### § C-313.   Veto

All ordinances passed by the Council shall be promptly delivered to the Mayor for his approval or disapproval. If the Mayor approves any ordinance, he shall sign it. If the Mayor disapproves any ordinance, he shall not sign it. The Mayor shall return all ordinances to the City Clerk within six days after delivery to him (excluding the first day, including the last day, and excluding any Sunday) with his approval or disapproval. Any ordinance approved by the Mayor shall be law. Any ordinance disapproved by the Mayor shall be returned with a message stating the reasons for his disapproval. Any disapproved ordinance shall not become a law unless subsequently passed by a favorable vote from five members of the whole Council within thirty-five calendar days from the time of the return of the ordinance. If the Mayor fails to return any ordinance within six days of its delivery, it shall be deemed to be approved by the Mayor and shall become law in the same manner as an ordinance signed by him.

### § C-314.   Advisory Boards and Commission

The Mayor, with Council consent, shall have the power to appoint and dissolve boards and commissions to act in advisory capacity to the City Council as required by law or as it may deem necessary for the good government of the City. He may also establish mandatory fiscal and administrative procedures for such boards.

### ARTICLE IV
### THE MAYOR

### § C-401.   Qualifications of Mayor

The Mayor must have resided in Seat Pleasant for at least one year immediately preceding his election, and shall have been a qualified registered voter of the City for one year.

### § C-402.   Salary of the Mayor

The Mayor shall receive a salary which shall be specified at time to time by an ordinance passed by the Council in the regular course of its business; provided, however, that the salary specified at the time any Council takes office shall not be changed during the period for which that Council was elected and further provided that such a salary ordinance shall be approved by the

majority of the qualified voters of the municipality voting thereon at a regular or special municipal election. The ordinance making any change in the salary paid to the Mayor, either by way of increase or decrease shall be finally ordained prior to the municipal election for the members of the next succeeding Council.

## § C-403.  Powers and Duties

(a)    The Mayor shall be the Chief Executive Officer of the City government and shall have such powers and perform such duties as may be prescribed by this Charter. The Mayor is authorized to sign and execute documents and to accept service of legal process on behalf of the City. The Mayor shall see that the Ordinances of the City are faithfully executed and enforced and perform such other duties which are not inconsistent with this Charter as may be authorized by the Council. [Amended 10-3-2016 by Res. No. R-17-01]

(b)    Annual report for general distribution. The Mayor shall prepare or cause to be prepared annually a report in the name of the government of the City of Seat Pleasant. This report shall deal not only with the financial condition of the City, but also with the accomplishments of the various agencies of the City. This report shall be printed for general distribution.

(c)    Except as otherwise expressly provided in this Charter, the Mayor, with consent of a majority of the entire Council, shall appoint the City Treasurer, the City Clerk, the Chief of Police and all other department and agency heads. Except as otherwise expressly provided in this Charter, all such officials and department and agency heads shall only be removed by consent of a majority of the entire Council.   [Amended 10-3-2016 by Res. No. R-17-01]

(d)    Budget. By April 1 of each year, the Mayor shall prepare a budget and submit it to the Council. He/she shall be responsible for the administration of the budget as adopted by the Council.

ARTICLE V
GENERAL POWERS

## § C-501.  General Powers

(a)    General. The Council shall have the power to pass all such ordinances not contrary to the Constitution and laws of the State of Maryland or this Charter as it may deem necessary for the good government of the City; for the protection and preservation of the City's property, rights, and privileges; for the preservation of peace and good order; for securing persons and property from violence, danger, or destruction; and for the protection and promotion of the health, safety, comfort, convenience, welfare and happiness of the residents of the City and visitors thereto and sojourners therein.

(b)    Enumeration. The Council shall have, in addition, the power to pass ordinances, not contrary to the Constitution and laws of the State of Maryland, for the following specific purposes.

(1)    Advertising. To provide for advertising for the purposes of the City, for printing, and publishing statements as to the business of the City.

8
Seat Pleasant Charter

(2) Amusements. To provide in the interest of the public welfare for licensing, regulating, or restraining theatrical or other public amusements.

(3) Appropriations. To appropriate municipal monies for any purpose within the powers of the Council.

(4) Billboards. To license, tax and regulate, restrain or prohibit the erection or maintenance of billboards within the City, the placing of signs, bills and posters of every kind and description on any building, fence, post, billboard, pole or other place within the City.

(5) Bridges. To erect and maintain bridges.

(6) Buildings. To make reasonable regulations in regard to buildings and signs to be erected, constructed, or reconstructed in the City, and to grant building permits for the same; to formulate a building code and a plumbing code and to appoint a building inspector and a plumbing inspector, and to require reasonable charges for permits and inspections; to authorize and require the inspection of all buildings and structures and to authorize the condemnation thereof in whole or in part when dangerous or insecure, and to require that such buildings and structures be made safe or be taken down.

(7) Cemeteries. To regulate or prohibit the interment of bodies.

(8) Codification. To provide for the codification of all ordinances which have been or may hereafter be passed.

(9) Community Services. To provide, maintain, and operate community and social services for the preservation and promotion of the health, recreation, welfare, and enlightenment of the inhabitants of the City.

(10) Cooperative Activities. To make agreements with other municipalities, counties, districts, bureaus, commissions, and governmental authorities for the joint performance of or for cooperation in the performance of any governmental functions.

(11) Curfew. To prohibit the youth of the City from being in the streets, lanes, alleys, or public places at unreasonable hours of the night.

(12) Dangerous Conditions. To compel persons about to undertake dangerous improvements to execute bonds with sufficient sureties conditioned that the owner or contractor will pay all damages resulting from such work which may be sustained by any persons or property.

(13) Taxes. To levy and collect taxes as may be prescribed by ordinance.

(14) Disorderly Houses. To suppress bawdy houses, disorderly houses and houses of ill fame.

(15) Dogs. To regulate the keeping of dogs in the City and to provide, wherever the County does not license or tax dogs, for the licensing and taxing of the same; to provide for the disposition of homeless dogs and dogs on which no license fee or taxes are paid.

(16) Elevators. To require the inspection and licensing of elevators and to prohibit their uses when unsafe or dangerous or without a license.

(17) Explosives. To regulate or prevent the storage of gunpowder oil, or any other explosive or combustible matter; to regulate or prevent the use of firearms, fireworks, bonfires, explosives, or any other similar things which may endanger person or property.

(18) Filth. To compel the occupant of any premises, building or outhouse situated in the City when the same has become filthy or unwholesome, to abate or cleanse the condition; and after reasonable notice to the owners or occupants to authorize such work be done by the proper officers and to assess the expense thereof against such property, making it collectible by taxes or against the occupant or occupants.

(19) Finances. To levy, assess, and collect ad valorem property taxes; to expend municipal funds for any public purpose; to have general management and control of the finances of the City.

(20) Fire. To contribute funds to volunteer fire companies serving the City; to inspect buildings for the purpose of reducing fire hazards to forbid and prohibit the use of fire-hazardous buildings and structures; to regulate or prevent the use of bonfires, explosives, or any other similar things which may endanger persons or property.

(21) Franchises. To grant and regulate franchises to water companies, electric light companies, gas companies, telegraph and telephone companies, transit companies, taxicab companies and any others which may be deemed advantageous and beneficial to the City, subject, however, to the limitations and provisions of Article 23 of the Annotated Code of Maryland. No franchise shall be granted for a longer period than fifty years.

(22) Garbage. To prevent the deposit of any unwholesome substance either on private or public property, and to compel its removal to designated points; to require slops, garbage, ashes and other waste or other unwholesome materials to be removed to designated points, or to require the occupants of the premises to place them conveniently for removal.

(23) Health. To protect and preserve the health of the City and its inhabitants; to appoint a public health officer, and to define and regulate his powers and duties; to prevent the introduction of contagious diseases into the City; to establish quarantine regulations, and regulate his powers and duties; to prevent the introduction of contagious diseases into the City; to establish quarantine regulations, and (See Note 1) to authorize the removal and confinement of persons having contagious or infectious diseases; to prevent and remove all nuisances; to inspect, regulate, and abate any buildings, structures, or places which cause or may cause unsanitary conditions or conditions detrimental to health; that nothing herein shall be construed to affect in any manner any of the powers and duties of the State Board of Health, the County Board of Health, or any public, general, or local law relating to the subject of health.

(24) Licenses. Subject to any restrictions imposed by the public general laws of the State, to license and regulate all persons beginning or conducting transient or permanent

business in the City for the sale of any goods, wares, merchandise, or services, to license and regulate any business, occupation, trade, calling, or place of amusement or business; to establish and collect fees and charges for all licenses permits issued under the authority of this Charter.

(25) Liens. To provide that any valid charges, taxes or assessments made against any real property within the City shall be liens upon such property, to be collected as municipal taxes are collected.

(26) Livestock. To regulate and prohibit the running at large of cattle, horses, swine, fowl, sheep, goats, dogs, or other animals; to authorize the impounding, keeping, sale and redemption of such animals which are found in violation of the ordinance in such cases provided.

(27) Minor Privileges. To regulate or prevent the use of public ways, sidewalks, and public places for signs, awnings, posts, steps, railings, entrances, racks, posting handbills and advertisements, and display of goods, wares, and merchandise.

(28) Noise. To regulate or prohibit unreasonable ringing of bells, crying of goods, or sounding of whistles and horns.

(29) Nuisances. To prevent or abate by appropriate ordinances all nuisances in the City which are so defined as common law by this Charter, or by laws of the State of Maryland, whether the same be herein specifically named or not; to regulate, to prohibit, to control the location of, or to require the removal from the City of all trading in, handling of, or manufacture of any commodity which is or may become offensive, obnoxious, or injurious to the public comfort or health. In this connection, the City may regulate, prohibit, control the location of, or require the removal from the City of, such things as stockyards, slaughterhouses, cattle or hog pens, tanneries, and renderies. This listing is by way of enumeration, not limitation.

(30) Obstructions. To remove all nuisances and obstructions from the streets, lanes and alleys and from any lots adjoining thereto, or any other places within the limits of the City.

(31) Parking Facilities. To license and regulate and to establish, and obtain by purchase, by lease or by rent, own, construct, operate and maintain parking lots and other facilities for off-street parking.

(32) Parking Meters. To install parking meters on the streets, public places of the City in such places as they shall be by ordinance determined, and by ordinance prescribe rates and provisions for the use thereof, except that the installation of parking meters on any street or road maintained by the State Roads Commission of Maryland must first be approved by the Commission.

(33) Parks and Recreation. To establish and maintain public parks, gardens, playgrounds, and other recreational facilities and programs to promote the health, welfare, and enjoyment of the inhabitants of the City.

(34) Police Force. To establish, operate, and maintain a police force.

(35) Police Powers. To punish and suppress vagrancy, vice, gambling, and the owning or keeping of houses of ill fame within the limits of the City. To enforce all ordinances relating to disorderly conduct and the suppression of nuisances equally within the limits of the municipality and beyond those limits for one-half mile, or for so much of this distance as does not conflict with the powers of another municipal corporation.

(36) Property. To acquire by conveyance, purchase or gift, real or leasable property for any public purposes; to erect buildings and structures thereon for the benefit of the City and its inhabitants; and to convey any real or leasehold property when no longer needed for the public use, after having given at least twenty days' public notice of the proposed conveyance; to control, protect and maintain public buildings, grounds, and property of the City.

(37) Refuse Collection. To acquire, regulate, or provide for the collection, removal, and disposal of refuse, garbage, rubbish, filth, or any other matter or thing that is or may become injurious to the health or comfort of the inhabitants of the City. Whenever such requirements shall not be met, the City shall arrange for the necessary work to be done and any expenses incident thereto shall become a lien upon the property.

(38) Regulations. To adopt by ordinance or ordinances and enforce within the corporate limits police, traffic, speed, parking, and other similar regulations not in conflict with the laws of the State of Maryland or with this Charter.

(39) Sidewalks. To construct, maintain, and improve sidewalks and regulate the use of sidewalks and all structures in, under or above the same; to require the owner or occupant of premises to keep the sidewalks in front thereof free from snow or other obstructions; to proscribe hours for clearing and cleaning sidewalks.

(40) Voting Machines. To purchase, lease, borrow, install, and maintain voting machines for use in City elections.

(41) Zoning. To exercise the powers as to planning and zoning, conferred upon municipal corporations generally in Article 66B of the Annotated Code of Maryland, subject, however, to the limitations and provisions of said Article.

(42) Saving Clause. The enumeration of powers in this section is not to be construed as limiting the powers of the City to the several subjects mentioned.

## § C-502.  Exercise of Powers

For the purpose of carrying out the powers granted in this subtitle or elsewhere in this Charter, the Council may pass all necessary ordinances. All the powers of the City shall be exercised in the manner prescribed by this Charter, or, if the manner be not prescribed, then in such manner as may be prescribed by ordinance.

## § C-503.  Enforcement

To ensure the observance of the ordinance of the City, the Council shall have the power to provide that violation thereof shall be a misdemeanor and shall have the power to affix thereto penalties of a fine not exceeding one thousand dollars ($1,000.00) or imprisonment of not

exceeding six (6) months, or both such fine and imprisonment. Any person subject to any fine, forfeiture, or penalty by virtue of any ordinance passed under the authority of this Charter shall have the right of appeal within ten days to the Circuit Court of the County in which the fine, forfeiture, or penalty was imposed. The Council may provide that, where the violation is of a continuing nature and is persisted in, a conviction for one violation shall be a bar to a conviction for a continuation of the offense subsequent to the first or any succeeding conviction.

## § C-504.   Civil Remedies

Nothing herein provided shall be deemed a waiver or in any other fashion as a bar to the City to seek civil remedies by way of injunction or otherwise in order to effect and carry out any of the provisions of this Charter or any of the ordinances passed pursuant thereto.

## ARTICLE VI
## REGISTRATION, NOMINATION AND ELECTIONS

## § C-601.   Regular Election

The election for all elective City officers shall be held on the second Monday in September at a place to be designated by the Council. Notices of the designated place must be posted in three public places, at least ten days before said election. The polling places shall remain open 7:00 a.m. to 8:00 p.m., or longer at the discretion of the Council.

## § C-602.   Qualification of Voters

Every person who (1) is a citizen of the United States, (2) is at least eighteen (18) years of age, (3) has been a resident of the City of Seat Pleasant for at least thirty (30) days prior to the election and (4) is registered in accordance with the provisions of this Charter and City Ordinances, shall be a qualified voter of the City. Every qualified voter of the City shall be entitled to vote at any or all City elections.

## § C-603.   Board of Supervisors of Elections

There shall be a Board of Supervisors of Elections, consisting of three members who shall be appointed by the Mayor with the approval of the Council on or before the first Monday in January following their election. The terms of members of the Board of Supervisors of Election begin on the first Monday in January in the year in which they are appointed and run for four years. Members of the Board of Supervisors of Elections shall be qualified voters of the City and shall not hold or be candidates for any elective office during their term of office. The Mayor with Council consent shall appoint one of its members as chairman. Vacancies on the Board shall be filled by the Mayor with Council consent for the remainder of the unexpired term. The compensation of the members of the Board shall be determined by the Council.

## § C-604.   Removal of Members

Any member of the Board of Supervisors of Elections may be removed by the Council, if in the judgment of the Council the member is not properly performing or will not properly perform the duties of the position. Any member of the Board of Supervisors shall not be removed by the Council unless an extraordinary majority of five Councilmembers concur at a regular or special

meeting of the Council.

### § C-605. Duties

The Board of Supervisors of Elections shall be in charge of the registration of voters, nominations, and all City elections. The Board may appoint election clerks or other employees to assist it in any of its duties.

### § C-606. Notice of Registration Days and Elections

The Board of Supervisors of Elections shall give at least two weeks notice of every registration day and every election by an advertisement published in at least one newspaper of general circulation in the City and by posting a notice thereof in some public place or places in the City.

### § C-607. Registration

There shall be Universal Voter Registration in conjunction with Prince George's County, Maryland as required by the Election Law Article, Sections 3-401, et seq., of the Maryland Annotated Code, as amended, of qualified persons not registered to vote. No person is entitled to vote in City elections unless he is registered. The Board of Supervisors of Elections shall keep the registration lists up-to-date by striking from the lists persons known to have died or to have moved out of the City. The Council, by ordinance, shall adopt and enforce any provisions necessary to establish and maintain a system of permanent registration and provide for a re-registration when necessary.

### § C-608. Appeal from Action of Board of Supervisors of Elections

If any person is aggrieved by the action of the Board of Supervisors of Elections in refusing to register or in striking off the name of any person, or by any other action, he may appeal to the Council. Any decision or action of the Council upon such appeals may be appealed to the Circuit Court for the county within the time allowed for such appeals.

### § C-609. Councilmanic Subdivisions

Two of the seven Councilpersons shall be selected at large and candidates for such positions shall have their names placed upon the ballots or upon the voting machine labels for all residents of the City. The other five Councilpersons shall be chosen respectively from the five subdivisions described herein below. Each such Councilperson shall reside in and be duly elected from the particular subdivision from which he becomes a candidate for office. The ballots or the voting machines shall be so arranged that the voters in any one subdivision shall be eligible to vote only for those candidates for the City Council coming from the particular subdivisions. The several subdivisions shall have the boundaries as described below.

(a)   Ward One. Beginning at the point of intersection of the northwest side of Addison Road and the northwest boundary of the City southwesterly along the City boundary to its intersection with the northeast side of Eastern Avenue; thence, southeasterly along the eastern side of Eastern Avenue to the intersection of said boundary with Martin Luther King Jr. Highway; thence, southeasterly along the City boundary to its intersection with Eades Street; thence, along the northwest side of Eades Street in a northeasterly direction to

its intersection with Addison Road; thence in a southeasterly direction along the eastern side of Addison Road to its intersection with Drylog Street; thence, in a northeasterly direction along the northwest side Drylog Street to its intersection with 70th Street; thence, in a northwesterly direction along the southwest side of 70th Street to its intersection with Seat Pleasant Drive; thence, in a westerly direction along the south side of Seat Pleasant Drive to its intersection with Martin Luther King Jr. Highway; thence, in a southwesterly direction along the South side of Martin Luther King Jr. Highway to its intersection with Addison Road; thence, in a northwesterly direction along the west side of Addison Road to its intersection with "G" Street; thence, in a northeasterly direction along the north side of "G" Street to its intersection with 64th Avenue; thence, in a northerly direction along the west side of 64th Avenue to its intersection with 63rd Place; thence, in a northwesterly direction along the southwest side of 63rd Place to the intersection of Greig Street; thence, in a southwesterly direction along the south side of Greig Street to its intersection with Addison Road; thence, in a northerly direction along the southwest side of Addison Road to its intersection with the City Boundary.

(b)   Ward Two. Beginning at the northeast intersection of the City and the northwest side of Martin Luther King Jr. Highway in a westerly direction along the City boundary to its intersection with the northwest corner of the City boundary thence, in a southerly direction along the City boundary to its intersection with Addison Road; thence, in a southerly direction along the northeast side of Addison Road to its intersection with Greig Street; thence, in a northeasterly direction along the north side of Greig Street to its intersection with 63rd Place; thence in a southerly direction along the north side of 63rd Place to its intersection with 64th Avenue; thence, in a southerly direction along the east side of 64th Avenue to its intersection with "G" Street; thence, in a northeasterly direction along the north side of "G" Street to its intersection with Greig Street; thence, in an easterly direction along the north side of Greig Street to its intersection with Martin Luther King Jr. Highway; thence, in a northeasterly direction along the north side of Martin Luther King Jr. Highway to its intersection with the northerly City boundary.

(c)   Ward Three. Beginning at the northwest corner of the intersection of Birchleaf Avenue and Seat Pleasant Drive; thence, in a northerly direction along the west side of Birchleaf Avenue to its northern end; thence, extended on the line of said street to its intersection with Martin Luther King Jr. Highway; thence, in a southwesterly direction along the southeast side of Martin Luther King Jr. Highway to its intersection with Greig Street thence, in a westerly direction along the south side of Greig Street to its intersection with "G" Street; thence, in a southeasterly direction along the south side of "G" Street to its intersection with Addison Road; thence, in a southeasterly direction along the northeast side of Addison Road to its intersection with Martin Luther King Jr. Highway; thence, in an easterly direction along the north side of Martin Luther King Jr. Highway to its intersection with Addison Road and Seat Pleasant Drive; thence, in an easterly direction along the north side of Seat Pleasant Drive to its intersection with 70th Street; thence, in a southerly direction along the east side of 70th Street to its intersection with Drylog Street; thence, in a northeasterly direction along the north side of Drylog Street to its intersection with the eastern boundary of the City; thence, in a northerly direction along the eastern boundary of the City to its intersection with Seat Pleasant Drive; thence, in an easterly direction along the north side of Seat Pleasant Drive to its intersection with Birchleaf

Avenue.

(d) **Ward Four.** Beginning at the intersection of Seat Pleasant Drive and the Cabin Branch Tributary; thence, in a westerly direction along the Cabin Branch Tributary and City boundary to their intersection with Martin Luther King Jr. Highway; thence, in a southwesterly direction along the south side of Martin Luther King Jr. Highway to its intersection with the northerly direction along Birchleaf Avenue and its extension along its east side to its intersection with Seat Pleasant Drive; thence, in an easterly direction along the north side of Seat Pleasant Drive to its intersection with the Cabin Branch Tributary.

(e) **Ward Five.** Beginning at the intersection of Drylog Street and Cabin Branch Creek; thence, in a southerly direction along Cabin Branch Creek to its intersection with Central Avenue; thence, in a westerly direction along the north side of Central Avenue to its intersection with the western City boundary; thence, in a northwesterly direction along the westerly City boundary to its intersection with the western extension of Eades Street; thence, in a northeasterly direction along the south of Eades Street to its intersection with Addison Road; thence, in a southerly direction along the west side of Addison Road to its intersection with Drylog Street; thence, in a northeasterly direction along the south side of Drylog Street to its intersection with the Cabin Branch Creek.

### § C-610.  Nominations

Candidates for election to the office of Councilmember or Mayor shall file with the Board of Election Supervisors a petition signed by at least 20 registered voters of the City of Seat Pleasant at least sixty (60) days (including Sundays and holidays) prior to the date of such election. Such petition shall state (1) the name and address of the candidate, (2) the fact that such person is eligible for election to the office of Councilmember or Mayor and (3) that such person wishes his name placed on the ballot as candidate. Such petition shall be sworn to by the person filing same, both as to the fact of the candidate's eligibility and as to the genuineness of the signatures of such petition. No person shall be eligible for elective City public office who has not fulfilled the requirements of this section. No candidate shall file for election for more than one City public office at any one election.

### § C-611.  Election of the Mayor and Councilmembers

Beginning on the second Monday in September, 1976, and every fourth year thereafter, the City shall elect the Mayor and all seven Councilmembers.

### § C-612.  Conduct of Elections

It is the duty of the Board of Supervisors of Elections to provide for each special and general election a suitable place or places for voting and suitable ballot boxes and ballots and/or voting machines. The ballots and/or voting machines shall show the name of each candidate nominated for elective office in accordance with the provisions of this Charter, arranged in alphabetical order by office with no party designation of any kind.

### § C-613.  Absentee Ballot

Any qualified voter registered to vote in the City of Seat Pleasant is entitled to vote in any

municipal election by absentee ballot.

### § C-614.  Mailing of Absentee Ballots

The Board of Supervisors of Elections shall mail absentee ballots to qualified voters, at the request of those voters, not less than twenty days prior to the election. All absentee ballots shall be delivered to City Hall before the day of election.

### § C-615.  Special Elections

All special City elections shall be conducted by the Board of Supervisors of Elections in the same manner and with the same personnel, as far as practicable, as regular City elections.

### § C-616.  Vote Count

The Board of Supervisors of Elections shall begin counting the votes immediately after the polls have closed. All votes shall be counted to include the regular ballot and absentee ballots. Once the actual vote counting begins, no persons shall enter or leave the room in which the vote count is being conducted until completion of the vote count. The Board of Supervisors of Elections shall complete the vote count within twenty-four hours after the polls have closed, shall determine the number of votes cast for each candidate and shall certify this result to the Clerk of the City who shall record the result in the minutes of the Council. The candidate for Mayor with the highest number of votes shall be declared elected as Mayor. The candidates for election to the vacancies as Councilmembers with the highest number of votes shall be declared elected. The declarations shall be proclaimed by the Chairman of the Board of Supervisors of Election within forty-eight hours after the vote count at a special public meeting. A tie vote shall be decided by special election between the tied candidates.

### § C-617.  Preservation of Ballots

All ballots and records used in any City election shall be preserved for at least six (6) months from the date of the election.

### § C-618.  Regulation and Control

The Council shall have the power to provide by ordinance in every respect not covered by the provisions of this Charter for the conduct of registration, nomination, and elections and for the prevention of fraud in connection therewith, and for a recount of ballots in case of doubt or fraud.

### § C-619.  Women

Women shall have equal privileges with men in registering, voting and holding City offices. Whenever the masculine gender has been used as to any registering, voting, or holding City office, it shall be construed to include the feminine gender.

### § C-620.  Penalties

Any person who (a) fails to perform any duty required of him under the provisions of this

sub-title or any ordinances passed thereunder, (b) in any manner willfully or corruptly violates any of the provisions of this sub-title or any ordinances passed thereunder, or (c) willfully or corruptly does anything which will or will tend to affect fraudulently any registration, nomination, or election, shall be deemed guilty of a misdemeanor. Any officer or employee of the City government who is convicted of a misdemeanor under the provisions of this section shall immediately upon conviction thereof cease to hold such office or employment.

### ARTICLE VII
### CITY ADMINISTRATOR
### [Amended 1-12-2015 by Res. No. R-15-12]

**§ C-701.  Appointment, Compensation, Duties and Removal**

(a)    There shall be a full-time City Administrator appointed by majority vote of the entire Council, who shall report directly to the Mayor. The Mayor, with consent of a majority of the entire Council, shall fix the compensation of the City Administrator.   [Amended 10-3-2016 by Res. No. R-17-01]

(b)    The City Administrator shall be the Chief Administrative Officer of the City and shall have those powers and responsibilities as may be provided by the Charter. The City Administrator shall take action and do those things mandated by any Ordinance or Resolution duly enacted by the City Council.

(c)    The City Administrator shall represent the City in all matters of day-to-day administration, under the direct supervision of the Mayor. In this capacity, he or she shall exercise all administrative powers and authority delegated by this Charter or the Council. He or she shall:   [Amended 10-3-2016 by Res. No. R-17-01]

 (1)    Direct and supervise all employees of the City, except the City Clerk, who shall be supervised by the Council, and except as otherwise expressly provided in this Charter;

 (2)    With the Mayor and City Treasurer, prepare an annual budget for submission to the City Council;

 (3)    Sign and execute documents on behalf of the City and accept services of legal process;

 (4)    Report regularly on the business of the City to the City Council; and

 (5)    Enforce and implement the duly enacted ordinances of the City Council.

(d)    The City Administrator shall report to the City Council on his or her activities and the business of the City not less than once a month and more frequently when circumstances require.

(e)    The City Administrator shall recommend to the City Council, Ordinances, Resolutions, and Directives which, if enacted by a majority of the City Council, would enable the City Administrator to perform his or her duties under the Charter and effectively conduct business for and on behalf of the City of Seat Pleasant.

(f)    The City Administrator may be removed without cause by a majority vote of the entire

Council. The Council shall appoint or designate some person to serve for the City Administrator in his/her absence or inability to serve.

### ARTICLE VIII
### FINANCE

### § C-801. Fiscal Year

The City shall operate on an annual budget. The fiscal year of the City shall begin on the first day of July in any year and shall end on the last day of June in the following year. The fiscal year constitutes the tax year, the budget year, and the accounting year.

### § C-802. Budget

The Council shall adopt a budget on such date as they shall determine, but at least thirty-two (32) days before the beginning of any fiscal year. The budget shall provide a complete financial plan for the budget year and shall contain estimates of anticipated revenues and proposed expenditures for the coming year. The total of the anticipated revenues shall equal or exceed the total of the proposed expenditures. The budget shall be a public record in the office of the City Clerk, open to public inspection by anyone during normal business hours. The budget shall reflect no deficit spending.

### § C-803. Budget Adoption

(a)  Before adopting the budget the Council shall hold a public hearing thereon after notice thereof in some newspaper or newspapers having general circulation within the City. The Council may insert new items or may increase or decrease the items of the budget. Where the Council shall increase the total proposed expenditures it shall also increase the total anticipated revenues in an amount at least equal to such total proposed expenditures. The budget shall be prepared and adopted in the form of an ordinance. A favorable vote of at least a majority of the total elected membership of the Council shall be necessary for adoption.

(b)  If the budget is not approved by July 1, a majority vote of the Council shall be necessary to extend the current budget for a single thirty day period. Expenditures for that period shall not exceed one-twelfth (1/12) of the annual expenses provided in the budget of the previous fiscal year.

### § C-804. Appropriations - Approval

No public money may be expended without having been approved and appropriated by the Council.

### § C-805. Transfer of Funds

Any transfer of funds between major appropriations for different purposes must be approved by the Council before becoming effective.

### § C-806. Over-Expenditure Forbidden

No officer or employee shall during any budget year expend or contract to expend any money or incur any liability or enter into any contract which by its terms involves the expenditure of money for any purpose, in excess of the amount appropriated for or transferred to that general classification of expenditure pursuant to this Charter. Any contract verbal or written, made in violation of this section shall be null and void. Nothing in this section contained, however, shall prevent the making of contracts or the spending of money for capital improvements to be financed in whole or in part by the issuance of bonds, nor the making of contracts of lease or for services for a period exceeding the budget year in which such contract is made, when such contract is permitted by law.

### § C-807.  Appropriations Lapse After One Year

All appropriations shall lapse at the end of the budget year to the extent that they shall not have been expended or lawfully encumbered. Any unexpended and unencumbered funds shall be considered a surplus at the end of the budget year and shall be included among the anticipated revenues for the next succeeding budget year.

### § C-808.  Taxable Property

All real property within the corporate limits of the City shall be subject to taxation for municipal purposes. The assessment used for municipal taxation shall be the same as that for State and County taxes. No authority is given by this section to impose taxes on property which is exempt from taxation by any Act of the General Assembly.

### § C-809.  Budget Authorized Levy

From the effective date of the budget, the amount stated therein as the amount to be raised by the property tax shall constitute a determination of the amount of the tax levy in the corresponding tax year.

### § C-810.  Notice of Tax Levy

Immediately after the levy is made by the Council in each year, the City Treasurer shall give notice of the making of the levy by posting a notice thereof in some public place or places in the City. He shall make out and mail or deliver in person to each taxpayer or his agent at his last known address a bill or account of the taxes due from him. This bill or account shall contain a statement of the amount of real estate property with which the taxpayer is assessed, the rate of taxation, the amount of taxes due, and the date on which the taxes will bear interest. Failure to give or receive notice required by this section shall not relieve any taxpayer of the responsibility to pay on the dates established by this Charter all taxes levied on his property.

### § C-811.  When Taxes are Overdue

The taxes provided for in § C-810 of this Charter shall be due and payable on the first day of July in the year for which they are levied and shall be overdue and in arrears on the first day of the following October. They shall bear interest while in arrears at such rate as may from time to time be provided by the laws of the State of Maryland for each month or fraction of a month until paid.

### § C-812.  Sale of Tax Delinquent Property

A list of all property on which the City taxes have not been paid and which are in arrears as provided by § C-811 of this Charter shall be turned over by the City Treasurer to the official of the county responsible for the sale of tax delinquent property as provided in State law. All property listed thereon shall if necessary be sold for taxes by this county official, in the manner prescribed by State law.

### § C-813.  Fees

All fees received by an officer or employee of the City government in his official capacity shall belong to the City government and be accounted for by the City.

### § C-814.  Audit

The financial books and accounts of the City shall be audited annually in a manner determined by the Council but not contrary to applicable State law.

### § C-815.  Tax Anticipation Borrowing

The City shall have the power to borrow in anticipation of the collection of current taxes and to issue tax anticipation notes or other indebtedness as evidence of such borrowing. Such tax anticipation notes or other evidence of indebtedness shall be a first lien upon the proceeds of such tax and shall mature and be paid not later than eighteen (18) months from their date of issue. The Council shall have the power to regulate all matters concerning the issuance of tax anticipation notes.

### § C-816.  Authorization to Borrow Money

The City shall have the power to borrow money for any proper public purpose and to evidence such borrowing by the issue and sale of its general obligation bonds, notes, or other certificates of indebtedness in the manner prescribed in Sections 31 to 37, inclusive, of Article 23A of the Annotated Code of Maryland (1957 edition, as amended), title "Municipal Corporations," subtitle "Creation of Municipal Public Debt."[2]

### § C-817.  Authorization to Borrow Money [Amended 3-11-2013 by Res. No. R-13-15]

(a)  The City shall have the power to borrow money for any proper public purpose and to evidence such borrowing by the issue and sale of its general obligation bonds, notes or other evidences of indebtedness in the manner prescribed in this Section.

(b)  All general obligation bonds, notes or other evidences of indebtedness issued under the provisions of this Section shall be authorized by an ordinance that shall contain: (1) a statement of the maximum aggregate principal amount of such obligations to be issued; (2) a statement of the purpose or purposes for which the proceeds of such obligations are to be expended; (3) a pledge of the security for such obligations and, if applicable, a statement

---

2.  Editor's Note: Article 23A, Sections 31 to 37, of the Annotated Code of Maryland, were repealed by Acts 2013, ch. 119, § 1, effective October 1, 2013. See now the Local Government Article.

that such obligations shall be payable in the first instance from a specified source of revenue or provisions for the making of such statement by resolution; and (4) a requirement that, subject to the provisions of subsection (d) below, prior to the issuance of any such obligations, the Council shall adopt a resolution in accordance with the provisions of subsection (c) below.

(c)    Prior to issuing any such obligations identified in subsection (b) above, the Council shall adopt a resolution containing, determining or providing for the determination of, or approving or providing for the approval of: (1) the designation, date of issue, denomination or denominations, form or forms and tenor of such obligations; (2) the rate or rates of interest payable on such obligations (which may be fixed or variable or may be determined by a method approved or provided for); (3) the date or dates and amount or amounts of maturity, which may be in any denomination and which may be in serial and/or term maturities or otherwise payable in installments; (4) the manner of selling such obligations, which may be either by solicitation of competitive bids at public sale after publication or dissemination of the notice of sale or a summary thereof or by private (negotiated) sale without advertisement or solicitation of competitive bids; (5) the price or prices of such obligations, which may be at, above or below par value; (6) any desired provisions relating to the redemption or put of such obligations prior to maturity (which may be at, above or below par value), and the manner of publishing or otherwise giving notice of such redemption or put; (7) the manner of executing and sealing such obligations, which may be by facsimile; (8) any documents pursuant to which such obligations are to be issued or secured, including, without limitation, agreements with banks, fiduciaries, insurers or others for the purpose of enhancing the marketability of or as security for such obligations and for securing any tender option granted to the holders thereof; and (9) such other provisions regarding the terms, conditions, issuance, sale, delivery and security of and for such obligations as the Council may determine necessary or desirable, including, without limitation, whether such obligations shall be sold for cash or other valuable consideration or further specifying the purposes for which such obligations are to be expended (within the limitations set forth in the applicable ordinance). By resolution the Council may delegate to a specified official or officials the authority to approve any matters or make any determinations contemplated by this subsection (c). A resolution adopted pursuant to this subsection (c) may be introduced and adopted at a single session of the Council and shall become effective immediately upon adoption or upon the date specified in such resolution.

(d)    The Council may, at its option, determine or provide for the determination of, or approve or provide for the approval of, any of the matters referenced in subsection (c) above by ordinance instead of by resolution.

(e)    In connection with any sale of general obligation bonds, notes or other evidences of indebtedness by the solicitation of competitive bids at public sale, any such competitive bids may be delivered by electronic and/or facsimile means and/or by any other then-commercially reasonable manner for the public sale of municipal obligations by competitive bid; and any notice of sale may be published solely in summary form in a newspaper of general circulation in the City and/or in a generally recognized financial journal such as The Bond Buyer, or any notice of sale, rather than being published in full or summary form, may be made available solely via the internet or by other electronic means and/or by any other then-commercially reasonable manner for the sale of municipal

obligations, all as determined by the Council by resolution or ordinance in accordance with the provisions of subsection (c) or subsection (d) above, as applicable. To the extent the Council determines to publish the notice of sale in full or summary form, any such publication need only be made once at least seven (7) days before the initial date fixed for sale.

(f)     The power conferred on the City under this Section shall be deemed to be additional and supplemental to any other general obligation borrowing authority granted to the City by Maryland, City or federal law, and the City may authorize, issue and secure any such general obligation debt in conformity with this Section and/or any other applicable law.

### § C-818.   Payment of Indebtedness

The power and obligation of the City to pay any and all bonds, notes, or other evidences of indebtedness issued by it shall be unlimited and the City shall levy ad valorem taxes upon all the taxable property in the City for the payment of such bonds, notes, or other evidences of indebtedness and interest thereon. The faith and credit of the City is hereby pledged for the payment of the principal of and the interest on all bonds, notes, or other evidences of indebtedness, hereafter issued under the authority of this Charter, whether or not such pledge be stated in the bonds, notes, or other evidences of indebtedness, or in the ordinance authorizing their issuance.

### § C-819.   Previous Issues

All bonds, notes, or other evidences of indebtedness validly issued by the City previous to the effective date of this Charter and all ordinances passed concerning them are hereby declared to be valid, legal, and binding and of full force and effect as if herein fully set forth.

### § C-820.   Purchasing and Contracts [Amended 12-10-2012 by Res. No. R-13-14]

(a)     The Council shall have the power to provide by ordinance for rules and regulations regarding purchasing procedures such as the use of competitive bids.

(b)     The City Administrator may spend up to three thousand dollars ($3,000) without Council approval for supplies, materials, equipment, construction of improvements, services and city-related expenses. The City Administrator shall obtain Council approval (which approval may be made by resolution or motion) for any expenditures for supplies, materials, equipment, construction of improvements, services and city-related expenses in excess of three thousand dollars ($3,000) and up to seven thousand five hundred dollars ($7,500). Except as otherwise provided in this § C-820, the provider of any supplies, materials, equipment, construction of improvements, services and city-related expenses costing in excess of seven thousand five hundred dollars ($7,500) shall be selected by competitive bid as established by this Charter and ordinances of the Council and any such expenditures shall be made on written contract. The City Administrator shall be required to advertise for sealed bids for any such written contract in such manner as may be prescribed by ordinance. Any such written contract shall be awarded to the bidder who offers the lowest or best bid and the best quality of goods and work and time of delivery or completion, with the responsibility of the bidders considered. By resolution, the Council

may approve or authorize one or more appropriate officials to approve any such written contract before the same becomes effective. The Council shall have the right to reject bids and readvertise. The city, at any time in its discretion, may employ its own forces for the construction or reconstruction of public improvements without advertising for (or readvertising for) or receiving bids. All written contracts may be protected by such bonds, penalties and conditions as the city may require. [Amended 1-12-2015 by Res. No. R-15-12]

(c)   The Council may exempt contracts involving professional services in excess of seven thousand five hundred dollars ($7,500), including (without limitation) accounting, architectural, auditing, consulting, computer maintenance and support services, engineering, legal, planning, or surveying services, from competitive bidding and any such written professional services contracts may be negotiated by the City Administrator with the approval of the Council or by the Council itself. By resolution the Council may (1) provide for the exemption of any such written professional services contract from competitive bidding and (2) approve or authorize one or more appropriate officials to approve the written contract for any such negotiated professional services.

(d)   Except with the respect to the selection of the primary development entity with which the city shall enter into any public-private partnership (which selection of such primary entity shall be made in accordance with the provisions of subsection (b) above), the Council may exempt contracts with individuals or entities involving supplies, materials, equipment, construction of improvements, services or city-related expenses in excess of seven thousand five hundred dollars ($7,500) to be entered into in connection with any public-private partnership undertaken by the city from competitive bidding and any such written ancillary public-private partnership contracts may be negotiated by the City Administrator with the approval of the Council or by the Council itself. By resolution the Council may (1) provide for the exemption of any such written ancillary public-private partnership contract from competitive bidding and (2) approve or authorize one or more appropriate officials to approve the written contract for any such ancillary public-private partnership supplies, materials, equipment, construction of improvements, services or city-related expenses. The provisions of this subsection (d) shall be liberally construed in connection with any public-private partnership undertaken by the city.

## ARTICLE IX
## ADMINISTRATION

### § C-901.   City Treasurer [Amended 5-12-2008 by Res. No. R-08-04; 1-12-2015 by Res. No. R-15-12]

There shall be a City Treasurer appointed pursuant to § C-403(c) whose compensation shall be determined by the Council. The City Treasurer shall be the financial officer of the City. The financial powers of the City, except as otherwise provided by this Charter, shall be exercised by the City Treasurer under the direct supervision of the City Administrator.

### § C-902.   City Clerk

There shall be a City Clerk appointed pursuant to § C-403(c). The City Clerk shall attend every meeting of the Council and keep such other records and perform such other duties as may be required by this Charter or the Council. The City Clerk shall be supervised by and be under the direction and control of the City Council, and is accountable to the City Council. Except as

otherwise directed by the City Council, or except as required to fulfill a duty or responsibility expressly imposed upon the City Clerk by this Charter, the City Clerk shall work exclusively for the City Council.

### § C-903.  City Attorney

There may be a City Attorney appointed by the Council. He shall serve at the pleasure of the Council and his compensation shall be so determined by the Council. The City Attorney shall be a member of the bar of Maryland Court of Appeals. The City Attorney shall be the legal advisor of the City and shall perform such duties in this connection as may be required by the Council. The City shall have the power to employ other legal consultants as it deems necessary from time to time.

### § C-904.  Creation of Departments

The Mayor may with Council consent establish, disestablish or combine City departments, offices or agencies in addition to those created by this Charter and may prescribe the functions of all departments, offices, and agencies. The departments of the City government established by this Charter are the department of finance, public works, police, public safety and community services. The Public Safety Department shall be under the direction and supervision of the Chief of Police who shall be appointed in accordance with § C-403(c) of this Charter.

### § C-905.  Direction of the City Administrator [Amended 1-12-2015 by Res. No. R-15-12; 10-3-2016 by Res. No. R-17-01]

All departments, offices and agencies shall be under the direction and supervision of the City Administrator. However, the City Administrator may only with the Mayor's consent appoint an officer to assist him or her in administration of said departments, offices or agencies.

### § C-906.  Merit System Authorized

The City may provide by ordinance for appointments and promotions in the administrative service on the basis of merit and fitness. To carry out this purpose the Council may adopt such rules and regulations governing the operation of a merit system as it deems desirable or necessary. Among other things these rules and regulations may provide for competitive examinations, the use of eligible lists, a classification plan, a compensation plan, a probation period, appeals by employees included within the classified service from dismissal or other disciplinary action, and vacation and sick leave regulations. The City may request and avail itself of the facilities of the Commissioner of State Personnel for the administration of its merit system, as provided in State law.

### § C-907.  Retirement System

The City Council may do all things necessary to include its officers and employees, or any of them, within any retirement systems or pension system under the terms of which they are admissible, and to pay the employer's share of the cost of any such retirement or pension system out of the general funds of the City.

### § C-908.   Compensation of Employees

The compensation of all officers and employees of the City shall be set from time to time by an ordinance passed by the Council subject to the restrictions imposed upon establishing the salaries of the City Council.

### § C-909.   Employee Benefit Programs

The City by ordinance may provide for or participate in hospitalization or other forms of benefit or welfare programs for its officers and employees, and may expend public moneys of the City for such programs.

### § C-910.   Prohibitions

(a)   No officer or employee in the service of the City shall continue in a paid status after becoming a candidate for nomination or election to any public office in the City.

(b)   No person shall orally, by letter or otherwise, solicit or be in any manner concerned in soliciting any assessment, subscription, or contribution for any City political purpose whatever from any person holding a position in the service of the City.

(c)   No person holding a position in the service of the City shall make any contribution to the campaign funds of any political party or any candidate for public office in the City or take any part in the management, affairs, or political campaign of any political party or candidate for public office in the City, further than in the exercise of his right as a citizen to express his opinion and to cast his vote.

(d)   No person shall hold more than one City office or position at any one time, nor shall any person holding any City office, or position have outside business interest in commercial enterprise doing business with the City. For the purpose of this section City office or position shall mean all elective, appointive and classified positions of the City with no distinction made between paid or unpaid positions.

### ARTICLE X
### PUBLIC WAYS AND SIDEWALKS

### § C-1001.   Definition of Public Ways

As used in this Charter, the following terms shall have the meanings indicated: "Public Ways" - Includes all streets, avenues, roads, highways, public thoroughfares, lanes, and alleys.

### § C-1002.   Control of Public Ways

The City has control of all public ways in the City except such as may be under the jurisdiction of the Maryland State Highway Administration. Subject to the laws of the State of Maryland and this Charter, the City may do whatever it deems necessary to establish, operate, and maintain in good condition the public ways of the City.

### § C-1003.   Powers of City as to Public Ways

The City may:

(a)  Establish, regulate, and change from time to time the grade lines, width, and construction materials of any City public ways or part thereof, bridges, curbs, and gutters.

(b)  Grade, lay out, construct, open, extend, and make new City public ways.

(c)  Grade, straighten, widen, alter, improve, or close up any existing City public way or part thereof.

(d)  Pave, surface, repave, or resurface any City public way or part thereof.

(e)  Install, construct, reconstruct, repair, and maintain curbs and/or gutters along any City public way or part thereof.

(f)  Construct, reconstruct, maintain, and repair bridges.

(g)  Name City public ways.

(h)  Have surveys, plans, specifications, and estimates made for any of the above activities or projects or parts thereof.

## § C-1004.  Powers of City as to Sidewalks

The City may:

(a)  Establish, regulate, and change from time to time the grade lines, width, and construction materials of any sidewalk or part thereof on City property along any public way or part thereof.

(b)  Grade, lay out, construct, reconstruct, pave, repave, repair, extend, or otherwise alter sidewalks on City property along any public way or part thereof.

(c)  Require that the owners of any property abutting on a sidewalk keep the sidewalk clear of all ice, snow, and other obstructions.

(d)  Require and order the owner of any property abutting on any public way in the City to perform any projects authorized by this section at the owner's expense according to reasonable plans and specifications. If, after due notice, the owner fails to comply with the order within a reasonable time, the City may do the work and the expense shall be a lien on the property and shall be collectible in the same manner as are City taxes or by suit at law.

## ARTICLE XI
## STORM WATER DRAINAGE SYSTEM

### § C-1101.  Power of the City

The City may operate, maintain and repair storm water sewers and the storm water drainage system provided said maintenance and repairs are not supplied by the Washington Suburban Sanitary Commission.



ARTICLE XII
SPECIAL ASSESSMENTS

§ C-1201.  Power of City to Levy Special Assessments

The City may levy and collect taxes in the form of special assessments upon property in a limited and determinable area for special benefits conferred upon the property by the installation or construction, of water mains, sanitary sewer mains, storm water sewers, curbs, and gutters and by the construction, and paving of public ways and sidewalks or parts thereof, and it may provide for the payment of all or any part of the above projects out of the proceeds of the special assessment. The cost of any project to be paid in whole or in part by special assessments may include the direct cost thereof, the cost of any land acquired for the project, the interest on bonds, notes, or other evidences of indebtedness issued in anticipation of the collection of special assessments, a reasonable charge for the services of the administrative staff of the City and any other item of cost which may reasonably be attributed to the project.

(a) Provided. The procedure for special assessments, wherever authorized in this charter, is as provided in this section.

(b) Assessment of Cost. The cost of the project being charged for shall be assessed according to the front rule of apportionment or some other equitable basis determined by the Council.

(c) Amount. The amount assessed against any property for any project or improvement shall not exceed the value of the benefits accruing to the property therefrom, nor shall any special assessment be levied which causes the total amount of special assessment levied by the City and outstanding against any property at any time, exclusive of delinquent installments, to exceed twenty-five per centum (25%) of the assessed value of the property after giving effect to the benefit accruing thereto from the project or improvements for which assessed.

(d) Uniformity of Rates. When desirable, the affected property may be divided into different classes to be charged different rates, but, except for this, any rate shall be uniform.

(e) Levy of Charges; Public Hearing; Notice. All special assessment charges shall be levied by the Council by ordinance. Before levying any special assessment charges, the Council shall hold a public hearing. The City Clerk shall cause notice to be given stating the nature and extent of the proposed project, the kind of materials to be used, the estimated cost of the project, the portion of the cost to be assessed, the number of installments in which the assessment may be paid, the method to be used in apportioning the cost, and the limits of the proposed area of assessment. The notice shall also state the time and place at which all persons interested, or their agents or attorneys, may appear before the Council and be heard concerning the proposed project and special assessment. Such notice shall be given by sending a copy thereof by mail to the owner of record of each parcel of property proposed to be assessed and to the person in whose name the property is assessed for taxation and by publication of a copy of the notice at least once in a newspaper of general circulation in the City. The City Clerk shall present at the hearing a certificate of publication and mailing of copies of the notice, which certificate shall be deemed proof of notice, but failure of any owner to receive the mailed copy shall not invalidate the proceedings. The date of hearing shall be set at least ten and not more than thirty days after the City Clerk shall have completed publication and service of notice as provided in this section. Following the hearing the Council, in its discretion may vote to proceed with the project and may levy the special assessment.

(f) Right to Appeal. Any interested person feeling aggrieved by the levying of any special

assessment under the provisions of this section shall have the right to appeal to the Circuit Court for the County within ten days after the levying of any assessment by the Council.

(g) Payments; Interest. Special assessments may be made payable in annual or more frequent installments over such period of time, not to exceed ten years, and in such manner as the Council may determine. The Council shall determine on what date installments shall be due and payable. Interest may be charged on installments at the rate to be determined by the Council.

(h) When Due; Lien on Property; Collection. All special assessment installments are overdue six months after the date on which they became due and payable. All special assessments shall be liens on the property and all overdue special assessments shall be collected in the same manner as City taxes or by suit at law.

(i) City Treasurer. All special assessments shall be billed and collected by the City Treasurer.

## ARTICLE XIII
## CITY PROPERTY

### § C-1301.  Acquisition, Possession, and Disposal

The City may acquire real, personal, or mixed property within the corporate limits of the City for any public purpose by purchase, gift, request, devise, lease, condemnation, or otherwise and may sell, lease, or otherwise dispose of any property belonging to the City. All municipal property, funds, and franchises of every kind belonging to or in the possession of the City (by whatever prior name known) at the time this Charter becomes effective are vested in the City, subject to the terms and conditions thereof.

### § C-1302.  Condemnation

The City shall have the power to condemn property of any kind, or interest therein or franchise connected therewith, in fee or as an easement, within the corporate limits of the City, for any public purpose. Any activity, project, or improvement authorized by the provisions of this Charter or any other State Law applicable to the City shall be deemed to be public purpose. The manner of procedure in case of any condemnation proceedings shall be that established in Real Property Article of the Annotated Code of the Public General Laws of Maryland, title "Eminent Domain".

### § C-1303.  City Buildings

The City shall have the power to acquire, to obtain by lease or rent, to purchase, construct, operate, and maintain all buildings and structures it deems necessary for the operation of the City government.

### § C-1304.  Protection of City Property

The City shall have the power to do whatever may be necessary to protect City property and to keep all City property in good condition.

## ARTICLE XIV

## GENERAL PROVISIONS

### § C-1401.   Oath of Office

Before entering upon the duties of their offices, the Council members, the members of the Board of Supervisors of Elections, and all other persons elected or appointed to any office of profit or trust in the City government shall take and subscribe the following oath or affirmation: "I, _____ do swear (or affirm, as the case may be), that I will support the Constitution of the United States; and that I will be faithful and bear true allegiance to the State of Maryland, and support the Constitution and Laws thereof; and that I will, to the best of my skill and judgment, diligently and faithfully, without partiality or prejudice, execute the office of _____, according to the Constitution and Laws of this State."

### § C-1402.   Taking the Oath

The Mayor shall take and subscribe this oath or affirmation before the Clerk of the Circuit Court for Prince George's County or before one of the sworn deputies of the Clerk. All other persons taking and subscribing the oath may do so before the Mayor.

### § C-1403.   Official Bonds

The City Treasurer and such other Officers or employees of the City as the Council or this Charter may require, shall give bond in such amount and with such surety as may be required by the Council. The premiums on such bonds shall be paid by the City.

### § C-1404.   Prior Rights and Obligations

All right, title, and interest held by the City or any other person or corporation at the time this Charter is adopted, in and to any lien acquired under any prior Charter of the City are hereby preserved for the holder in all respects as if this Charter had not been adopted, together with all rights and remedies in relation thereto. This Charter shall not discharge, impair, or release any contract, obligation, duty, liability, or penalty whatever existing at the time this Charter becomes effective. All suits and actions, both civil and criminal, pending, or which may hereafter be instituted for causes of action now existing or offenses already committed against any law or ordinance repealed by this Charter, shall be instituted, proceeded with, and prosecuted to final determination and judgment as if this Charter had not become effective.

### § C-1405.   Misdemeanors

Every act or omission which, by ordinance, is made a misdemeanor under the authority of this Charter, unless otherwise provided shall be punishable upon conviction before any trial magistrate or in the Circuit Court for the County within which the offense is committed by a fine not exceeding one thousand dollars ($1,000.00) or imprisonment for thirty days in the County Jail, or both, in the discretion of the court or trial magistrate. The party aggrieved shall have the right to appeal as is now provided under the general laws of the State. Where the act or omission is of a continuing nature and is persisted in a conviction for one offense shall not be a bar to a conviction for a continuation of the offense subsequent to the first or any succeeding conviction.

(a)   The Council may provide that violations of any municipal ordinance shall be a municipal

infraction, unless that violation is declared to be a felony or misdemeanor by the laws of the state or other ordinance. For purposes of this Article, a municipal infraction is a civil offense.

(b)   A fine not to exceed four hundred dollars ($400) may be imposed for each conviction of a municipal infraction. The fine is payable by the offender to the municipality within twenty (20) calendar days of receipt of a citation. Each day a violation continues shall constitute a separate offense.

(c)   Any person receiving a citation for an infraction may elect to stand trial for the offense by notifying the city, in writing, of this intention at least five (5) days prior to the date set for payment of the fine. Failure to pay the fine or to give notice or intent to stand trial may result in doubling of the fine, not to exceed four hundred dollars ($400).

(d)   Adjudication of a municipal infraction is not a criminal conviction for any purpose, nor does it impose any of the civil liabilities ordinarily imposed by a criminal conviction.

### § C-1406.  Effect of Charter on Existing Ordinances

All ordinances, resolutions, rules and regulations in effect in the City at the time this Charter becomes effective which are not in conflict with the provisions of this Charter shall remain in effect until changed or repealed according to the provisions of this Charter.

### § C-1407.  Conflicting Ordinances, Resolutions, Rules and Regulations

All ordinances, resolutions, rules and regulations in effect in the City at the time this Charter becomes effective which are in conflict with the provisions of this Charter be and the same hereby are repealed to the extent of such conflict.

### § C-1408.  Separability

If any section or part of section of this Charter shall be held invalid by a court of competent jurisdiction, such holding shall not affect the remainder of this Charter nor the context in which such section or part of section so held invalid shall appear, except to the extent that an entire section or part of section may be inseparably connected in meaning and effect with the section or part of section to which such holding shall directly apply.

## ARTICLE XV
## TRANSITIONAL PROVISIONS

### § C-1501.  Officers and Employees

Nothing in this Charter except as otherwise specifically provided shall effect [affect] or impair the rights or privileges of persons who are City officers or employees at the time of its adoption.

### § C-1502.  Continuance of Office or Employment

Except as specifically provided by this Charter, if at the time this Charter takes effect a City officer or employee holds any office or position which is or can be abolished by this charter, he shall continue in such office until the specific provision under this Charter directing that he

vacate the office or position becomes effective.

### § C-1503.  Personnel System

An employee holding a City position at the time this Charter takes effect, who was serving in that same position or a comparable position at the time of its adoption, shall not be subject to competitive test as a condition of continuance in the same position but in all other respects shall be subject to the personnel system provided for in Article IX.

### § C-1504.  Pending Matters

All rights, claims, actions, orders, contracts, and legal or administrative proceedings shall continue except as modified pursuant to the provisions of this Charter and in each case shall be maintained, carried on or dealt with by the appropriate City department, office or agency under this Charter.

### § C-1505.  Mayor and Council

The Mayor and Council in office at the effective date of this Charter shall continue to hold office until the new Mayor and Council are elected and take office as provided for in § C-611, and they shall exercise all rights, duties, powers, and responsibilities granted by this Charter.

●●●○○ AT&T 4G      9:05 PM      ✳ 5% ▭

### New iMessage      Cancel

To: Mayor Grant

Wed, Jun 10, 5:41 PM

We should talk

I'm commissioning a feasibility study to determine the development rights for this property. Once the study is finish I will be placing the property for sale on the market at the developmental value. If the city is interested in acquiring this property I'm more than happy to give the opportunity for discussion. However my intention is to market the property very soon.

-Steven

Ok. Thanks my friend. Let's talk soon.

Fri, Jun 19, 3:51 PM



iMessage




●●●○○ AT&T  4G          9:05 PM          ⚡ 5% ▭

**New iMessage**                        Cancel

To: Mayor Grant

Fri, Jun 19, 3:51 PM

Hello. Please send me information about your property. As much as you can including: cost, square footage – breakdown facility and land, monthly utility cost, what the zone is, appraisal etc. Thanks so much.

Sat, Jun 20, 9:57 PM

We are compiling a package probably won't be ready for a couple of weeks. I'm going to list the property however I will list the city as and exclusion.

I understand but can you at least send me the information requested? I may be able to purchase it through a non profit.

How much are you asking for it?

 iMessage

•••○○ AT&T 4G          9:05 PM          ✳ 5% ▭

**New iMessage**          Cancel

To: Mayor Grant

> It's too early to tell. I'm determining the development rights to price it at developmental value plus a premium if it's essential to be incorporated into a larger project with the adjacent properties.

At this time our non profit wants to put a psychiatric rehabilitation program in that building. It's a perfect location for what we need.

> I'm not vacating to rent. I'm selling the property for development. how about the Watkins building?

I didn't ask about renting. I asked about buying. Hence the reason I asked about the cost to purchase not rent.

 iMessage 

●●●○○ AT&T  4G          9:05 PM          ❋ 5% ▱

**New iMessage**                    Cancel

To: Mayor Grant

I didn't ask about renting. I asked about buying. Hence the reason I asked about the cost to purchase not rent.

I would like to buy Watkins too but the owner has not returned my call.

Buying it for a tenant or owner operator would not be feasible paying the developmental value price.  Preliminary numbers indicate it'll probably be listed over

The value of that property is NO where near that price. Not even for developmental purposes. The government would do better going through eminent domain proceedings and come out with a cheaper cost and partner with a developer.

 iMessage



**ATTORNEY AT LAW**

Stan Brown, Esq.

Stan Derwin Brown Law Office, LLC
1300 Caraway Court, Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law & CrimeVictim.law
E-mail: attorney@StanBrown.net
*Licensed in Maryland & Washington, D.C.*

October 12, 2017

Mr. Eugene W. Grant
Mayor, The City of Seat Pleasant
6301 Addison Road
Seat Pleasant, Maryland 20743-2125

Re:   Ordinance O-17-20, FY18 Approved Annual Budget, Special Assessment
        enacted for the "Revitalization District"

Dear Mayor Grant:

I am counsel to Mr. Steve Franco d/b/a Seat Market, LLC and to Mr. Si Qiang Chen & Mrs. Chang Lin Chen.

The City of Seat Pleasant Ordinance O-17-20, enacted on June 5, 2017, finalized an Approved Annual Budget for Fiscal Year 2018. The approved FY18 Budget imposed a Special Assessment town levy tax on my clients' commercial properties located in an alleged "Special Revitalization District" and "business improvement district."

On August 8, 2017 and again on September 11, 2017, my clients requested that the City of Seat Pleasant immediately rescind, abate, reduce, revise and/or terminate the improper Special Assessment town levy tax approved in the FY18 budget. The Special Assessment town levy tax was due and payable on September 30, 2017.

On August 10, 2017, and on October 12, 2017, the City Administrator and the City Clerk advised my clients that the imposition of the FY18 Special Assessment town levy tax will not be revised or terminated.

Please contact me by close of business on Monday, October 16, 2017 to confirm the official position of the City of Seat Pleasant is that the Special Assessment town levy tax is valid and will be imposed in accordance with Ordinance O-17-20 and the Approved Annual Budget for Fiscal Year 2018. If I do not receive any oral or written communication from you by close of business on October 16, 2017 I will assume the City of Seat Pleasant has denied my clients' numerous requests to terminate the imposition of the Special Assessment town levy tax.



Page 1 of 2

Sincerely

Stan Brown, Esq.

cc
City Council members
Robert Ashton, City Treasurer
Jeannelle Branson Wallace, City Administrator
Dashaun N. Lanham, City Clerk

Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court  •  Suite 101  •  Largo, Maryland 20774-5462
Telephone: 301.883.8888  •  Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

Page 2 of 2

# MARYLAND TAX COURT

### 301 W. Preston Street, Suite 1513

### Baltimore, Maryland 21201

Steven Franco
d/b/a Seat Market, LLC
401 Eastern Avenue
Seat Pleasant, Maryland 20743,

      Petitioner,

      v.                          Case No._____

The City of Seat Pleasant
6301 Addison Road
Seat Pleasant, Maryland 20743-2125,

      Respondent.

## PETITION OF APPEAL

1. **This is an appeal from:** a Special Assessment town levy tax imposed by the City of Seat Pleasant through Ordinance O-17-20 and adopted in its Approved Annual Budget for Fiscal Year 2018.

2. **Type of Tax Being Appealed:** Commercial real property Special Assessment town levy tax on MSDAT account 2033330 and MSDAT account 2033348.

3. **The amount in controversy is:** $55,019.54 for one property and $2,908.30 for a second property.

4. **The tax year involved:** Fiscal year 2018, July 1, 2017 through June 30, 2018.

5. **The date of the assessment notice or action complained of:** September 30, 2017 property tax invoice and Respondent's October 16, 2017 refusal to repeal illegal and erroneous Special Assessment town levy tax.

6. **The reasons Petitioner believes the imposition of the Special Assessment town levy tax is illegal and erroneous is that:** Petitioner was denied procedural and substantive due process since the City of Seat Pleasant did not comply with The City Charter, Article XII, Special Assessments, § C-1201 *et seq.* as described in the attached Petitioner's Complaint for Declaratory Judgment filed in Prince George's County Circuit Court.

Respectfully submitted, October 17, 2017 by:

_Steven Franco_                         _Stan Brown_

Steven Franco                       Stan Brown, Esq.
Managing Member               Stan Derwin Brown Law Office, LLC
Seat Market, LLC                 1300 Caraway Court, Suite 101
401 Eastern Avenue              Largo, Maryland 20774
Seat Pleasant, Maryland 20743     *Counsel for Petitioner*
*Petitioner*



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court • Suite 101 • Largo, Maryland 20774-5462
Telephone: 301.883.8888 • Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net



# MARYLAND TAX COURT

### 301 W. Preston Street, Suite 1513

### Baltimore, Maryland 21201

Mr. Si Qiang Chen
Mrs. Chang Lin Chen
5702 Martin Luther King, Jr. Highway
Seat Pleasant, Maryland 20743,

      Petitioners,

      v.                     Case No._____

The City of Seat Pleasant
6301 Addison Road
Seat Pleasant, Maryland 20743-2125,

      Respondent.

## PETITION OF APPEAL

1. **This is an appeal from:** A Special Assessment town levy tax imposed by the City of Seat Pleasant through Ordinance O-17-20 and adopted in its Approved Annual Budget for Fiscal Year 2018.

2. **Type of Tax Being Appealed:** Commercial real property Special Assessment town levy tax on MSDAT account 2059509 and MSDAT account 2059491.

3. **The amount in controversy is:** $17,147.52 for one property and $14,033.12 for a second property.

4. **The tax year involved:** Fiscal year 2018, July 1, 2017 through June 30, 2018.

5. **The date of the assessment notice or action complained of:** September 30, 2017 property tax invoice and Respondent's October 16, 2017 refusal to repeal illegal and erroneous Special Assessment town levy tax.

6. **The reasons Petitioner believes the imposition of the Special Assessment town levy tax is illegal and erroneous is that:** Petitioner was denied procedural and substantive due process since the City of Seat Pleasant did not comply with The City Charter, Article XII, Special Assessments, § C-1201 *et seq.* as described in the attached Petitioner's Complaint for Declaratory Judgment filed in Prince George's County Circuit Court.

Respectfully submitted, October 17, 2017 by:

Mr. Si Qiang Chen
Mrs. Chang Lin Chen
5702 Martin Luther King, Jr. Highway
Seat Pleasant, Maryland 20743
*Petitioner*

Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court, Suite 101
Largo, Maryland 20774
*Counsel for Petitioner*



Stan Brown, Esq.
Stan Derwin Brown Law Office, LLC
1300 Caraway Court  •  Suite 101  •  Largo, Maryland 20774-5462
Telephone: 301.883.8888  •  Fax: 301.883.8606
Website: StanBrown.law
E-mail: attorney@StanBrown.net

