# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **STEVEN FRANCO** *et al.*, | * |
| Plaintiffs, | * |
| v. | Case No.: GJH-18-2027 |
| | * |
| **THE CITY OF SEAT PLEASANT, MARYLAND,** *et al.*, | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs initiated this case in October 2017 in the Circuit Court for Prince George's County, Maryland (the 2017 case) and it was later consolidated with a companion case filed in the same court in May 2018 (the 2018 case). ECF No. 12 ¶¶ 10, 12. After the state court cases were consolidated, Defendants filed a Joint Notice of Removal within 30 days of service of the 2018 case. ECF No. 1. Pending before the Court is Plaintiffs' timely Motion to Remand, ECF No. 12, and Defendants' Motion to Dismiss or Motion for Summary Judgment, ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiffs' Motion to Remand will be denied and Defendants' Motion to Dismiss or for Summary Judgment will be granted.

I.  **BACKGROUND**

On October 17, 2017, Plaintiffs filed their first lawsuit in the Circuit Court for Prince George's County, Maryland (the Circuit Court), alleging that a city ordinance enacted by the Council of the City of Seat Pleasant (the City) and its Mayor violated various state and local laws, and requesting, among other relief, a declaratory judgment that the ordinance violated the

1

United States Constitution. ECF No. 1-10 ¶¶ 21, 31–38. According to the initial complaint, the ordinance "established a 700% real property municipal 'town levy' tax increase year-over-year (YOY) by Special Assessment on five property owners for their thirteen commercial properties located within the City." *Id.* ¶ 16. The ordinance imposed a "Special Assessment"—a "levy made against certain properties to defray part or all cost of a specific improvement or service deemed to primarily benefit those properties." *Id.* ¶ 11. The funds from the tax were to be used "for the financing of public improvements or services deemed to benefit primarily the properties against which" the Special Assessment was levied. *Id.* ¶ 12.

The initial pleading alleged that the ordinance was "an intentional and systemic discriminatory action by municipal, County and State officials in undervaluing some property while taxing at full value other property in the *same class*" in violation of the Fourteenth Amendment of the U.S. Constitution. *Id.* ¶ 32 (emphasis in original). In alleging intentional discrimination by Defendants, Plaintiffs also asserted that the individual Plaintiffs affected by the ordinance are Jewish and Chinese and alleged that "there was 96.4% African-American and 0.2% Asian residents" in the City. *Id.* ¶ 36. Plaintiffs further alleged that the ordinance violated "the Fifth Amendment of the U.S. Constitution, which prohibits deprivation 'of property, without due process of law,'" and prohibits private property from being "taken for public use, without just compensation." *Id.* ¶ 31. Defendants did not seek removal of that case within 30 days of being served with the initial pleading.

The Circuit Court's Scheduling Order included a pretrial conference on April 2, 2018 and set a deadline of "60 days prior to pretrial" for the parties to complete all amendments to pleadings. ECF No. 13-1. On the same day as the pretrial conference, Plaintiffs' moved to enlarge the Circuit Court's Scheduling Order, ECF No. 2-2, which Defendants opposed, ECF

No. 2-10. Then, on April 9, 2018, Plaintiffs filed a motion for leave to file an amended complaint. ECF No. 2-3. Plaintiffs' motion to modify the Scheduling Order and motion for leave were not ruled on by the Circuit Court.

On May 14, 2018, the City Council repealed the Special Tax established by the challenged ordinance. ECF No. 14-3. On May 30, 2018, Plaintiffs filed the 2018 case in the Circuit Court against the City and the Mayor, asserting federal claims under the Fourteenth Amendment based on the same facts and circumstances involved in the 2017 lawsuit. ECF No. 1-3. The 2018 Complaint supplemented the factual allegations in the earlier suit with the allegation that "upon information and belief," Defendant Mayor Eugene Grant "expressed anti-Semitic sentiments as the motivating factor for" the enactment of the ordinance. *Id.* ¶ 41. Plaintiffs sought damages and attorneys' fees as relief for Defendants' alleged substantive due process and equal protection violations. *Id.* at 16. As of the filing of the 2018 Complaint, Plaintiffs had not paid any tax under the ordinance. *Id.* ¶ 28.

Plaintiffs filed a Motion to Consolidate the two cases on June 1, 2018, ECF No. 2-9, which the Circuit Court granted on June 15, 2018. ECF No. 2-11. The Circuit Court's order consolidating the two cases stated that the cases "arise from the same cause of action," and that the 2018 case would proceed "pursuant to the scheduling order in" the 2017 case. ECF No. 2-11. According to Defendants, the Circuit Court erred in consolidating the two cases because Plaintiffs' Motion to Consolidate had not yet become ripe. ECF No. 13 at 8. On June 4, 2018, the City's repeal of the Special Tax went into effect. ECF No. 14-3. Plaintiffs do not allege that they ever paid any Special Tax pursuant to the contested ordinance. *See* ECF No. 1-3, 1-10. Plaintiffs seek remand of the consolidated cases and Defendants seek dismissal of both actions.

## II. DISCUSSION

### A. Motion to Remand

"On a motion to remand, the court must 'strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court,' indicative of the reluctance of federal courts 'to interfere with matters properly before a state court.'" *Ali v. Giant Food LLC/Stop & Shop Supermarket Co.*, 595 F. Supp. 2d 618, 620 (D. Md. 2009) (quoting *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 701–02 (D. Md. 1997)). The removing party "bears the burden of proving that removal was proper." *Marchese v. JP Morgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 459 (D. Md. 2013) (citations omitted). "[B]ecause of the 'significant federalism concerns' implicated by divesting a state court of jurisdiction, removal jurisdiction is strictly construed." *Stephens v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.*, 807 F.Supp.2d 375, 378 (D. Md. 2011) (quoting *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994)).

Ordinarily, a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). Though not jurisdictional, the 30-day time limit is strictly applied. *Marler v. Amoco Oil Co.*, 793 F. Supp. 656, 659 (E.D.N.C. 1992) (citing *York v. Horizon Fed. Savings and Loan Ass'n*, 712 F.Supp. 85, 87 (E.D.La.1989) and *Diaz v. Swiss Chalet*, 525 F.Supp. 247, 250 (D.C.Puerto Rico 1981)). The purpose of the 30-day rule is: "to deprive the defendant of the undeserved tactical advantage that [it] would have if [it] could wait and see how [it] was faring in state court before deciding whether to remove . . .; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings . . . in the first court." *Wilson v.*

*Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982); *see also Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 n. 10 (D. Md. 2014).

"[I]f the case stated by the initial pleading is not removable," however, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). Under certain circumstances, consolidation may revive a defendant's removal right under this exception. *In re MTBE Prods. Liability Litig.*, 399 F.Supp.2d 340, 353 (S.D.N.Y. 2005). Specifically, although consolidation under Federal Rule of Civil Procedure 42 "does not merge the suits into a single cause," or "change the rights of the parties," *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496–497 (1933), consolidation under Maryland state rules operates differently where the state court's intent to consolidate the actions into a single case is clear. 399 F.Supp.2d at 353–54; *see also Receivership Estate of Mann Bracken, LLP v. Cline*, No. RWT 12CV292, 2012 WL 2921355, at *3 (D. Md. July 16, 2012).

Here, the Circuit Court's consolidation order merged the two cases into a single action, asserting that the two cases "arise from the same cause of action" and ordering that the two cases should proceed pursuant to the 2017 case's Scheduling Order, rather than granting Plaintiffs a new schedule. ECF No. 2-11. Thus, the consolidation of the two cases triggered a new removal deadline if the consolidation served as Defendants' first notice that the case was removable. 28 U.S.C. § 1446(b)(3). The relevant question, then, is was the 2017 case removable prior to consolidation?

Plaintiffs served Defendants with the 2017 case on October 18, 2017. ECF No. 12 ¶ 8. In the 2017 case, Plaintiffs' requested a declaratory judgment finding that the challenged ordinance

5

violated the United States Constitution. ECF No. 1-10 at 10. Specifically, Plaintiffs alleged that the ordinance violated the Fifth and the Fourteenth Amendments. *Id.* ¶ 31, 32, 36. Defendants claim that there was no basis for removal of the 2017 case within that time frame. ECF No. 13 at 9. They are correct.

In a declaratory judgment action, "parties must switch their plaintiff and defendant roles" and subject-matter jurisdiction is based upon "whether a defendant could have initially brought the threatened litigation action for which declaratory relief is sought." *Energy Recovery, Inc. v. Hauge,* 133 F. Supp. 2d 814, 817–18 (E.D. Va. 2000) (citing *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16–17 n. 14 (1983)). Switching Plaintiffs' and Defendants' roles in the 2017 case, the Defendants could not have initially brought a federal action related to the declaratory relief sought but would have simply brought a state claim seeking enforcement of the relevant ordinance. Therefore, the 2017 case did not become removable until it was consolidated with the 2018 case and the consolidated action was timely removed. Plaintiff's Motion to Remand is denied.

### B. Motion to Dismiss or for Summary Judgment

Satisfied that removal was proper, the Court next analyzes Defendants' motion, styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 14. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the facts in the complaint or "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, Rule 12(d) requires courts to treat a motion to dismiss as a motion for summary judgment when the court considers matter outside the pleadings. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present

all the material that is pertinent to the motion." *Id.* Consistent with this rule, the nonmoving party must have some indication that the court will treat the motion to dismiss as a motion for summary judgment and "must be afforded a reasonable opportunity for discovery" if it is essential to the nonmoving party's ability to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

It is obvious when the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as is the case here, that the Court may treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.2d 253, 260–61 (4th Cir.1998). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Here, Plaintiffs have not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe the parts of Defendants' motion that rely on matters outside the pleadings as a Motion for Summary Judgment.

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the

non-moving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

### 1. Mootness

Article III limits federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III § 2. The Supreme Court has interpreted this requirement "to demand that an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 669 (2016) (internal quotation marks and citations omitted). Thus, if a plaintiff's case is moot, the court lacks subject-matter jurisdiction. *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 70 (1983). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed . . . ." *Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Cant'l Bank Corp.,* 494 U.S. 472, 477–78 (1990)); *see also Simmons v. United Mortgage & Loan Inv., LLC,* 634 F.3d 754, 763 (4th Cir. 2011) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (quoting *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir.2008)). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis Healthcare,* 133 S. Ct. at 1528. Indeed, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no

longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.,* 133 S. Ct. 721, 727 (2013) (quoting *Alvarez v. Smith,* 558 U.S. 87, 93 (2009)).

Although "a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case," *Friends of Earth v. Laidlaw Env. S.,* 528 U.S. 167, 174 (2000), the Fourth Circuit has held that "statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Valero Terrestrial Corporation v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000). Of course, where a defendant "openly announces its intention to reenact 'precisely the same provision'" after a lawsuit is dismissed, a court may still have jurisdiction despite statutory changes discontinuing the challenged conduct. *Id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

Here, the repeal of the relevant Special Tax rendered Plaintiffs' claim for declaratory judgment and injunctive relief moot. These requests no longer present this Court with a live controversy because the challenged practice—the Special Tax—has been discontinued through statutory changes. *Id.* Although Defendants may have "the power to reenact" the Special Tax "after the lawsuit is dismissed," they have not announced any intention to do so. *Id.* While Plaintiffs continue to vehemently "dispute the lawfulness of the conduct that precipitated the law suit," the dispute "is no longer embedded in any actual controversy about the Plaintiffs' particular legal rights."*Already, LLC,* 133 S. Ct. at 727 (2013). Thus, Defendants are entitled to summary judgment on Plaintiffs' declaratory judgment claim in the 2017 case.

### 2. Failure to State a Claim

Defendants move to dismiss Plaintiffs' remaining claims pursuant to Rule 12(b)(6), asserting that the 2018 Complaint fails to state any claim upon which relief can be granted.

9

Because this part of Defendants' motion does not rely on matters outside the pleadings, the Court treats it as a motion to dismiss rather than a motion for summary judgment.

To state a claim that survives a Rule 12(b)(6) motion, a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80. When performing this inquiry, the Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

Before applying this standard to the Plaintiffs' substantive due process and equal protection claims in turn, the Court addresses two threshold matters. First, Plaintiffs' Complaint also mentions the Fifth Amendment's Takings Clause, although it does not include a separate Count alleging a Takings violation. ECF No. 1-3 ¶ 30. Defendants' move to dismiss any Takings Clause claim alleged by Plaintiffs. ECF No. 14-1 at 33. However, Plaintiffs' Opposition does not address whether the Complaint alleges a claim under the Takings Clause. ECF No. 16. The

Court, therefore, assumes that the Complaint has not alleged a claim based on the Takings Clause. Second, although Plaintiffs sue the City's Mayor in his official and individual capacity, they have not alleged any actions that the Mayor took in his individual capacity. *See* ECF No. 1-3. Thus, Plaintiffs' claims against the Mayor stand or fall with their claims against the City.

### i. Substantive Due Process

The Fourteenth Amendment prohibits States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. To state a violation of substantive due process, plaintiffs must allege "(1) that [they] had property or a property interest; (2) that the state deprived [them] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Quinn v. Board of County Commissioners for Queen Anne's County, Md.*, 862 F.3d 433, 443 (4th Cir. 2017) (emphasis in original) (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)). The Court focuses its attention on the third element of this test, which Plaintiffs here have failed to plead with sufficient factual support.

To determine whether action falls "far beyond the outer limits of governmental action," the Fourth Circuit considers, among other factors, whether the action "was tainted with fundamental procedural irregularity," "targeted at a single party," or "inconsistent with the defendant's regular practice." *A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 373 n. 10 (4th Cir. 2008). Here, Plaintiffs have offered only conclusory allegations in support of their claim that Defendants' enactment of the ordinance was beyond the outer limits of reasonable governmental action. In their Opposition to Defendants' Motion, Plaintiffs argue that the Complaint repeatedly asserts that the process leading to the enactment of the ordinance was "tainted with fundamental procedural irregularity." ECF No. 16 at 18. But Plaintiffs cite to no

11

paragraph in the Complaint that details these irregularities. The Complaint alleges that the City Council introduced the ordinance, conducted a "First Reading" and a "Second Reading" and then adopted the ordinance. ECF No. 1-3 ¶ 10. The Court has no context from these allegations to know whether this process "was tainted with fundamental procedural irregularity." Even to the extent that the Complaint alleges that Defendants failed to comply with the City's charter, it does not allege that this is inconsistent with Defendant's regular practice. Further, although Plaintiffs allege in conclusory fashion that the ordinance targeted Plaintiffs, they do not offer sufficient factual support to allow the Court, drawing on its "experience and common sense" to conclude that these allegations cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679–80. To the contrary, the common sense reading of Plaintiffs' allegations is that Plaintiffs happen to be the property owners impacted by a redevelopment project. Finally, even accepting the truth of Plaintiffs' allegations as the Court must, Plaintiffs have not pled any facts that convince the Court that "*no process* could cure" any "deficiency" in the Defendants' actions.

Because Plaintiffs have not alleged sufficient facts to demonstrate that Defendants' action "falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency," their Complaint fails to state a claim for substantive due process and will be dismissed.

### ii. Equal Protection

For Plaintiffs to properly allege their Equal Protection claim, they must plead facts showing Defendants' conduct was motivated by discriminatory animus and its application had an adverse effect on a protected group. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). The Fourth Circuit instructs district courts to look to the following

non-exclusive list of probative factors to determine whether discriminatory intent motivated defendants:

> (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

*Central Radio Company v. City of Norfolk*, 811 F.3d 625, 635 (4th Cir. 2016) (quoting *Sylvia Development v. Calvert County,* 48 F.3d 810, 819 (4th Cir.1995)). To plead discriminatory intent, Plaintiffs rely entirely on one allegation: that "upon information and belief," the Defendant Mayor has "expressed anti-Semitic sentiments as the motivating factor" for the ordinance's introduction. Thus, Plaintiffs have offered no factual allegations related to a "consistent pattern of actions by the decisionmaking body," the historical background of the decision, the sequence of events leading to the decision, or specific contemporary statements by the decisionmakers. It is simply not sufficient to plead in conclusory fashion that the Mayor was motivated by anti-Semitism when Plaintiffs have offered the Court no reason to find that allegation plausible. Plaintiffs have not alleged that the Mayor was the sole decisionmaker, and they have not alleged a sequence of events in which he convinced the decisionmaking body to adopt the ordinance based on his personal alleged anti-Semitism. Plaintiffs argue that their allegation that a Jewish property owner was affected by the ordinance is sufficient to plead discriminatory animus, ECF No. 16 at 23, but demonstrating an adverse effect on a protected group is a separate element of the Equal Protection claim, not a sufficient way to plead discriminatory animus.

Although Plaintiffs have alleged that individual members of two different groups—the Jewish religion and Chinese ethnicity—felt the impact of the ordinance, they have not pled that the City's actions had a disparate and adverse effect on protected groups. According to the Complaint the ordinance effected "five property owners." ECF No. 1-3 ¶ 15. However, Plaintiffs have not included allegations about the religious or racial/ethnic background of the other owners effected by the ordinance. Thus, the Court cannot draw conclusions about whether the ordinance had a disparate, adverse effect on protected groups. Instead, the common-sense conclusion is that the ordinance impacted property owners with commercial properties in the area that the Defendants sought to revitalize and that Jewish and Chinese individuals were among those owners. Further, given that Plaintiffs' theory of discriminatory animus focuses on anti-Semitism, it is irrelevant that the ordinance impacted an individual of Chinese ethnicity, except to the extent it may actually cut against Plaintiffs' claim that anti-Semitism was the motivation. Ultimately, Plaintiffs' conclusory allegations of anti-Semitic sentiment are insufficient to plead an equal protection claim.

Plaintiffs request leave to amend their Complaint if their allegations are deemed insufficient. ECF No. 16 at 24. However, they have not explained what factual material would supplement their deficient pleading such that an amendment would not be futile. *See* ECF No. 16. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (Courts are freely give leave when justice so requires, unless an amendment would be futile.). Within 14 days of this Order, Plaintiffs shall submit a 2–3 page letter summarizing any facts they would include in an Amended Complaint.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is denied, Defendants are granted summary judgment on Plaintiffs' declaratory judgment claim, and Defendants' Motion to Dismiss Plaintiffs' remaining claims is granted. A separate Order shall issue.

Date: March 21, 2019        /s/_____
GEORGE J. HAZEL
United States District Judge